IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE ATLAS ROOFING CORPORATION CHALET SHINGLE PRODUCTS LIABILITY LITIGATION | MDL DOCKET NO. 2495 1:13-md-2495-TWT |
| BRYAN MAKOWSKI on behalf of himself and all others similarly situated, | |
| Plaintiff, | |
| v. | CIVIL ACTION FILE NO. 1:14-CV-3034-TWT |
| ATLAS ROOFING CORPORATION doing business as Meridian Roofing Company, | |
| Defendant. | |

**OPINION AND ORDER**

This is a multi-district class action arising out of the marketing and sale of allegedly defective roofing shingles. It is before the Court on the Plaintiff Bryan Makowski's Motion for Class Certification [Doc. 37]. For the reasons set forth below, the Plaintiff's Motion for Class Certification [Doc. 37] is DENIED.

# I. Background

The Plaintiff and putative class members are purchasers of Atlas Chalet and Stratford Shingles ("Shingles").[1] The Defendant Atlas Roofing Corporation ("Atlas") designed, manufactured, and sold the Shingles.[2] Atlas represented and continues to represent that the Shingles are durable, reliable, free from defects, and compliant with industry standards and building codes.[3] The Plaintiff alleges that the Shingles were defective at the time of sale due to a flaw in the manufacturing process.[4] Specifically, the manufacturing process causes the Shingles to have "excessive moisture which creates gas bubbles in the Shingles when they are exposed to the sun and results in cracking, blistering, and premature deterioration of the Shingles."[5] The Plaintiff

---

[1]　　It should be noted that – for purposes of this lawsuit – Chalet/Stratford Shingles are indistinguishable. <u>See</u> Primary Mot. for Class Cert. [Doc. 57], Ex. Tab 14, Thomas Dep., at 35 under No. 13-cv-02195-TWT. The differences between the two Shingles relate to aesthetics, not design. <u>Id.</u>

[2]　　Compl. ¶¶ 2-3.

[3]　　<u>Id.</u>

[4]　　<u>Id.</u> ¶ 4. In support of his argument regarding the alleged defects in the Shingles, the Plaintiff relies on the expert testimony of both Dean Rutila and Anthony Mattina. In <u>Dishman v. Atlas Roofing Corp.</u>, the Defendant filed a <u>Daubert</u> motion challenging the admissibility of both Rutila's and Mattina's testimony. <u>See</u> Def.'s Primary Resp. Br. [Doc. 59] under No. 1:13-cv-02195-TWT. The Defendant incorporates by reference the Defendant's Response Brief in <u>Dishman v. Atlas Roofing Corp.</u> <u>See</u> Def.'s Resp. Br., at 2.

[5]　　Compl. ¶ 20.

further alleges that despite Atlas's knowledge of the defect, Atlas did nothing to correct the defective design and continued to market and warrant the Shingles as durable.[6]

Atlas provided four different limited warranties throughout the eleven-year class period.[7] The initial limited warranty was a twenty-five-year warranty, and it provided that the Shingles were "free from manufacturing defects, which would reduce the useful life of the product."[8] The warranty was transferrable to future property owners.[9] On January 1, 2002, Atlas began issuing thirty-year limited warranties.[10] The thirty-year warranty provided that the Shingles were "free from manufacturing defects, which results in leaks."[11] Atlas also limited the number of transfers of the warranty. For the thirty-year warranty, the coverage could only be

---

[6] Id. ¶ 6.

[7] See Primary Mot. for Class Cert., Exs. Tab 23-26. The Plaintiff incorporates by reference the background section of Plaintiffs' Motion for Class Certification in Dishman v. Atlas Roofing Corp. See Mot. for Class Cert., at 2.

[8] See Primary Mot. for Class Cert., Ex. Tab 23.

[9] Id.

[10] Id.

[11] Id., Exs. Tab 24-26.

transferred once and the second owner had to provide Atlas notice of the transfer of coverage.[12]

The Plaintiff Bryan Makowski, who is a resident of Florence, Kentucky, purchased his home in 2011.[13] The home was built in 2004, and the Shingles were installed on the home at the time of its construction.[14] On or about March 24, 2012, the Plaintiff experienced a roof leak, causing damage to the inside of his home.[15] After the leak, the Plaintiff hired roofers to inspect his roof.[16] According to the Plaintiff, the roofers observed blistering, cracking, and granule loss on the Shingles.[17] The Plaintiff eventually filed a warranty claim with Atlas.[18] However, Atlas denied the claim, contending that the Shingles did not suffer from any manufacturing defects.[19] On August 28, 2014, the named Plaintiff filed suit in the United States District Court for

---

[12]     Id.

[13]     Mot. for Class Cert., Ex. Tab 1, at 30, 32.

[14]     Id., Ex. Tab 1, at 46, 48-49.

[15]     Id., Ex. Tab 1, at 53-56, 71-73.

[16]     Id., Ex. Tab 1, at 64-65, 69-70.

[17]     Id.

[18]     Id., Ex. Tab 1, at 150.

[19]     Id., Ex. Tab 2.

the Eastern District of Kentucky[20] on behalf of himself and others similarly situated in the state of Kentucky.[21] He seeks to bring his suit as a class action. Because similar consumer class actions were filed in other states, the Judicial Panel on Multidistrict Litigation transferred all related class actions pending in federal court to this Court for coordinated or consolidated pretrial proceedings.[22]

After the Motion to Dismiss stage, the Plaintiff's remaining claims in this class action are for negligence (Count I), negligent misrepresentation (Count II), strict products liability (Count III), breach of express warranty (Count IV), breach of implied warranties (Count V), violation of the Kentucky Consumer Protection Act (Count VI), fraudulent misrepresentation (Count VII), and fraudulent concealment

---

[20]    "[I]n multidistrict litigation under 28 U.S.C. § 1407, the transferee court applies the state law that the transferor court would have applied." In re Conagra Peanut Butter Prods. Liab. Litig., 251 F.R.D. 689, 693 (N.D. Ga. 2008); see also In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig., 97 F.3d 1050, 1055 (8th Cir. 1996) ("When considering questions of state law, however, the transferee court must apply the state law that would have applied to the individual cases had they not been transferred for consolidation."). Here, both parties agree that Kentucky law governs the Plaintiff's state law claims.

[21]    See [Doc. 1] under 1:14-cv-03034-TWT.

[22]    See Transfer Order [Doc. 1] under No. 1:13-md-02495-TWT.

(Count VIII).[23] The Plaintiff seeks both damages and equitable relief.[24] As damages, the Plaintiff seeks the cost of replacing the Shingles. He proposes two methods for calculating the replacement costs. First, he states that a common formula that calculates replacement costs on a square foot basis could be employed, allowing class members to recover by merely showing the size of their roofs.[25] This method accounts for the fact that "each class member's damages are the cost of removing the defective shingles, the cost of the replacement shingles plus all labor costs associated with this remediation."[26] In the alternative, he proposes that individual class members can prove their actual replacement costs through a claims process.[27]

---

[23]    See Order granting in part and denying in part the Defendant's Motion to Dismiss [Doc. 33] under No. 1:14-cv-03034-TWT.

[24]    The Plaintiff's request for declaratory relief was labeled Count IX.

[25]    See Primary Mot. for Class Cert., Ex. Tab 21, at 7 (stating that "[s]hingle replacement for most homes will cost $2.85 to $3.35 per square feet of roof area, with this square foot cost modified up or down based on a standard location adjustment factors that account for variations in local labor and material costs.").

[26]    Mot. for Class Cert., at 23.

[27]    Id.

## II. Class Certification Standard

To maintain a case as a class action, the party seeking class certification must satisfy each of the prerequisites of Rule 23(a) and at least one of the provisions of Rule 23(b).[28]  Rule 23(a) sets forth the four prerequisites to maintain any claim as a class action:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.[29]

These prerequisites are commonly referred to as: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.[30]  Failure to establish any one of the four factors precludes certification. In addition, under Rule 23(b), the individual plaintiffs must convince the Court that: (1) prosecuting separate actions by or against individual members of the class would create a risk of prejudice to the party opposing

---

[28]     Klay v. Humana, Inc., 382 F.3d 1241, 1250 (11th Cir. 2004), *abrogated in part on other grounds by* Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639 (2008)).

[29]     FED. R. CIV. P. 23(a).

[30]     Cooper v. Southern Co., 390 F.3d 695, 711 n.6 (11th Cir. 2004), *overruled in part on other grounds by* Ash v. Tyson Foods, Inc., 546 U.S. 454, 457-58 (2006).

the class or to those members of the class not parties to the subject litigation; (2) the

party opposing the class has refused to act on grounds that apply generally to the class,

necessitating final injunctive or declaratory relief; or (3) questions of law or fact

common to the members of the class predominate over any questions affecting only

individual members and that a class action is superior to other available methods for

fair and efficient adjudication of the controversy.[31] The party seeking class

certification bears the burden of proving that these requirements are satisfied.[32]

The decision to grant or deny class certification lies within the sound discretion

of the district court.[33] When considering the propriety of class certification, the court

should not conduct a detailed evaluation of the merits of the suit.[34] Nevertheless, the

court must perform a "rigorous analysis" of the particular facts and arguments asserted

---

[31] FED. R. CIV. P. 23(b).

[32] General Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 161 (1982); Valley Drug Co. v. Geneva Pharms., Inc., 350 F.3d 1181, 1187 (11th Cir. 2003).

[33] Klay, 382 F.3d at 1251; Armstrong v. Martin Marietta Corp., 138 F.3d 1374, 1386 (11th Cir. 1998) (en banc).

[34] Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177-78 (1974).

in support of class certification.[35] Frequently, that "rigorous analysis" will entail some overlap with the merits of the plaintiff's underlying claim.[36]

## III. Discussion

### A. Rule 23(b)(3) class

#### 1. Class Definition

Though not explicitly stated in Rule 23, it is well accepted that "[b]efore a district court may grant a motion for class certification, a plaintiff . . . must establish that the proposed class is adequately defined and clearly ascertainable."[37] "An identifiable class exists if its members can be ascertained by reference to objective criteria."[38] The analysis of the objective criteria must be administratively feasible, meaning identifying class members is a "manageable process that does not require

---

[35]    Falcon, 457 U.S. at 161; Gilchrist v. Bolger, 733 F.2d 1551, 1555 (11th Cir. 1984).

[36]    Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 351-52 (2011).

[37]    Little v. T-Mobile USA, Inc., 691 F.3d 1302, 1304 (11th Cir. 2012) (quoting DeBremaecker v. Short, 433 F.2d 733, 734 (5th Cir. 1970)); see also Sanchez-Knutson v. Ford Motor Co., 310 F.R.D. 529, 534 (S.D. Fla. 2015) ("The court may address the adequacy of the class definition before analyzing whether the proposed class meets the Rule 23 requirements.").

[38]    Bussey v. Macon Cnty. Greyhound Park, Inc., 562 F. App'x 782, 787 (11th Cir. 2014) (quoting Fogarazzo v. Lehman Bros., Inc., 263 F.R.D. 90, 97 (S.D.N.Y. 2009)).

much, if any, individual inquiry."[39] "A proponent of class certification may rely on the defendant's business records to identify prospective class members, but it is not enough to simply allege that the defendant's records will allow for identification."[40] "[T]he plaintiff must also establish that the records are in fact useful for identification purposes."[41]

Here, the Plaintiff seeks certification of the following Rule 23(b)(3) class:

> All those who as of the date class notice is issued: (a) own a home or other structure in the State of Kentucky on which Atlas Chalet or Stratford roofing shingles are currently installed; and/or (b) incurred unreimbursed costs to repair or replace Atlas Chalet or Stratford roofing shingles on a home or other structure in the State of Kentucky which they currently own or previously owned.[42]

The Defendant raises two objections to the proposed class definition. First, it argues that the class definition is overly broad. By including current and former owners who incurred costs in repairing or replacing their roofs, the Defendant contends that the class definition does not require the owners to have suffered any damage due to an

---

[39]     Id. (quoting NEWBERG ON CLASS ACTIONS § 3.3 (5th ed.)).

[40]     In re Delta/AirTran Baggage Fee Antitrust Litigation, No. 1:09-md-2089-TCB, 2016 WL 3770957, at *4 (N.D. Ga. July 12, 2016) (citation omitted) (citing Bussey, 562 F. App'x at 787).

[41]     Id. (quoting Karhu v. Vital Pharm., Inc., 621 F. App'x 945, 947 (11th Cir. 2015)).

[42]     Mot. for Class Cert., at 5.

alleged manufacturing defect. The Defendant also argues that the class is not ascertainable. It contends that determining who qualifies as a member under the second category would require "mini-trials."[43]

The Court agrees with both of the Defendant's objections. For the Defendant's first objection, the Court finds that this issue is better addressed in its predominance discussion. The Plaintiff alleges that every Shingle is defective, and so the question becomes whether the former and current owners can prove that the alleged defect caused their injuries – the replacement or repair costs of their roofs – or were they due to other causes. This causation question raises concerns regarding individualized evidence, and thus the Court will address it in the predominance section of its Order. Still, the Plaintiff has failed to demonstrate that identification of Atlas Chalet/Stratford Shingles is administratively feasible. The Defendant usually did not sell the Shingles directly to homeowners. The Plaintiff contends that there are reliable methods for determining membership, including markings on the Shingles and warranty claims.[44] But other than a list of warranty claims made in Kentucky, the Plaintiff has failed to put forth evidence demonstrating how class members can be easily ascertained.[45] The

_____

[43]     See Def.'s Primary Resp. Brief, at 42.

[44]     Mot. for Class Cert., at 6.

[45]     See In re Delta/AirTran Baggage Fee Antitrust Litigation, 2016 WL 3770957, at *16 (noting that the plaintiffs provided receipts or credit card statements

Defendant has offered evidence that most warranty claims were generated by roofers soliciting business by advertising that the Atlas Shingles were defective. And the warranty claims only represent a tiny fraction of the homes with Atlas Shingle roofs. In addition, the Plaintiff does not proffer evidence that demonstrates each Shingle contains a marking indicating it is an Atlas Chalet or Stratford Shingle. This potentially means a large number of class members' Shingles will need to be individually examined to determine whether they are Chalet/Stratford Shingles. That is exactly the kind of individual inquiry the ascertainability requirement is meant to protect against.[46] The Plaintiff also does not submit any receipts, invoices, or credit card records that demonstrate using such records is a viable option for identifying class members. Merely noting that such records could be used is insufficient to demonstrate ascertainability.[47] In sum, the Court finds that the Plaintiff fails to

---

documenting their purchases in addition to the defendants' business records).

[46]     See Gonzalez v. Corning, 317 F.R.D. 443, 506 (W.D. Pa. 2016) ("Class members whose structures have Oakridge-brand shingles installed on them cannot be determined by release tape. At most, the release tape will indicate that the shingle was manufactured at a plant that produces Oakridge-brand shingles." (citation omitted)), appeal docketed, No. 16-2653 (3d Cir. June 2, 2016).

[47]     See Carrera v. Bayer Corp., 727 F.3d 300, 306-07 (3d Cir. 2013) ("A plaintiff may not merely propose a method of ascertaining a class without any evidentiary support that the method will be successful."); Brooks v. GAF Materials Corp., 284 F.R.D. 352, 363 (D.S.C. 2012) (finding a putative class was not ascertainable because the plaintiffs only put forth the defendant's warranty documents as a possible database to identify putative class members).

demonstrate an administratively feasible mechanism for identifying class members in either category of the class definition.[48] Without a clearly ascertainable class, the Court cannot grant class certification.[49] Nevertheless, because the Court's Order is subject to immediate appeal under Rule 23(f), the Court will address the requirements of Rules 23(a) and 23(b)(3) to determine whether the Plaintiff would otherwise be entitled to class certification.[50]

### 2. Rule 23(a)

#### a. Numerosity

To satisfy the numerosity requirement, the Plaintiff must show that joinder of all members of the putative class would be "impractical."[51] "Practicability of joinder depends on many factors, including, for example, the size of the class, ease of identifying its numbers and determining their addresses, facility of making service on

---

[48]    See Marcus v. BMW of North America, LLC, 687 F.3d 583, 593 (3d Cir. 2012) ("If class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate.").

[49]    See Perez v. Metabolife Intern., Inc., 218 F.R.D. 262, 266 (S.D. Fla. 2003) ("An identifiable class is essential so that the Court can determine whether a particular claimant is a class member." (quoting McGuire v. International Paper Co., No. 1:92-CV593BRR, 1994 WL 261360, at *3 (S.D. Miss. Feb. 18, 1994))).

[50]    FED. R. CIV. P. 23(f).

[51]    FED. R. CIV. P. 23 (a)(1).

them if joined and their geographic dispersion."[52] "[W]hile there is no fixed numerosity rule, generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors."[53] The Plaintiff has met its burden with regard to numerosity. He has presented evidence that at least 58 warranty claims were made by Kentucky homeowners.[54] The Plaintiff, therefore, has presented sufficient evidence that the likely number of homeowners in Kentucky who fall within the class exceeds the minimum threshold. Moreover, the large number of putative class members makes joinder impractical. Thus, the Court finds the numerosity requirement is satisfied.

### b. Commonality

The commonality requirement is satisfied if the named plaintiff demonstrates the presence of questions of law or fact common to the entire class.[55] It is not necessary that all questions of law and fact be common.[56] Indeed, "[e]ven a single

---

[52] Kilgo v. Bowman Transp., Inc., 789 F.2d 859, 878 (11th Cir. 1986).

[53] Cox v. American Cast Iron Pipe Co., 784 F.2d 1546, 1553 (11th Cir. 1986).

[54] See Mot. for Class Cert., Ex. Tab 3.

[55] Fed. R. Civ. P. 23 (a)(2).

[56] Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 359 (2011).

[common] question" is sufficient to satisfy the commonality requirement.[57]  But the

issues still must be susceptible to class-wide proof, and the plaintiff's claims must

share "the same essential characteristics as the claims of the class at large."[58]

"Commonality requires the plaintiff to demonstrate that the class members 'have

suffered the same injury.'"[59] "This does not mean merely that they all suffered a

violation of the same provision of law."[60] "Their claims must depend upon a common

contention . . . of such a nature that it is capable of classwide resolution – which

means that determination of its truth or falsity will resolve an issue that is central to

the validity of each one of the claims in one stroke."[61]

Here, the Court finds that the Plaintiff has sufficiently demonstrated

commonality. The Plaintiff alleges that the Shingles suffer from a common defect due

to a flaw in the manufacturing process. Thus, some common issues include: (1)

whether the Shingles are defective; (2) whether the defect is caused by a flawed

manufacturing process; (3) whether the defect causes the Shingles to suffer from

---

[57]     Id. (alteration in original).

[58]     Cooper v. Southern Co., 390 F.3d 695, 713 (11th Cir. 2004).

[59]     Wal-Mart, 564 U.S. at 349-50 (quoting General Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 157 (1982)).

[60]     Id. at 350.

[61]     Id.

blistering, cracking, and granule loss problems as well as premature failure; (4) whether the defect in the Shingles breached the Defendant's expressed and implied warranties; and (5) whether the Defendant knew of the defect.[62] These questions of fact are common to the Plaintiff's claims and will generate common answers.[63] Accordingly, the Plaintiff has satisfied the commonality requirement.

### c. Typicality

The typicality requirement mandates that the claims and defenses of the representative plaintiffs are typical of the claims and defenses of the class.[64] This requirement is satisfied when "a plaintiff's injury arises from or is directly related to a wrong to a class, and that wrong includes the wrong to the plaintiff."[65] But "[c]lass members' claims need not be identical to satisfy the typicality requirement."[66] This is because "typicality measures whether a sufficient nexus exists between the claims of

---

[62]    See Mot. for Class Cert., at 10-11.

[63]    See Wal-Mart, 564 U.S. at 350.

[64]    FED. R. CIV. P. 23(a)(3).

[65]    Andrews v. American Tel. &Tel. Co., 95 F.3d 1014, 1022 (11th Cir. 1996), *abrogated on other grounds by* Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639, 641 (2008).

[66]    Ault v. Walt Disney World Co., 692 F.3d 1212, 1216 (11th Cir. 2012).

the named representatives and those of the class at large."[67] "A sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory."[68]

Here, the Plaintiff's claims arise from the same allegations of wrongful conduct as the claims of the putative class members. Specifically, all the claims are based on the sale of Shingles which allegedly suffer from the same defect. Moreover, the Plaintiff's claims arise from the same legal theories, including breach of express and implied warranties. In response, the Defendant argues that, based on the experiences of the named Plaintiff, there is no typical plaintiff, and that individualized defenses render the Plaintiff's claims atypical. To be sure, the named Plaintiff experienced different weather conditions, installation, and maintenance of his roof than the putative class members. In addition, the named Plaintiff's warranties are not necessarily typical of the class as a whole. Nevertheless, "the showing required for typicality is not demanding."[69] Varying experiences and unique defenses do not

---

[67] Cooper v. Southern Co., 390 F.3d 695, 713 (11th Cir. 2004) (quoting Prado-Steiman v. Bush, 221 F.3d 1266, 1279 (11th Cir. 2000)).

[68] Kornberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332 (11th Cir. 1984).

[69] City of St. Petersburg v. Total Containment, Inc., 265 F.R.D. 630, 651 (S.D. Fla. 2010).

necessarily defeat typicality.[70] If a "sufficient nexus" exists – as the Court found above – then the typicality requirement is met. Thus, the Court concludes that the Plaintiff has satisfied Rule 23(a)'s typicality requirement.

### d. Adequacy of Representation

To prove adequacy of representation, a plaintiff must demonstrate that the class representatives "fairly and adequately protect the interests of the class."[71] This requirement serves to uncover conflicts of interest between named parties and the class they seek to represent.[72] A determination of adequacy "encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action."[73] The Court finds that the named Plaintiff and his counsel adequately represent the class. First, there is no evidence of any conflicts of interest between the named Plaintiff and the class. As noted above, the named Plaintiff and the

---

[70]    See Ault, 692 F.3d at 1216 ("While each class member may have a stronger or weaker claim depending upon his or her degree of reliance, we conclude that this alone does not make class representatives' claims atypical of the class as a whole.").

[71]    FED. R. CIV. P. 23(a)(4).

[72]    Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625 (1997).

[73]    Valley Drug Co. v. Geneva Pharm., Inc., 350 F.3d 1181, 1189 (11th Cir. 2003).

putative class members seek to recover from the same alleged unlawful conduct – a defect in the Defendant's Shingles. Second, there is no evidence that the named Plaintiff will not vigorously and adequately pursue the asserted claims on behalf of the class members. Third, there is no evidence of any potential conflicts with class counsel. Moreover, the Plaintiff has presented evidence that proposed class counsel have extensive experience with class actions and are qualified to conduct this litigation.[74] Thus, the Plaintiff has satisfied Rule 23(a)(4).

### 3. Rule 23(b)(3)

#### a. Predominance

The Plaintiff seeks class certification under Rule 23(b)(3). To certify a Rule 23(b)(3) class, the Plaintiff must demonstrate two prerequisites: predominance and superiority.[75] To meet the predominance requirement, "the issues in the class action that are subject to generalized proof and thus applicable to the class as a whole, must predominate over those issues that are subject to individualized proof."[76] "Common issues of fact and law predominate if they ha[ve] a direct impact on every class member's effort to establish liability and on every class member's entitlement to

---

[74]     See Mot. for Class Cert., Ex. Tab 7.

[75]     FED. R. CIV. P. 23(b)(3).

[76]     Cooper v. Southern Co., 390 F.3d 695, 722 (11th Cir. 2004) (quoting Kerr v. City of W. Palm Beach, 875 F.2d 1546, 1558 (11th Cir. 1989)).

injunctive and monetary relief."[77] Importantly, "[w]hether an issue predominates can only be determined after considering what value the resolution of the class-wide issue will have in each class member's underlying cause of action."[78] But if the "plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims," then predominance does not exist.[79]

In Brown v. Electrolux Home Products, Inc., the Eleventh Circuit provided a three-step approach for evaluating predominance: (1) identify the parties' claims and defenses and their elements; (2) determine whether these issues are common questions or individual questions by analyzing how each party will prove them at trial; and (3) determine whether the common questions predominate.[80] In addition, the Eleventh Circuit noted that "[d]istrict courts should assess predominance with its overarching purpose in mind – namely, ensuring that 'a class action would achieve economies of time, effort, expense, and promote . . . uniformity of decision as to persons similarly

---

[77]    Babineau v. Federal Express Corp., 576 F.3d 1183, 1191 (11th Cir. 2009) (alteration in original) (quoting Klay v. Humana, Inc., 382 F.3d 1241, 1255 (11th Cir. 2004)).

[78]    Klay, 382 F.3d at 1255 (quoting Rutstein v. Avis Rent-A-Car Sys., 211 F.3d 1228, 1234 (11th Cir. 2000)).

[79]    Id.

[80]    817 F.3d 1225, 1234 (11th Cir. 2016).

situated, without sacrificing procedural fairness or bringing about other undesirable results.'"[81]

### (i) Breach of Express and Implied Warranties

In Counts IV and V of his Complaint, the Plaintiff alleges that the Defendant breached its express and implied warranties. Under Kentucky law, to prevail on a breach of warranty claim, a plaintiff must demonstrate the following elements: "(1) the seller makes an affirmation of fact or promise; (2) that relates to the goods; and (3) becomes part of the basis of the bargain between the parties."[82] To prove a breach of implied warranty of merchantability claim, "Plaintiffs must show that the [product] they purchased w[as] unmerchantable."[83] Products are merchantable if they "are fit for the ordinary purposes for which goods of that description are used."[84] For breach of implied warranty of fitness for a particular purpose, the Plaintiff must establish that the seller knew at the time of the contract that the buyer had intended a particular purpose for the goods, and that the buyer relied on the skill or judgment of the seller

---

[81] Id. at 1235 (quoting Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 615 (1997)).

[82] Naiser v. Unilever U.S., Inc., 975 F. Supp. 2d 727, 733 (W.D. Ky. 2013).

[83] In re SIGG Switz. (USA), Inc. Aluminum Bottles Mktg. & Sales Practices Litig., No. 10-MD-2137, 2011 WL 159940, at *4 (W.D. Ky. Jan. 12, 2011).

[84] Id. (quoting U.C.C. § 2-314(2)(c)).

to supply the appropriate goods.[85] In addition, to prove either breach of implied warranty claim, "privity of contract must exist between the parties."[86] And, of course, the Plaintiff must prove causation and damages for all of his warranty claims.[87]

Here, the Court finds that – even if the Plaintiff could prove a uniform defect – individual issues going to causation, notice, coverage, privity and statute of limitations predominate over any common questions in this case. To begin, there are numerous reasons a roof may fail, including commonplace events and ordinary wear and tear.[88] There are also numerous reasons a shingle may blister, crack, or suffer from granule loss.[89] Thus, it is likely that the Defendant will bring at least one causation challenge against most – if not all – putative class members. Because the causation determination for most putative class members will involve individualized evidence,

---

[85]    Smart & Assocs., LLC v. Independent Liquor (NZ), No. 3:10-cv-614-DJH-DW, 2016 WL 7494471, at *16 (W.D. Ky. Dec. 30, 2016).

[86]    Id. at *14; see also Mitchell v. General Motors LLC, No. 3:13-cv-498-CRS, 2014 WL 1319519, at *6 (W.D. Ky. March 31, 2014) (finding that the plaintiff did not state a breach of implied warranty claim because the plaintiff did not establish the existence of a direct buyer-seller relationship).

[87]    Overstreet v. Norden Labs., Inc., 669 F.2d 1286, 1295 (6th Cir. 1982) (noting that a breach of warranty claimant "may recover only for damages that are caused by the breach").

[88]    See Primary Mot. for Class Cert., Ex. Tab 20, at 137-38.

[89]    Id., Ex. Tab 20, at 198.

these individual causation questions will predominate at any trial.[90] In response, the

Plaintiff argues that if the jury agrees with his argument that a defect existed in every

Shingle at the time it was sold, then Atlas's arguments regarding alternative causation

will be negated. Not so. Because the Plaintiff seeks the replacement costs of all class

members' roofs, the alleged defect in the Shingles must have caused a class member's

injuries in order for that class member to recover.[91] All roofs will fail eventually. If

an Atlas Shingle roof  survives to the end of normal roof life expectancy, the

homeowner-class member has not been damaged by the alleged manufacturing defect.

If the roof fails due to hail or wind damage or improper installation, the homeowner-

class member has not been damaged. This is unlike a products liability case where the

plaintiffs claim an economic injury by seeking the diminution in the intrinsic value of

the product.[92] In such cases, the plaintiffs typically only need to prove that the defect

---

[90]     See City of St. Petersburg v. Total Containment, Inc., 265 F.R.D. 630, 641 (S.D. Fla. 2010) (holding that "even if Plaintiffs were able to demonstrate that FlexPipe had a general defect, it would not assist Plaintiffs in meeting their burden of showing that that particular defect was the legal cause of each class member's harm").

[91]     See Marcus v. BMW of North Am. LLC, 687 F.3d 583, 605 (3d Cir. 2012) ("[I]t is undisputed that even if Marcus could prove that Bridgestone RFTs suffer from common, class-wide defects, those defects did not cause the damage he suffered for these two tires: the need to replace them.").

[92]     See Farrar & Farrar Dairy, Inc. v. Miller-St. Nazianz, Inc., 254 F.R.D. 68, 73 (E.D.N.C. 2008) ("[N]amed plaintiffs seek to recover damages for the *results* of the failure of the allegedly defective silage bags – the gravamen of their complaint is not diminution in the silage bags' intrinsic value."); Naparala v. Pella Corp., Nos.

existed at the time of purchase to prove the defect caused their economic injury.[93]

Here, even if the Plaintiff proves a common defect existed in the Shingles, each class

member cannot recover damages based on that fact alone. They also must prove that

the alleged defect caused their roof to prematurely fail. For the class members who

have already had their roofs replaced or repaired, this will be an especially fact-

intensive inquiry.

The Plaintiff cites two cases – <u>Sanchez-Knutsen v. Ford Motor Co.</u> and <u>Brooks

v. GAF Materials Corp.</u> – which he contends support his argument. However, the

Court finds that these cases do not help the Plaintiff. In <u>Sanchez-Knutsen</u>, the court

dismissed the need for individual inquiries into causation, concluding that the

evidence did not justify the defendant's concerns.[94] At issue was whether Ford's

Explorer vehicle suffered from a defect at the time of purchase that permitted exhaust

---

2:14-mn-00001-DCN, 2:14-cv-03465-DCN, 2016 WL 3125473, at *11 (D.S.C. June 3, 2016) (holding that complex causation issues existed because the "plaintiff's claim focuses on Pella's failure to repair and replace the Windows, not the initial purchase of the Windows").

[93]    See <u>Daffin v. Ford Motor Co.</u>, No. C-1-00-458, 2004 WL 5705647, at *7 (S.D. Ohio July 15, 2004) ("The alleged injury, however, is not accelerator sticking but economic loss resulting directly from the allegedly defective piece of equipment. The causation question is therefore vastly simplified and does not suffer the infirmities argued by Ford.").

[94]    <u>Sanchez-Knutson v. Ford Motor Co.</u>, 310 F.R.D. 529, 538 (S.D. Fla. 2015).

and other gases to enter the passenger compartment of the vehicle.[95] The court in

Sanchez-Knutsen framed the plaintiffs' damages as the diminution in the intrinsic

value of their Explorers, not the repair costs.[96] Thus, the court did not face the same

causation issues presented in this instant case. Here, each class member will need to

prove that the alleged defect caused his or her Shingles to prematurely fail, not just

that the defect exists. This will likely create substantial causation inquiries when

deciding the class members' claims.

Brooks is also distinguishable. There, homeowners sued GAF Materials Corp.

("GAF"), which manufactures roofing materials, over allegedly defective roof

shingles.[97] Specifically, the named plaintiffs sought to represent a class of individuals

whose shingles allegedly prematurely cracked.[98] In certifying the proposed class, the

court discounted the need for individual causation inquiries, stating that the "Plaintiffs

seek to establish causation on a large scale – that GAF knowingly sold shingles that

contained an inherent manufacturing defect that will inevitably cause the shingles to

---

[95]     Id. at 533.

[96]     Id. at 538-39.

[97]     Brooks v. GAF Materials Corp., No. 8:11-cv-00983-JMC, 2012 WL
5195982, at *1 (D.S.C. Oct. 19, 2012).

[98]     Id.

crack, split, or tear."[99] While the Plaintiff, here, presents a similar causation argument, the Court believes that evidence in this case demonstrates that other specific causation issues – such as improper installation, inadequate ventilation, or environmental factors – will be significant in deciding the putative class members' cases. Moreover, the class in <u>Brooks</u> was limited to persons whose shingles had already cracked, split, or torn.[100] Here, the breadth of the Plaintiff's proposed class is much larger – it includes owners whose roofs may have been repaired or replaced for reasons other than the alleged premature failure. As a result, the Plaintiff's proposed class presents more individualized causation questions.

Individual issues will also predominate with respect to two requirements in Atlas's express warranty: transferability and notice. Transferability presents individual questions because the 2002 limited warranty specifically requires a second owner to notify Atlas in writing within thirty days of the real estate transfer for any coverage to be transferred.[101] The third-owner class members are not even eligible to recover under the 2002 limited warranty.[102] As a result, the class members who purchased a

---

[99]    <u>Id.</u> at *6.

[100]   <u>Id.</u> at *4.

[101]   <u>See</u> Def.'s Primary Resp. Brief, Ex. G.

[102]   <u>Id.</u>

home with Atlas Shingles already installed on it will have to prove that the warranty properly transferred to them. Proving compliance with Atlas's notice requirement will require even more individualized evidence. The 1999 limited warranty requires each warrantee to provide notice of the alleged defect to Atlas within five days of discovering it, and the 2002 limited warranty requires notice within thirty days of discovery.[103] Each class member will then need to demonstrate that his or her notice to Atlas was for the alleged defect and not for an unrelated issue. Finally, each class member will need to demonstrate that he or she provided Atlas an opportunity to cure the alleged defect. There are, therefore, numerous individualized issues that will predominate the issues of notice and transferability.

In response, the Plaintiff first argues that evidence of numerous consumer complaints regarding the alleged defect may be used to satisfy the notice requirement. He cites several cases where courts have found that widespread consumer complaints are sufficient to establish constructive notice.[104] But the Kentucky courts have yet to recognize constructive notice in this context. As a result, the Court is unwilling to hold that constructive notice is sufficient to satisfy the notice requirement. The Plaintiff

---

[103]    Id., Exs. G-H.

[104]    See, e.g., Muehlbauer v. General Motors Corp., 431 F. Supp. 2d 847, 859-60 (N.D. Ill. 2006).

then argues that, through common evidence, he will demonstrate the Defendant waived the notice requirement. According to the Plaintiff, the Defendant never asked the warranty claimants whether they were filing their claims within thirty days of discovering the alleged defect. Nor did the Defendant enforce the requirement when it knew the claimants were late. The Plaintiff cites <u>RHL Properties LLC v. Neese</u>[105] in support of his contention. There, the Georgia Court of Appeals stated that courts "will readily find a waiver of strict compliance with a notice provision based on the conduct of the parties in order to avoid a forfeiture of substantive contractual rights."[106] Thus, the Plaintiff argues that by routinely failing to insist on compliance with the notice requirement, the Defendant waived the requirement. The Court disagrees. The <u>Neese</u> case concerned whether the defendant waived its notice requirement with respect to one party.[107] The Plaintiff has failed to cite any case law that states a defendant may waive the notice requirement with respect to all of its warranty claimants if it does not enforce the requirement for each past claimant. Consequently, the Court finds that the notice and opportunity to cure requirements are individual issues that cannot be resolved through common evidence.

---

[105]     293 Ga. App. 838 (2008).

[106]     <u>Id.</u> at 841.

[107]     <u>Id.</u> at 841-42.

For the Plaintiff's breach of implied warranty claims, the class members will also need to prove they are in privity with Atlas.[108] As the Defendant correctly points out, most class members did not purchase their Shingles directly from the Defendant. "The Chalet/Stratford shingles at issue were sold by Atlas to independent wholesale building product distributors, who, in turn, sold them to roofing subcontractors or builders, who, in turn installed them on roofs, which were, in turn, sold to an original owner as part of a house or building . . . ."[109] Thus, many class members will have a difficult time demonstrating privity. Moreover, individualized evidence will be necessary for each class member.

Atlas is also likely to employ affirmative defenses against many class members, with the most likely defense being the statute of limitations. Under Kentucky law, warranty claims must be brought within four years "after the cause of action has accrued."[110]

> A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except where a warranty explicitly extends to future performance of the goods and discovery of

---

[108]    See Mitchell v. General Motors LLC, No. 3:13-cv-498-CRS, 2014 WL 1319519, at *6 (W.D. Ky. March 31, 2014).

[109]    Def.'s Resp. Br., at 17 (citing Villar Dep., at 49-51, 143)).

[110]    Ky. Rev. Stat. Ann. § 355.2-725.

the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.[111]

As the Defendant correctly pointed out during the class certification hearing, based on Atlas's sales data, only 5% of the Shingles were sold in the last four years.[112] Thus, it is likely a large percentage of the class members' warranty claims will be barred by the statute of limitations.

The Plaintiff counters with the general rule that individual affirmative defenses usually do not defeat predominance.[113] Thus, he contends that the statute of limitations issue, along with other potential affirmative defenses, can be handled in the second phase of the case after a liability trial. It is accurate that "courts traditionally have been reluctant to deny class action status under Rule 23(b)(3) simply because affirmative defenses may be available against individual members."[114] But as the Eleventh Circuit recently confirmed in Brown v. Electrolux Home Products, Inc., affirmative defenses

---

[111]      Id.

[112]      See Mot. for Class Cert. Hearing [Doc. 366], at 102 under No. 1:13-md-02495-TWT.

[113]      In re Checking Account Overdraft Litigation, 286 F.R.D. 645, 656 (S.D. Fla. 2012) ("Unique affirmative defenses rarely predominate where a common course of conduct is established.").

[114]      Brown v. Electrolux Home Products, Inc., 817 F.3d 1225, 1240 (11th Cir. 2016) (quoting WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 4:55 (5th ed.)).

are nevertheless relevant when determining the question of predominance.[115]

Specifically, the Eleventh Circuit noted that affirmative defenses that are coupled with

several other individual questions could defeat predominance.[116] Such is the case here.

The statute of limitations defense coupled with the other individual issues discussed

above outweigh any common questions raised by the class's warranty claims.

### (ii) Fraudulent Misrepresentation/Concealment

In Counts Count VII and VIII of his Complaint, the Plaintiff asserts claims for

both fraudulent misrepresentation and fraudulent concealment.

> Fraud through misrepresentation requires proof that: (1) the defendant
> made a material representation to the plaintiff; (2) the representation was
> false; (3) the defendant knew the representation to be false or made it
> with reckless disregard for its truth or falsity; (4) the defendant intended
> to induce the plaintiff to act upon the misrepresentation; (5) the plaintiff
> reasonably relied upon the misrepresentation; and (6) the
> misrepresentation caused injury to the plaintiff.[117]

To demonstrate a fraudulent concealment claim, "a plaintiff must prove: (1) the

defendant had a duty to disclose the material fact at issue; (2) the defendant failed to

---

[115]     Id. at 1241.

[116]     Id.

[117]     Giddings & Lewis, Inc. v. Industrial Risk Insurers, 348 S.W.3d 729, 747
(Ky. 2011).

disclose the fact; (3) the defendant's failure to disclose the material fact induced the plaintiff to act; and (4) the plaintiff suffered actual damages as a consequence."[118]

Thus, the class members will need to prove they relied on the alleged misrepresentation or omission when purchasing the Shingles. The Defendant contends that, in the instant case, reliance is an individual issue that cannot be proven through common evidence. The Plaintiff counters that "under well-established Eleventh Circuit precedent, the simple fact that reliance is an element in a cause of action is not an absolute bar to class certification."[119] He then goes one step further and states that the class members will be able to use circumstantial evidence when demonstrating reliance. He points to <u>Klay v. Humana, Inc.</u> in support of his contention. In <u>Klay</u>, a putative class action was brought by a group of doctors who submitted claims for reimbursement to HMOs but were systematically underpaid.[120] The court concluded that class certification was appropriate for the plaintiffs' RICO claim for two reasons. First, common issues of fact, which included the existence of a national conspiracy, a pattern of racketeering activity, and a Managed Care Enterprise, predominated "over

---

[118]     <u>Id.</u>

[119]     <u>Klay v. Humana, Inc.</u>, 382 F.3d 1241, 1258 (11th Cir. 2004); <u>see also</u> Pl.'s Reply Br., at 23.

[120]     <u>Id.</u> at 1246-47.

all but the most complex individualized issues."[121] Second, the court found "that, based on the nature of the misrepresentations at issue, the circumstantial evidence that can be used to show reliance is common to the whole class."[122] In clarifying the nature of the misrepresentations, the Eleventh Circuit stated:

> The alleged misrepresentations in the instant case are simply that the defendants repeatedly claimed they would reimburse the plaintiffs for medically necessary services they provide to the defendants' insureds, and sent the plaintiffs various EOB forms claiming that they had actually paid the plaintiffs the proper amounts. While the EOB forms may raise substantial individualized issues of reliance, the antecedent representations about the defendants' reimbursement practices do not. It does not strain credulity to conclude that each plaintiff, in entering into contracts with the defendants, relied upon the defendants' representations and assumed they would be paid the amounts they were due. A jury could quite reasonably infer that guarantees concerning physician pay – the very consideration upon which those agreements are based – go to the heart of these agreements, and that doctors based their assent upon them.[123]

The Plaintiff contends that the misrepresentations in <u>Klay</u> are similar to the misrepresentations by Atlas in that no class member would purchase Shingles that are going to prematurely fail. Therefore, all the class members relied on Atlas's alleged omission and misrepresentations regarding the durability of the Shingles when they purchased the Shingles.

---

[121]     <u>Id.</u> at 1259.

[122]     <u>Id.</u>

[123]     <u>Id.</u>

The Plaintiff's analogy is misplaced. "[A] fraud case may be unsuited for treatment as a class action if there was material variation in the representations made or in the kinds of degrees of reliance by the persons to whom they were addressed."[124] When presented with such cases, "the Eleventh Circuit has repeatedly found class certification inappropriate."[125] In this case, there are both material variation in the representations and kinds of degrees of reliance by the class members. For the alleged misrepresentations, each class member would need to establish what particular marketing material or industry standard he or she observed and relied upon. This is further complicated by third party wholesalers, retailers, and contractors who made the purchase decisions for the vast majority of the Shingle purchases. Indeed, there is no evidence that Atlas engaged in a uniform marketing scheme. Thus, the class members cannot use common evidence to prove they relied on Atlas's statements regarding the durability of the Shingles. For the alleged fraudulent omission, the class members made their own assessment when deciding to purchase the Shingles or homes with the Shingles installed on the roof. As an example, some class members may have been on notice of blistering, cracking, and granule loss on the Shingles, but

---

[124]     Fisher v. Ciba Specialty Chemicals Corp., 238 F.R.D. 273, 313 (S.D. Ala. 2006) (quoting FED. R. CIV. P. 23(b)(3), Advisory Notes to 1966 Amendment).

[125]     Id. (citing Heffner v. Blue Cross & Blue Shield of Ala., Inc., 443 F.3d 1330, 1344 (11th Cir. 2006)).

decided to purchase the property despite the conditions. Such class members would not have relied on the alleged omission. Unlike in <u>Klay</u>, the class will need to prove reliance through individual evidence. Thus, the Court finds that common issues do not predominate with regard to the Plaintiff's fraudulent inducement claim.[126]

### (iii) Negligence/ Negligent Misrepresentation

The Plaintiff alleges that the Defendant knowingly conveyed false information to class members when it stated the Shingles would perform up to industry standards.[127] In Kentucky, to prevail on a negligent misrepresentation claim, a plaintiff must prove that:

> (1) the transaction at issue is one in which the defendant had a pecuniary interest; (2) the defendant supplied false information; (3) the information was supplied for others' guidance in their business transactions; (4) the defendant failed to exercise reasonable care in communicating the information; (5) the plaintiff acted in reliance thereon; (6) the false information caused injury.[128]

---

[126]    <u>See</u> <u>Brinker v. Chicago Title Ins. Co.</u>, No. 8:10-cv-1199-T-27AEP, 2012 WL 1081182, at *6 (M.D. Fla. Mar. 30, 2012) (distinguishing <u>Klay</u> and finding that "it cannot be assumed that each class member relied on any alleged misrepresentations and omissions simply because he or she decided to close").

[127]    Mot. for Class Cert., at 21.

[128]    <u>Great Am. Ins. Co. v. Poynter</u>, No. 1:10-cv-00161-JHM, 2013 WL 1181445, at *7 (W.D. Ky. March 20, 2013) (citing <u>Presnell Constr. Managers, Inc. v. EH Constr., LLC</u>, 134 S.W.3d 575, 580-82 (Ky. 2004)).

Like the Plaintiff's fraud claims, the individual issues surrounding the element of reliance will predominate the negligent misrepresentation claim. For example, many class members purchased their Shingles through roofers. Thus, whether a class member relied on false information from Atlas when purchasing his or her Shingles from a roofer will require an individualized inquiry. And as the Court discussed above, the issues of causation and damages will also demand individualized evidence. As a result, the Court declines to certify the Plaintiff's negligence and negligent misrepresentation claims.

## (iv) Kentucky Consumer Protection Act

The KCPA prohibits "[u]fair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce."[129] Under the KCPA, a consumer who purchases a good as a result of unlawful trade practices can sue the seller for damages.[130] However, that consumer must have purchased the goods or services "primarily for personal, family or household purposes."[131] Here, the Shingles were installed on various structures for various uses. Indeed, some of the class members may be businesses that purchased the Shingles for use on a commercial property. Moreover, many class members did not purchase the Shingles directly from Atlas. Because of these varied circumstances, individual inquiries into each class member's primary reason for purchasing the Shingles will be necessary. Such individual inquiries into the state of mind of the class members will predominate over any common issues of fact or law.[132]

---

[129]    Ky. Rev. Stat. Ann. § 367.170(1).

[130]    Id. § 367.110.

[131]    Id. § 367.220(1).

[132]    Corder v. Ford Motor Co., 297 F.R.D. 572, 578 (W.D. Ky. 2014) (finding that predominance was not met for the plaintiff's KCPA claim because "the court would still need to undertake an individualized inquiry into the customers' primary initial intended use for the vehicle at the time acquisition").

### (v) Strict Products Liability

> Under Kentucky law, to prevail in a strict products liability action, a plaintiff must show: (1) that there is a product, which is (2) in a defective condition unreasonably dangerous to the user or consumer or his property, and (3) which reaches the user or consumer without substantial change in the condition in which it is sold; (4) that the product is sold by one who is engaged in the business of selling such a product which (5) results in physical harm to the ultimate user or consumer or his property.[133]

Like the Plaintiff's warranty claims, the Plaintiff's strict products liability claim will be predominated by individualized causation questions. The individual class members will need to prove that the alleged damage, whether to the Shingles or other property, was caused by the alleged defective condition.[134] As the Court discussed in detail above, this inquiry will mandate individual evidence. In addition, the issues of damages and statute of limitations will need to be determined on an individualized basis. Thus, the Court finds that individual issues will predominate the Plaintiff's strict products liability claim.

---

[133] <u>Bosch v. Bayer Healthcare Pharms., Inc.</u>, 13 F. Supp. 3d 730, 742 (W.D. Ky. 2014).

[134] <u>See</u> <u>Love v. Danek Med., Inc.</u>, No. 3:95cv-706-S, 1998 WL 1048241, at *2 (W.D. Ky. Nov. 25, 1998).

### b. Superiority

To meet the superiority requirement, the Court must conclude "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[135] The factors relevant in determining superiority include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.[136]

Class certification "cannot be denied because the number of potential class members makes the proceeding complex or difficult."[137] But the difficulties in managing a class are important "if they make the class action a less fair and efficient method of adjudication than other available techniques."[138] Thus, the focus should be "on the

---

[135]     FED. R. CIV. P. 23(b)(3).

[136]     Carriuolo v. General Motors Co., 823 F.3d 977, 989 (11th Cir. 2016) (quoting FED. R. CIV. P. 23(b)(3)).

[137]     In re Theragenics Corp. Sec. Litig., 205 F.R.D. 687, 697 (N.D. Ga. 2002).

[138]     Id. at 697-98 (quoting In re Domestic Air Transp. Antitrust Litigation, 137 F.R.D. 677, 693 (N.D. Ga. 1991)).

relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs."[139]

The Court finds that class treatment is not superior to other available methods of adjudication. Based on the number of individual issues discussed above, adjudicating these claims on a class-wide basis will likely present a manageability problem. There will be numerous fact-intensive individual inquiries, including physical inspection of class members' Shingles and individual testimony regarding when class members discovered the defect and provided notice to Atlas. In addition, the Court does not agree with the Plaintiff's contention that the class members lack any significant interest in controlling the litigation. The damages claimed by the named Plaintiff are not insignificant. The Plaintiff's own expert opined that replacing a roof can be "several thousand dollars to tens of thousands of dollars."[140] Thus, this case is unlike class actions where the class members have suffered only a minor harm and would not pursue their claim but for the class action mechanism.[141] The owners

---

[139]    Klay v. Humana, Inc., 382 F.3d 1241, 1269 (11th Cir. 2004).

[140]    See Primary Mot. for Class Cert., Ex. Tab 21, at 47.

[141]    Cf. In re Delta/AirTran Baggage Fee Antitrust Litigation, No. 1:09-md-2089-TCB, 2016 WL 3770957, at *23 (N.D. Ga. July 12, 2016) ("Where, as here, the class members' claims are 'so small that the cost of individual litigation would be far greater than the value of those claims,' the class-action vehicle is superior to other forms of litigation available to Plaintiffs, and class certification is appropriate.").

have the option of pursuing their claims in state court, where claims of several thousands dollars are common.[142] In sum, the Court finds that Rule 23(b)'s superiority requirement is not satisfied.

## B. Rule 23(c)(4) Class

As an alternative, the Plaintiff asks the Court to certify a Rule 23(c)(4) class consisting of four common questions: "(1) whether the shingles suffer from a common manufacturing defect; (2) whether the defect breaches any express or implied warranties; (3) whether the defect necessitates replacement of all roofs containing the shingles; and (4) whether Atlas fraudulently concealed the defect."[143] The Plaintiff contends that certifying a class based on these four questions will materially advance the litigation.

Under Rule 23(c)(4), "an action may be brought or maintained as a class action with respect to particular issues."[144] However, there is a split among courts over how to apply the predominance test when asked to certify an issue class.[145] Some courts

---

[142]    See Gonzalez v. Owens Corning, 317 F.R.D. 443, 524 (W.D. Pa. 2016).

[143]    See Pl.'s Primary Reply Br. [Doc. 61], at 25 under No. 1:13-cv-02195-TWT. The Plaintiff incorporates by reference Section V of Plaintiffs' Reply Brief in Dishman v. Atlas Roofing Corp. See Pl.'s Reply Br., at 24.

[144]    FED. R. CIV. P. 23(c)(4).

[145]    Compare In re Nassau Cty. Strip Search Cases, 461 F.3d 219, 225 (2d Cir. 2006) ("[A] court may employ Rule 23(c)(4)(A) to certify a class on a particular

have certified issue classes despite a lack of overall predominance.[146] But many other courts "have emphatically rejected attempts to use the (c)(4) process for certifying individual issues as a means for achieving an end run around the (b)(3) predominance requirement."[147] These courts note that "the proper interpretation of the interaction between subdivisions (b)(3) and (c)(4) is that a cause of action, as a whole, must satisfy the predominance requirement of (b)(3) and that (c)(4) is a housekeeping rule that allows courts to sever common issues for a class trial."[148] The Court finds the latter interpretation to be persuasive.[149] As discussed above, even if the Plaintiff could

_____

issue even if the action as a whole does not satisfy Rule 23(b)(3)'s predominance requirement."), with Castano v. American Tobacco Co., 84 F.3d 734, 745 n.21 (5th Cir. 1996) ("A district court cannot manufacture predominance through the nimble use of subdivision (c)(4).").

[146]    See Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996) ("[E]ven if the common questions do not predominate over the individual questions so that class certification of the entire action is warranted, Rule 23 authorizes the district court in appropriate cases to isolate the common issues under Rule 23(c)(4)(A) and proceed with class treatment of these particular issues.").

[147]    Randolph v. J.M. Smucker Co., 303 F.R.D. 679, 700 (S.D. Fla. 2014) (quoting City of St. Petersburg v. Total Containment, Inc., 265 F.R.D. 630, 646 (S.D. Fla. 2010)); see also Fisher v. Ciba Specialty Chemicals Corp., 238 F.R.D. 273, 316 (S.D. Ala. 2006).

[148]    Castano, 84 F.3d at 745 n.21.

[149]    The Eleventh Circuit has not provided clear guidance as to whether predominance must be found for the cause of action as a whole when certifying a Rule 23(c)(4) class.

establish in a class-wide trial that the Shingles suffer from a common manufacturing defect, each class member's claim will still need to be separately tried to determine issues like causation, notice, and statute of limitations. It is these individual issues that will predominate. Moreover, certifying an issues class would not promote judicial efficiency. The "Plaintiffs' case for certification collapses when it confronts the fact that certification of a common issues class will not dispose of a single case or eliminate the need for a single trial."[150] As a result, the Court concludes a Rule 23(c)(4) class should not be certified.

### C. Rule 23(b)(2) Class

The Plaintiff seeks to certify the following Rule 23(b)(2) class: "All those who as of the date class notice is issued own a home or other structure in the State of Kentucky on which Atlas Chalet or Stratford roofing shingles are currently installed."[151] The Complaint requests several declarations, including: "[t]he Shingles have a defect which results in premature failure"; "[t]hat the defect in the Shingles is a result of a defect in the manufacturing process"; "Defendant's warranty fails of its

---

[150]    In re Conagra Peanut Butter Products Liability Litigation, 251 F.R.D. 689, 701 (N.D. Ga. 2008).

[151]    Mot. for Class Cert., at 6.

essential purpose"; and "Defendant's warranty as a whole is void as unconscionable."[152]

The Court concludes that a Rule 23(b)(2) class is inappropriate. "A declaratory or injunctive relief class pursuant to Rule 23(b)(2) is appropriate only if 'the predominant relief sought is injunctive or declaratory.'"[153] The monetary relief must be *incidental* to the injunctive or declaratory relief.[154] "Monetary damages are incidental when 'class members automatically would be entitled [to them] once liability to the class . . . as a whole is established[,]' and awarding them 'should not entail complex individualized determinations.'"[155] Here, it is clear that the monetary damages are not incidental to the requested declaratory relief. Indeed, the Plaintiff is

---

[152]     Compl. ¶ 126.

[153]     DWFII Corp. v. State Farm Mut. Auto Ins. Co., 469 F. App'x 762, 765 (11th Cir. 2012) (quoting Murray v. Auslander, 244 F.3d 807, 812 (11th Cir. 2001) (citation omitted)).

[154]     See Murray, 244 F.3d at 812 ("[M]onetary relief predominates in (b)(2) class actions unless it is *incidental* to requested injunctive or declaratory relief." (emphasis in original) (quoting Allison v. Citgo Petroleum Corp., 151 F.3d 402, 411 (5th Cir. 1998))).

[155]     DWFII Corp., 469 F. App'x at 765 (quoting Murray 244 F.3d at 812).

seeking monetary relief for each putative class member, and the damages calculation will be individualized.[156]

## IV. Conclusion

For these reasons, the Court DENIES the Plaintiff Bryan Makowski's Motion for Class Certification [Doc. 37].

SO ORDERED, this 8 day of June, 2017.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge

---

[156]    The Defendant argues that the Plaintiff does not have standing to assert his declaratory relief claim. However, the Court finds that Makowski does have standing. As the Court noted in its Order granting in part and denying in part the Defendant's Motion to Dismiss, "[t]he Plaintiff may establish redressability if he shows that the 'practical consequence' of the declaratory relief 'would amount to a significant increase in the likelihood that the [Plaintiff] would obtain relief that directly redresses the injury suffered.'" In re Atlas Roofing Corp. Chalet Shingle Products Liability Litigation, No. 1:13-md-2495-TWT, 2015 WL 3767215, at *2 (N.D. Ga. June 17, 2015) (quoting Utah v. Evans, 536 U.S. 452, 464 (2002)).