IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE ATLAS ROOFING CORPORATION CHALET SHINGLE PRODUCTS LIABILITY LITIGATION | MDL DOCKET NO. 2495 1:13-md-2495-TWT |
| STRATFORD CLUB CONDOMINIUM ASSOCIATION on behalf of itself and all others similarly situated, | |
| Plaintiff, | |
| v. | CIVIL ACTION FILE NO. 1:14-CV-1071-TWT |
| ATLAS ROOFING CORPORATION doing business as Meridian Roofing Company, | |
| Defendant. | |

**OPINION AND ORDER**

This is a multi-district class action arising out of the marketing and sale of allegedly defective roofing shingles. It is before the Court on the Plaintiff Stratford Club Condominium Association's Motion for Class Certification [Doc. 38]. For the reasons set forth below, the Plaintiff's Motion for Class Certification [Doc. 38] is DENIED.

# I. Background

The Plaintiff and putative class members are owners of Atlas Chalet and Stratford Shingles ("Shingles").[1] The Defendant Atlas Roofing Corporation ("Atlas") designed, manufactured, and sold the Shingles.[2] Atlas represented and continues to represent that the Shingles are durable, reliable, free from defects, and compliant with industry standards and building codes.[3] The Plaintiff alleges that the Shingles were defective at the time of sale due to a flaw in the manufacturing process.[4] Specifically, "the Shingles contain excessive moisture which creates gas bubbles in the Shingles when they are exposed to the sun and results in cracking, blistering, and premature deterioration of the Shingles."[5] The Plaintiff further alleges that despite Atlas's

---

[1] It should be noted that – for purposes of this lawsuit – Chalet/Stratford Shingles are indistinguishable. See Primary Mot. for Class Cert. [Doc. 57], Ex. Tab 14, Thomas Dep., at 35 under No. 13-cv-02195-TWT. The differences between the two Shingles relate to aesthetics, not design. Id.

[2] Am. Compl. ¶ 2.

[3] Id.

[4] Id. ¶ 4. In support of its argument regarding the alleged defects in the Shingles, the Plaintiff relies on the expert testimony of both Dean Rutila and Anthony Mattina. In Dishman v. Atlas Roofing Corp., the Defendant filed a Daubert motion challenging the admissibility of both Rutila's and Mattina's testimony. See Def.'s Primary Resp. Br. [Doc. 59] under No. 1:13-cv-02195-TWT. The Defendant incorporates by reference the Defendant's Response Brief in Dishman v. Atlas Roofing Corp. See Def.'s Resp. Br., at 3.

[5] Am. Compl. ¶ 21.

knowledge of the defect, Atlas did nothing to correct the defective design and continued to market and warrant the Shingles as durable.[6]

Atlas provided four different limited warranties throughout the eleven-year class period.[7] The initial limited warranty was a twenty-five-year warranty, and it provided that the Shingles were "free from manufacturing defects, which would reduce the useful life of the product."[8] The warranty was transferrable to future property owners.[9] On January 1, 2002, Atlas began issuing thirty-year limited warranties.[10] The thirty-year warranty provided that the Shingles were "free from manufacturing defects, which results in leaks."[11] Atlas also limited the number of transfers of the warranty. For the thirty-year warranty, the coverage could only be transferred once and the second owner had to provide Atlas notice of the transfer of coverage.[12]

---

[6] Id. ¶ 6.

[7] See Primary Mot. for Class Cert., Exs. Tab 23-26. The Plaintiff incorporates by reference the background section of the Plaintiffs' Motion for Class Certification in Dishman v. Atlas Roofing Corp. See Mot. for Class Cert., at 2.

[8] See Primary Mot. for Class Cert., Ex. Tab 23.

[9] Id.

[10] Id.

[11] Id., Exs. Tab 24-26.

[12] Id.

The named Plaintiff Stratford Club Condominium Association ("Stratford") consists of the unit owners at the Stratford Club Condominium, which is located in Leesburg, Virginia.[13] The condominium community was built in 2004-2005, and the Shingles were installed on the roofs of the buildings at the time of construction.[14] Stratford is responsible for the maintenance and repair of the roofs, including the Shingles, on the buildings in the condominium community.[15] Beginning in 2009, Stratford experienced several Shingles blowing off roofs and several leaks.[16] Moreover, Stratford hired roofers who observed blistering, cracking, and granule loss on the Shingles.[17] Eventually, Stratford filed a warranty claim with Atlas, but Atlas failed to respond to the claim.[18]

On March 25, 2014, the Plaintiff filed suit in the United States District Court for the Eastern District of Virginia[19] on behalf of itself and others similarly situated

---

[13]    Am. Compl. ¶ 9.

[14]    Mot. for Class Cert., at 2.

[15]    Id., Ex. Tab 2, at 9-12.

[16]    Id., Ex. Tab 3, at 24-26, 34.

[17]    Id., Ex. Tab 6, at 15-16.

[18]    Id., Ex. Tab 3, at 88-90; Ex. Tab 6, at 12-13, 51, 53-54.

[19]    "[I]n multidistrict litigation under 28 U.S.C. § 1407, the transferee court applies the state law that the transferor court would have applied." In re Conagra Peanut Butter Prods. Liab. Litig., 251 F.R.D. 689, 693 (N.D. Ga. 2008); see also In

in the state of Virginia.[20] It seeks to bring its suit as a class action. Because similar consumer class actions were filed in several other states, the Judicial Panel on Multidistrict Litigation transferred all related class actions pending in federal court to this Court for coordinated or consolidated pretrial proceedings.[21]

After the Motion to Dismiss stage, the Plaintiff's remaining claims in this class action are for Breach of Express Warranty (Count I), Breach of Implied Warranties of Merchantability and Fitness for a Particular Purpose (Count II), and Fraudulent Concealment (Count V).[22] As damages, the Plaintiff seeks the cost of replacing the Shingles. It proposes two methods for calculating the replacement costs. First, it states that a common formula that calculates replacement costs on a square foot basis could be employed, allowing class members to recover by merely showing the size of their

---

re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig., 97 F.3d 1050, 1055 (8th Cir. 1996) ("When considering questions of state law, however, the transferee court must apply the state law that would have applied to the individual cases had they not been transferred for consolidation."). Here, both parties agree that Virginia law governs the Plaintiff's state law claims.

[20]     See [Doc. 1] under No. 1:14-cv-01071-TWT.

[21]     See Transfer Order [Doc. 1] under No. 1:13-md-02495-TWT.

[22]     See Order granting in part and denying in part the Defendant's Motion to Dismiss [Doc. 33] under No. 1:14-cv-01071-TWT.

roofs.[23] This method accounts for the fact that "each class member's damages are the cost of removing and discarding the defective shingles, and the cost of the replacement shingles plus all associated labor costs with this remediation."[24] In the alternative, the Plaintiff proposes that individual class members can prove their actual replacement costs through a claims process.[25]

## II. Class Certification Standard

To maintain a case as a class action, the party seeking class certification must satisfy each of the prerequisites of Rule 23(a) and at least one of the provisions of Rule 23(b).[26] Rule 23(a) sets forth the four prerequisites to maintain any claim as a class action:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the

---

[23]    See Primary Mot. for Class Cert., Ex. Tab 21, at 7 (stating that "[s]hingle replacement for most homes will cost $2.85 to $3.35 per square feet of roof area, with this square foot cost modified up or down based on a standard location adjustment factors that account for variations in local labor and material costs.").

[24]    Mot. for Class Cert., at 21.

[25]    Id.

[26]    Klay v. Humana, Inc., 382 F.3d 1241, 1250 (11th Cir. 2004), *abrogated in part on other grounds by* Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639 (2008).

representative parties will fairly and adequately protect the interests of the class.[27]

These prerequisites are commonly referred to as: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.[28]  Failure to establish any one of the four factors precludes certification. In addition, under Rule 23(b), the individual plaintiffs must convince the Court that: (1) prosecuting separate actions by or against individual members of the class would create a risk of prejudice to the party opposing the class or to those members of the class not parties to the subject litigation; (2) the party opposing the class has refused to act on grounds that apply generally to the class, necessitating final injunctive or declaratory relief; or (3) questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for fair and efficient adjudication of the controversy.[29]  The party seeking class certification bears the burden of proving that these requirements are satisfied.[30]

---

[27]     FED. R. CIV. P. 23(a).

[28]     Cooper v. Southern Co., 390 F.3d 695, 711 n.6 (11th Cir. 2004), *overruled in part on other grounds by* Ash v. Tyson Foods, Inc., 546 U.S. 454, 457-58 (2006).

[29]     FED. R. CIV. P. 23(b).

[30]     General Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 161 (1982); Valley Drug Co. v. Geneva Pharms., Inc., 350 F.3d 1181, 1187 (11th Cir. 2003).

The decision to grant or deny class certification lies within the sound discretion of the district court.[31] When considering the propriety of class certification, the court should not conduct a detailed evaluation of the merits of the suit.[32] Nevertheless, the court must perform a "rigorous analysis" of the particular facts and arguments asserted in support of class certification.[33] Frequently, that "rigorous analysis" will entail some overlap with the merits of the plaintiff's underlying claim.[34]

---

[31] Klay, 382 F.3d at 1251; Armstrong v. Martin Marietta Corp., 138 F.3d 1374, 1386 (11th Cir. 1998) (en banc).

[32] Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177-78 (1974).

[33] Falcon, 457 U.S. at 161; Gilchrist v. Bolger, 733 F.2d 1551, 1555 (11th Cir. 1984).

[34] Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 351-52 (2011).

## III. Discussion

### A. Rule 23(b)(3) Class

#### 1. Class Definition

Though not explicitly stated in Rule 23, it is well accepted that "[b]efore a district court may grant a motion for class certification, a plaintiff . . . must establish that the proposed class is adequately defined and clearly ascertainable."[35] "An identifiable class exists if its members can be ascertained by reference to objective criteria."[36] The analysis of the objective criteria must be administratively feasible, meaning identifying class members is a "manageable process that does not require much, if any, individual inquiry."[37] "A proponent of class certification may rely on the defendant's business records to identify prospective class members, but it is not enough to simply allege that the defendant's records will allow for identification."[38]

---

[35] Little v. T-Mobile USA, Inc., 691 F.3d 1302, 1304 (11th Cir. 2012) (quoting DeBremaecker v. Short, 433 F.2d 733, 734 (5th Cir. 1970)); see also Sanchez-Knutson v. Ford Motor Co., 310 F.R.D. 529, 534 (S.D. Fla. 2015) ("The court may address the adequacy of the class definition before analyzing whether the proposed class meets the Rule 23 requirements.").

[36] Bussey v. Macon Cnty. Greyhound Park, Inc., 562 F. App'x 782, 787 (11th Cir. 2014) (quoting Fogarazzo v. Lehman Bros., Inc., 263 F.R.D. 90, 97 (S.D.N.Y. 2009)).

[37] Id. (quoting NEWBERG ON CLASS ACTIONS § 3.3 (5th ed.)).

[38] In re Delta/AirTran Baggage Fee Antitrust Litigation, No. 1:09-md-2089-TCB, 2016 WL 3770957, at *4 (N.D. Ga. July 12, 2016) (citation omitted) (citing

"[T]he plaintiff must also establish that the records are in fact useful for identification purposes."[39]

Here, the Plaintiff seeks certification of the following Rule 23(b)(3) class:

All those who as of the date class notice is issued: (a) own a home or other structure in the State of Virginia on which Atlas Chalet or Stratford roofing shingles are currently installed; and/or (b) incurred unreimbursed costs to repair or replace Atlas Chalet or Stratford roofing shingles on a home or other structure in the State of Virginia which they currently own or previously owned.[40]

The Defendant raises two objections to the proposed class definition. First, it argues that the class definition is overly broad. By including current and former owners who incurred costs in repairing or replacing their roofs, the Defendant contends that the class definition does not require the owners to have suffered any damage due to an alleged manufacturing defect. The Defendant also argues that the class is not ascertainable. It contends that determining who qualifies as a member under the second category would require "mini-trials."[41]

_____

Bussey, 562 F. App'x at 787).

[39]    Id. (quoting Karhu v. Vital Pharm., Inc., 621 F. App'x 945, 947 (11th Cir. 2015)).

[40]    Mot. for Class Cert., at 4. The Plaintiff is no longer seeking certification of a Rule 23(b)(2) class. See Pl.'s Reply Br., at 20 n.10.

[41]    See Def.'s Primary Resp. Brief, at 42.

The Court agrees with both of the Defendant's objections. For the Defendant's first objection, the Court finds that this issue is better addressed in its predominance discussion. The Plaintiff alleges that every Shingle is defective, and so the question becomes whether the former and current owners can prove that the alleged defect caused their injuries – the replacement or repair costs of their roofs – or were they due to other causes. This causation question raises concerns regarding individualized evidence, and thus the Court will address it in the predominance section of its Order. Still, the Plaintiff has failed to demonstrate that identification of Atlas Chalet/Stratford Shingles is administratively feasible. The Defendant usually did not sell the Shingles directly to homeowners. The Plaintiff contends that there are reliable methods for determining membership, including markings on the Shingles and warranty claims.[42] But other than a list of warranty claims made in Virginia, the Plaintiff has failed to put forth evidence demonstrating how class members can be easily ascertained.[43] The Defendant has offered evidence that most warranty claims were generated by roofers soliciting business by advertising that the Atlas Shingles were defective. And the warranty claims only represent a tiny fraction of the homes with Atlas Shingle roofs.

---

[42]     Mot. for Class Cert., Ex. Tab 7.

[43]     See In re Delta/AirTran Baggage Fee Antitrust Litigation, 2016 WL 3770957, at *16 (noting that the plaintiffs provided receipts or credit card statements documenting their purchases in addition to the defendants' business records).

In addition, the Plaintiff does not proffer evidence that demonstrates each Shingle contains a marking indicating it is an Atlas Chalet or Stratford Shingle. This potentially means a large number of class members' Shingles will need to be individually examined to determine whether they are Chalet/Stratford Shingles. That is exactly the kind of individual inquiry the ascertainability requirement is meant to protect against.[44] The Plaintiff also does not submit any receipts, invoices, or credit card records that demonstrate using such records is a viable option for identifying class members. Merely noting that such records could be used is insufficient to demonstrate ascertainability.[45] In sum, the Court finds that the Plaintiff fails to demonstrate an administratively feasible mechanism for identifying class members in either category of the class definition.[46] Without a clearly ascertainable class, the

---

[44]    See Gonzalez v. Corning, 317 F.R.D. 443, 506 (W.D. Pa. 2016) ("Class members whose structures have Oakridge-brand shingles installed on them cannot be determined by release tape. At most, the release tape will indicate that the shingle was manufactured at a plant that produces Oakridge-brand shingles." (citation omitted)), appeal docketed, No. 16-2653 (3d Cir. June 2, 2016).

[45]    See Carrera v. Bayer Corp., 727 F.3d 300, 306-07 (3d Cir. 2013) ("A plaintiff may not merely propose a method of ascertaining a class without any evidentiary support that the method will be successful."); Brooks v. GAF Materials Corp., 284 F.R.D. 352, 363 (D.S.C. 2012) (finding a putative class was not ascertainable because the plaintiffs only put forth the defendant's warranty documents as a possible database to identify putative class members).

[46]    See Marcus v. BMW of North America, LLC, 687 F.3d 583, 593 (3d Cir. 2012) ("If class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate.").

Court cannot grant class certification.[47] Nevertheless, because the Court's Order is subject to immediate appeal under Rule 23(f), the Court will address the requirements of Rules 23(a) and 23(b)(3) to determine whether the Plaintiff would otherwise be entitled to class certification.[48]

## 2. Rule 23(A)

### a. Numerosity

To satisfy the numerosity requirement, the Plaintiff must show that joinder of all members of the putative class would be "impractical."[49] "Practicability of joinder depends on many factors, including, for example, the size of the class, ease of identifying its numbers and determining their addresses, facility of making service on them if joined and their geographic dispersion."[50] "[W]hile there is no fixed

---

[47]  See Perez v. Metabolife Intern., Inc., 218 F.R.D. 262, 266 (S.D. Fla. 2003) ("An identifiable class is essential so that the Court can determine whether a particular claimant is a class member." (quoting McGuire v. International Paper Co., No. 1:92-CV593BRR, 1994 WL 261360, at *3 (S.D. Miss. Feb. 18, 1994))).

[48]  FED. R. CIV. P. 23(f).

[49]  FED. R. CIV. P. 23 (a)(1).

[50]  Kilgo v. Bowman Transp., Inc., 789 F.2d 859, 878 (11th Cir. 1986).

numerosity rule, generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors."[51]

The Plaintiff has met its burden with regard to numerosity. It has presented evidence that, in Virginia, Atlas has sold 24,215 squares of Shingles.[52] Based on the assumption that there are 30 shingle squares for the average Virginia home, the Plaintiff estimates that there are approximately 807 homes with the Shingles installed.[53] The Plaintiff, therefore, has presented sufficient evidence that the likely number of homeowners in Virginia who fall within the class exceeds the minimum threshold. Moreover, the large number of putative class members makes joinder impractical. Thus, the Court finds the numerosity requirement is satisfied.

### b. Commonality

The commonality requirement is satisfied if the named plaintiff demonstrates the presence of questions of law or fact common to the entire class.[54] It is not necessary that all questions of law and fact be common.[55] Indeed, "[e]ven a single

---

[51]     Cox v. American Cast Iron Pipe Co., 784 F.2d 1546, 1553 (11th Cir. 1986).

[52]     See Mot. for Class Cert., Ex. Tab 9.

[53]     See id., at 7.

[54]     Fed. R. Civ. P. 23 (a)(2).

[55]     Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 359 (2011).

[common] question" is sufficient to satisfy the commonality requirement.[56]  But the

issues still must be susceptible to class-wide proof, and the plaintiff's claims must

share "the same essential characteristics as the claims of the class at large."[57]

"Commonality requires the plaintiff to demonstrate that the class members 'have

suffered the same injury.'"[58] "This does not mean merely that they all suffered a

violation of the same provision of law."[59] "Their claims must depend upon a common

contention . . . of such a nature that it is capable of classwide resolution – which

means that determination of its truth or falsity will resolve an issue that is central to

the validity of each one of the claims in one stroke."[60]

Here, the Court finds that the Plaintiff has sufficiently demonstrated

commonality. The Plaintiff alleges that the Shingles suffer from a common defect due

to a flaw in the manufacturing process. Thus, some common issues include: (1)

whether the Shingles are defective; (2) whether the defect is caused by a flawed

manufacturing process; (3) whether the defect causes the Shingles to suffer from

---

[56]     Id. (alteration in original).

[57]     Cooper v. Southern Co., 390 F.3d 695, 713 (11th Cir. 2004).

[58]     Wal-Mart, 564 U.S. at 349-50 (quoting General Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 157 (1982)).

[59]     Id. at 350.

[60]     Id.

blistering, cracking, and granule loss problems as well as premature failure; (4)

whether the defect in the Shingles breached the Defendant's expressed and implied

warranties; and (5) whether the Defendant knew of the defect.[61] These questions of

fact are common to the Plaintiff's claims and will generate common answers.[62]

Accordingly, the Plaintiff has satisfied the commonality requirement.

### c. Typicality

The typicality requirement mandates that the claims and defenses of the

representative plaintiffs are typical of the claims and defenses of the class.[63] This

requirement is satisfied when "a plaintiff's injury arises from or is directly related to

a wrong to a class, and that wrong includes the wrong to the plaintiff."[64] But "[c]lass

members' claims need not be identical to satisfy the typicality requirement."[65] This is

because "typicality measures whether a sufficient nexus exists between the claims of

---

[61]    See Mot. for Class Cert., at 9-10.

[62]    See Wal-Mart, 564 U.S. at 350.

[63]    FED. R. CIV. P. 23(a)(3).

[64]    Andrews v. American Tel. & Tel. Co., 95 F.3d 1014, 1022 (11th Cir.
1996), *abrogated on other grounds by* Bridge v. Phoenix Bond & Indem. Co., 553
U.S. 639, 641 (2008).

[65]    Ault v. Walt Disney World Co., 692 F.3d 1212, 1216 (11th Cir. 2012).

the named representatives and those of the class at large."[66] "A sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory."[67]

Here, the Plaintiff's claims arise from the same allegations of wrongful conduct as the claims of the putative class members. Specifically, all the claims are based on the sale of Shingles which allegedly suffer from the same defect. Moreover, the Plaintiff's claims arise from the same legal theories, including breach of express and implied warranties and fraudulent concealment. In response, the Defendant argues that, based on the experiences of the named Plaintiff, there is no typical plaintiff, and that individualized defenses render the Plaintiff's claims atypical. To be sure, the named Plaintiff experienced different weather conditions, installation, and maintenance of its roofs than the putative class members. In addition, the named Plaintiff's warranties are not necessarily typical of the class as a whole. Nevertheless, "the showing required for typicality is not demanding."[68] Varying experiences and

---

[66]    <u>Cooper v. Southern Co.</u>, 390 F.3d 695, 713 (11th Cir. 2004) (quoting <u>Prado-Steiman v. Bush,</u> 221 F.3d 1266, 1279 (11th Cir. 2000)).

[67]    <u>Kornberg v. Carnival Cruise Lines, Inc.</u>, 741 F.2d 1332 (11th Cir. 1984).

[68]    <u>City of St. Petersburg v. Total Containment, Inc.</u>, 265 F.R.D. 630, 651 (S.D. Fla. 2010).

unique defenses do not necessarily defeat typicality.[69] If a "sufficient nexus" exists –

as the Court found above – then the typicality requirement is met. Thus, the Court

concludes that the Plaintiff has satisfied Rule 23(a)'s typicality requirement.

### d. Adequacy of Representation

To prove adequacy of representation, a plaintiff must demonstrate that the class

representatives "fairly and adequately protect the interests of the class."[70] This

requirement serves to uncover conflicts of interest between named parties and the

class they seek to represent.[71] A determination of adequacy "encompasses two

separate inquiries: (1) whether any substantial conflicts of interest exist between the

representatives and the class; and (2) whether the representatives will adequately

prosecute the action."[72] The Court finds that the named Plaintiff and its counsel

adequately represent the class. First, there is no evidence of any conflicts of interest

between the named Plaintiff and the class. As noted above, the named Plaintiff and the

---

[69]     See Ault, 692 F.3d at 1216 ("While each class member may have a stronger or weaker claim depending upon his or her degree of reliance, we conclude that this alone does not make class representatives' claims atypical of the class as a whole.").

[70]     FED. R. CIV. P. 23(a)(4).

[71]     Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625 (1997).

[72]     Valley Drug Co. v. Geneva Pharm., Inc., 350 F.3d 1181, 1189 (11th Cir. 2003).

putative class members seek to recover from the same alleged unlawful conduct – a defect in the Defendant's Shingles. Second, there is no evidence that the named Plaintiff will not vigorously and adequately pursue the asserted claims on behalf of the class members. Third, there is no evidence of any potential conflicts with class counsel. Moreover, the Plaintiff has presented evidence that proposed class counsel have extensive experience with class actions and are qualified to conduct this litigation.[73] Thus, the Plaintiff has satisfied Rule 23(a)(4).

### 3. Rule 23(b)(3)

#### a. Predominance

The Plaintiff seeks class certification under Rule 23(b)(3). To certify a Rule 23(b)(3) class, the Plaintiff must demonstrate two prerequisites: predominance and superiority.[74] To meet the predominance requirement, "the issues in the class action that are subject to generalized proof and thus applicable to the class as a whole, must predominate over those issues that are subject to individualized proof."[75] "Common issues of fact and law predominate if they ha[ve] a direct impact on every class member's effort to establish liability and on every class member's entitlement to

---

[73]     See Mot. for Class Cert., Ex. Tab 12.

[74]     Fed. R. Civ. P. 23(b)(3).

[75]     Cooper v. Southern Co., 390 F.3d 695, 722 (11th Cir. 2004) (quoting Kerr v. City of W. Palm Beach, 875 F.2d 1546, 1558 (11th Cir. 1989)).

injunctive and monetary relief."[76] Importantly, "[w]hether an issue predominates can only be determined after considering what value the resolution of the class-wide issue will have in each class member's underlying cause of action."[77] But if the "plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims," then predominance does not exist.[78]

In <u>Brown v. Electrolux Home Products, Inc.</u>, the Eleventh Circuit provided a three-step approach for evaluating predominance: (1) identify the parties' claims and defenses and their elements; (2) determine whether these issues are common questions or individual questions by analyzing how each party will prove them at trial; and (3) determine whether the common questions predominate.[79] In addition, the Eleventh Circuit noted that "[d]istrict courts should assess predominance with its overarching purpose in mind – namely, ensuring that 'a class action would achieve economies of time, effort, expense, and promote . . . uniformity of decision as to persons similarly

---

[76]     <u>Babineau v. Federal Express Corp.</u>, 576 F.3d 1183, 1191 (11th Cir. 2009) (alteration in original) (quoting <u>Klay v. Humana, Inc.</u>, 382 F.3d 1241, 1255 (11th Cir. 2004)).

[77]     <u>Klay</u>, 382 F.3d at 1255 (quoting <u>Rutstein v. Avis Rent-A-Car Sys.</u>, 211 F.3d 1228, 1234 (11th Cir. 2000)).

[78]     <u>Id.</u>

[79]     817 F.3d 1225, 1234 (11th Cir. 2016).

situated, without sacrificing procedural fairness or bringing about other undesirable results.'"[80]

### (i) Breach of Express and Implied Warranties

In Counts I and II of its Amended Complaint, the Plaintiff alleges that the Defendant violated its express and implied warranties. To prove a breach of warranty claim, a plaintiff must demonstrate: "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation."[81] For breach of the implied warranty of fitness for a particular purpose, the plaintiff must prove: "(1) the seller had reason to know the particular purpose for which the buyer required the goods, (2) the seller had reason to know the buyer was relying on the seller's skill or judgment to furnish appropriate goods, and (3) the buyer in fact relied upon the seller's skill or judgment."[82] And for breach of implied warranty of merchantability,

---

[80]     Id. at 1235 (quoting Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 615 (1997)).

[81]     Crosslin v. Sears Auto. & Tire, No. 1:14CV00030, 2014 WL 3673326, at *2 (W.D. Va. July 23, 2014) (quoting Ulloa v. QSP, Inc., 624 S.E.2d 43, 48 (Va. 2006)).

[82]     Beard Plumbing & Heating, Inc. v. Thompson Plastics, Inc., 152 F.3d 313, 317-18 (4th Cir. 1998) (quoting Medcom, Inc. v. C. Arthur Weaver Co., 232 Va. 80, 84-85 (1986)).

a plaintiff must establish that there is a contract for the sale of a good, that the seller is a merchant of the kind of good being sold, and that the goods were defective.[83]

Here, the Court finds that – even if the Plaintiff could prove a uniform defect – individual issues going to causation, notice, coverage, and statute of limitations predominate over any common questions in this case. To begin, there are numerous reasons a roof may fail, including commonplace events and ordinary wear and tear.[84] There are also numerous reasons a shingle may blister, crack, or suffer from granule loss.[85] Thus, it is likely that the Defendant will bring at least one causation challenge against most – if not all – putative class members. Because the causation determination for most putative class members will involve individualized evidence, these individual causation questions will predominate at any trial.[86] In response, the Plaintiff argues that if the jury agrees with its argument that a defect existed in every Shingle at the time it was sold, then Atlas's arguments regarding alternative causation

---

[83]    Va. Code § 8.2-314; see also Walters v. Holiday Motor Corp., No. 7:12-cv-00011, 2012 WL 5465012, at *3 (W.D. Va. May 21, 2012).

[84]    See Primary Mot. for Class Cert., Ex. Tab 20, at 137-38.

[85]    Id., Ex. Tab 20, at 198.

[86]    See City of St. Petersburg v. Total Containment, Inc., 265 F.R.D. 630, 641 (S.D. Fla. 2010) (holding that "even if Plaintiffs were able to demonstrate that FlexPipe had a general defect, it would not assist Plaintiffs in meeting their burden of showing that that particular defect was the legal cause of each class member's harm").

will be negated. Not so. Because the Plaintiff seeks the replacement costs of all class members' roofs, the alleged defect in the Shingles must have caused a class member's injuries in order for that class member to recover.[87] All roofs will fail eventually. If an Atlas Shingle roof survives to the end of normal roof life expectancy, the homeowner-class member has not been damaged by the alleged manufacturing defect. If the roof fails due to hail or wind damage or improper installation, the homeowner-class member has not been damaged. This is unlike a products liability case where the plaintiffs claim an economic injury by seeking the diminution in the intrinsic value of the product.[88] In such cases, the plaintiffs typically only need to prove that the defect existed at the time of purchase to prove the defect caused their economic injury.[89]

---

[87] See Marcus v. BMW of North Am. LLC, 687 F.3d 583, 605 (3d Cir. 2012) ("[I]t is undisputed that even if Marcus could prove that Bridgestone RFTs suffer from common, class-wide defects, those defects did not cause the damage he suffered for these two tires: the need to replace them.").

[88] See Farrar & Farrar Dairy, Inc. v. Miller-St. Nazianz, Inc., 254 F.R.D. 68, 73 (E.D.N.C. 2008) ("[N]amed plaintiffs seek to recover damages for the *results* of the failure of the allegedly defective silage bags – the gravamen of their complaint is not diminution in the silage bags' intrinsic value."); Naparala v. Pella Corp., Nos. 2:14-mn-00001-DCN, 2:14-cv-03465-DCN, 2016 WL 3125473, at *11 (D.S.C. June 3, 2016) (holding that complex causation issues existed because the "plaintiff's claim focuses on Pella's failure to repair and replace the Windows, not the initial purchase of the Windows").

[89] See Daffin v. Ford Motor Co., No. C-1-00-458, 2004 WL 5705647, at *7 (S.D. Ohio July 15, 2004) ("The alleged injury, however, is not accelerator sticking but economic loss resulting directly from the allegedly defective piece of equipment. The causation question is therefore vastly simplified and does not suffer the infirmities

Here, even if the Plaintiff proves a common defect existed in the Shingles, each class member cannot recover damages based on that fact alone. They also must prove that the alleged defect caused their roof to prematurely fail. For the class members who have already had their roofs replaced or repaired, this will be an especially fact-intensive inquiry.

The Plaintiff cites two cases – Sanchez-Knutsen v. Ford Motor Co. and Brooks v. GAF Materials Corp. – which it contends support its argument. However, the Court finds that these cases do not help the Plaintiff. In Sanchez-Knutsen, the court dismissed the need for individual inquiries into causation, concluding that the evidence did not justify the defendant's concerns.[90] At issue was whether Ford's Explorer vehicle suffered from a defect at the time of purchase that permitted exhaust and other gases to enter the passenger compartment of the vehicle.[91] The court in Sanchez-Knutsen framed the plaintiffs' damages as the diminution in the intrinsic value of their Explorers, not the repair costs.[92] Thus, the court did not face the same causation issues presented in this instant case. Here, each class member will need to

argued by Ford.").

[90]    Sanchez-Knutson v. Ford Motor Co., 310 F.R.D. 529, 538 (S.D. Fla. 2015).

[91]    Id. at 533.

[92]    Id. at 538-39.

prove that the alleged defect caused his or her Shingles to prematurely fail, not just that the defect exists. This will likely create substantial causation inquiries when deciding the class members' claims.

Brooks is also distinguishable. There, homeowners sued GAF Materials Corp. ("GAF"), which manufactures roofing materials, over allegedly defective roof shingles.[93] Specifically, the named plaintiffs sought to represent a class of individuals whose shingles allegedly prematurely cracked.[94] In certifying the proposed class, the court discounted the need for individual causation inquiries, stating that the "Plaintiffs seek to establish causation on a large scale – that GAF knowingly sold shingles that contained an inherent manufacturing defect that will inevitably cause the shingles to crack, split, or tear."[95] While the Plaintiff, here, presents a similar causation argument, the Court believes that evidence in this case demonstrates that other specific causation issues – such as improper installation, inadequate ventilation, or environmental factors – will be significant in deciding the putative class members' cases. Moreover, the class in Brooks was limited to persons whose shingles had already cracked, split, or

---

[93]     Brooks v. GAF Materials Corp., No. 8:11-cv-00983-JMC, 2012 WL 5195982, at *1 (D.S.C. Oct. 19, 2012).

[94]     Id.

[95]     Id. at *6.

torn.[96] Here, the breadth of the Plaintiff's proposed class is much larger – it includes owners whose roofs may have been repaired or replaced for reasons other than the alleged premature failure. As a result, the Plaintiff's proposed class presents more individualized causation questions.

Individual issues will also predominate with respect to two requirements in Atlas's express warranty: transferability and notice. Transferability presents individual questions because the 2002 limited warranty specifically requires a second owner to notify Atlas in writing within thirty days of the real estate transfer for any coverage to be transferred.[97] The third-owner class members are not even eligible to recover under the 2002 limited warranty.[98] As a result, the class members who purchased a home with Atlas Shingles already installed on it will have to prove that the warranty properly transferred to them. Proving compliance with Atlas's notice requirement will require even more individualized evidence. The 1999 limited warranty requires each warrantee to provide notice of the alleged defect to Atlas within five days of discovering it, and the 2002 limited warranty requires notice within thirty days of

---

[96]    Id. at *4.

[97]    See Def.'s Primary Resp. Brief, Ex. G.

[98]    Id.,

discovery.[99]  Each class member will then need to demonstrate that his or her notice to Atlas was for the alleged defect and not for an unrelated issue.  Finally, each class member will need to demonstrate that he or she provided Atlas an opportunity to cure the alleged defect. There are, therefore, numerous individualized issues that will predominate the issues of notice and transferability.

Atlas is also likely to employ affirmative defenses against many class members, with the most likely defense being the statute of limitations. Virginia applies a four-year statute of limitations for breach of warranty claims.[100]

> A cause of action [for breach of warranty] accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.[101]

"Virginia courts have found that a contract including a continuing duty to repair may evidence an explicit warranty that anticipates future performance."[102] Thus, in order

---

[99]    Id., Exs. G-H.

[100]    Va. Code Ann. § 8.2-725(1).

[101]    Id. § 8.2-725(2).

[102]    In re Building Materials Corp. of Am. Asphalt Roofing Shingle Products Liability Litigation, No.8:11-mn-02000-JMC, 2013 WL 1827740, at *4 (D.S.C. April 30, 2013) (citing Luddeke v. Amana Refrigeration, Inc., 387 S.E.2d 502, 506 (Va. 1990)).

to determine when a class member's breach of express warranty claim accrued, the Court will need to determine "when the breach is or should of have been discovered."[103] This inquiry will require individualized evidence. Furthermore, as the Defendant correctly pointed out during the class certification hearing, based on Atlas's sales data, only 5% of the Shingles were sold in the last four years.[104] Thus, it is likely a large percentage of the class members' warranty claims will be barred by the statute of limitations.[105] For the Plaintiff's implied warranty claims, the four-year statute of limitations "accrues when the breach occurs, " which is "when the tender of delivery is made."[106] As a result, it is likely a large number of the class members' implied warranty claims will also be barred.

---

[103]    Va. Code Ann. § 8.2-725(2).

[104]    <u>See</u> Mot. for Class Cert. Hearing [Doc. 366], at 102 under No. 1:13-md-02495-TWT.

[105]    The Court notes that the issue of equitable tolling will also involve individualized evidence. "When the filing of an action is obstructed by a defendant's [use of any] direct or indirect means to obstruct the filing of an action, then the time that such obstruction has continued shall not be counted as any part of the period within which the action must be brought." Va. Code Ann. § 8.01-229(D). Each class member, therefore, will need to demonstrate that he or she was hindered from discovering the defect by an affirmative action by Atlas.

[106]    <u>Id.</u> § 8.2-725(2).

The Plaintiff counters with the general rule that individual affirmative defenses usually do not defeat predominance.[107] Thus, it contends that the statute of limitations issue, along with other potential affirmative defenses, can be handled in the second phase of the case after a liability trial. It is accurate that "courts traditionally have been reluctant to deny class action status under Rule 23(b)(3) simply because affirmative defenses may be available against individual members."[108] But as the Eleventh Circuit recently confirmed in Brown v. Electrolux Home Products, Inc., affirmative defenses are nevertheless relevant when determining the question of predominance.[109] Specifically, the Eleventh Circuit noted that affirmative defenses that are coupled with several other individual questions could defeat predominance.[110] Such is the case here. The statute of limitations defense coupled with the other individual issues discussed above outweigh any common questions raised by the Plaintiff.

## (ii) Fraudulent Concealment

---

[107]    In re Checking Account Overdraft Litigation, 286 F.R.D. 645, 656 (S.D. Fla. 2012) ("Unique affirmative defenses rarely predominate where a common course of conduct is established.").

[108]    Brown v. Electrolux Home Products, Inc., 817 F.3d 1225, 1240 (11th Cir. 2016) (quoting WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 4:55 (5th ed.)).

[109]    Id. at 1241.

[110]    Id.

In Count V of its Complaint, the Plaintiff asserts a fraud claim against the Defendant. The Plaintiff argues that Atlas fraudulently concealed the alleged defect and misrepresented to potential customers that the Shingles were durable and conformed to applicable industry standards. In Virginia, "[a] plaintiff asserting a claim of actual fraud must demonstrate (1) a false representation by the defendant, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the misled party, and (6) resulting injury to the party misled."[111] Because the element of reliance is more hotly disputed than the other elements, the Court's analysis will focus on it.

The Defendant contends that, in the instant case, reliance is an individual issue that cannot be proven through common evidence. The Plaintiff counters that "under well-established Eleventh Circuit precedent, the simple fact that reliance is an element in a cause of action is not an absolute bar to class certification."[112] The Plaintiff then goes one step further and states that the class members will be able to use circumstantial evidence when demonstrating reliance. It points to <u>Klay v. Humana, Inc.</u> in support of this contention. In <u>Klay</u>, a putative class action was brought by a

---

[111]     <u>McCabe v. Daimler AG</u>, 160 F. Supp. 3d 1337, 1355 (N.D. Ga. 2015) (quoting <u>Carlucci v. Han</u>, 907 F. Supp. 2d, 709, 740 (E.D. Va. 2012)).

[112]     <u>Klay v. Humana, Inc.</u>, 382 F.3d 1241, 1258 (11th Cir. 2004).

group of doctors who submitted claims for reimbursement to HMOs but were systematically underpaid.[113] The court concluded that class certification was appropriate for the plaintiffs' RICO claim for two reasons. First, common issues of fact, which included the existence of a national conspiracy, a pattern of racketeering activity, and a Managed Care Enterprise, predominated "over all but the most complex individualized issues."[114] Second, the court found "that, based on the nature of the misrepresentations at issue, the circumstantial evidence that can be used to show reliance is common to the whole class."[115] In clarifying the nature of the misrepresentations, the Eleventh Circuit stated:

> The alleged misrepresentations in the instant case are simply that the defendants repeatedly claimed they would reimburse the plaintiffs for medically necessary services they provide to the defendants' insureds, and sent the plaintiffs various EOB forms claiming that they had actually paid the plaintiffs the proper amounts. While the EOB forms may raise substantial individualized issues of reliance, the antecedent representations about the defendants' reimbursement practices do not. It does not strain credulity to conclude that each plaintiff, in entering into contracts with the defendants, relied upon the defendants' representations and assumed they would be paid the amounts they were due. A jury could quite reasonably infer that guarantees concerning physician pay – the very consideration upon which those agreements are

---

[113]   Id. at 1246-47.

[114]   Id. at 1259.

[115]   Id.

based – go to the heart of these agreements, and that doctors based their assent upon them.[116]

The Plaintiff contends that the misrepresentations in <u>Klay</u> are similar to the misrepresentations by Atlas in that no class member would purchase Shingles that are going to prematurely fail. Therefore, all the class members relied on Atlas's alleged omission and misrepresentations regarding the durability of the Shingles when they purchased the Shingles.

The Plaintiff's analogy is misplaced. "[A] fraud case may be unsuited for treatment as a class action if there was material variation in the representations made or in the kinds of degrees of reliance by the persons to whom they were addressed."[117] When presented with such cases, "the Eleventh Circuit has repeatedly found class certification inappropriate."[118] In this case, there are both material variation in the representations and kinds of degrees of reliance by the class members. For the alleged misrepresentations, each class member would need to establish what particular marketing material or industry standard he or she observed and relied upon. This is further complicated by third party wholesalers, retailers, and contractors who made

---

[116]    <u>Id.</u>

[117]    <u>Fisher v. Ciba Specialty Chemicals Corp.</u>, 238 F.R.D. 273, 313 (S.D. Ala. 2006) (quoting FED. R. CIV. P. 23(b)(3), Advisory Notes to 1966 Amendment).

[118]    <u>Id.</u> (citing <u>Heffner v. Blue Cross & Blue Shield of Ala., Inc.</u>, 443 F.3d 1330, 1344 (11th Cir. 2006)).

the purchase decisions for the vast majority of the Shingle purchases. Indeed, there is no evidence that Atlas engaged in a uniform marketing scheme. Thus, the class members cannot use common evidence to prove they relied on Atlas's statements regarding the durability of the Shingles. For the alleged fraudulent omission, the class members made their own assessment when deciding to purchase the Shingles or homes with the Shingles installed on the roof. As an example, some class members may have been on notice of blistering, cracking, and granule loss on the Shingles, but decided to purchase the property despite the conditions. Such class members would not have relied on the alleged omission. Unlike in <u>Klay</u>, the class will need to prove reliance through individual evidence. Thus, the Court finds that common issues do not predominate with regard to the Plaintiff's fraudulent concealment claim.[119]

---

[119]    <u>See</u> <u>Brinker v. Chicago Title Ins. Co.</u>, No. 8:10-cv-1199-T-27AEP, 2012 WL 1081182, at *6 (M.D. Fla. Mar. 30, 2012) (distinguishing <u>Klay</u> and finding that "it cannot be assumed that each class member relied on any alleged misrepresentations and omissions simply because he or she decided to close").

### b. Superiority

To meet the superiority requirement, the Court must conclude "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[120] The factors relevant in determining superiority include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.[121]

Class certification "cannot be denied because the number of potential class members makes the proceeding complex or difficult."[122] But the difficulties in managing a class are important "if they make the class action a less fair and efficient method of adjudication than other available techniques."[123] Thus, the focus should be "on the

---

[120]    FED. R. CIV. P. 23(b)(3).

[121]    Carriuolo v. General Motors Co., 823 F.3d 977, 989 (11th Cir. 2016) (quoting FED. R. CIV. P. 23(b)(3)).

[122]    In re Theragenics Corp. Sec. Litig., 205 F.R.D. 687, 697 (N.D. Ga. 2002).

[123]    Id. at 697-98 (quoting In re Domestic Air Transp. Antitrust Litigation, 137 F.R.D. 677, 693 (N.D. Ga. 1991)).

relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs."[124]

The Court finds that class treatment is not superior to other available methods of adjudication. Based on the number of individual issues discussed above, adjudicating these claims on a class-wide basis will likely present a manageability problem. There will be numerous fact-intensive individual inquiries, including physical inspection of class members' Shingles and individual testimony regarding when class members discovered the defect and provided notice to Atlas. In addition, the Court does not agree with the Plaintiff's contention that the class members lack any significant interest in controlling the litigation. The damages claimed by the named Plaintiff is not insignificant. The Plaintiff's own expert opined that replacing a roof can be "several thousand dollars to tens of thousands of dollars."[125] Thus, this case is unlike class actions where the class members have suffered only a minor harm and would not pursue their claim but for the class action mechanism.[126] The owners

---

[124]    Klay v. Humana, Inc., 382 F.3d 1241, 1269 (11th Cir. 2004).

[125]    See Primary Mot. for Class Cert., Ex. Tab 21, at 47.

[126]    Cf. In re Delta/AirTran Baggage Fee Antitrust Litigation, No. 1:09-md-2089-TCB, 2016 WL 3770957, at *23 (N.D. Ga. July 12, 2016) ("Where, as here, the class members' claims are 'so small that the cost of individual litigation would be far greater than the value of those claims,' the class-action vehicle is superior to other forms of litigation available to Plaintiffs, and class certification is appropriate.").

have the option of pursuing their claims in state court, where claims of several thousands dollars are common.[127] In sum, the Court finds that Rule 23(b)'s superiority requirement is not satisfied.

## B. Rule 23(c)(4) Class

As an alternative, the Plaintiff asks the Court to certify a Rule 23(c)(4) class consisting of four common questions: "(1) whether the shingles suffer from a common manufacturing defect; (2) whether the defect breaches any express or implied warranties; (3) whether the defect necessitates replacement of all roofs containing the shingles; and (4) whether Atlas fraudulently concealed the defect."[128] The Plaintiff contends that certifying a class based on these four questions will materially advance the litigation.

Under Rule 23(c)(4), "an action may be brought or maintained as a class action with respect to particular issues."[129] However, there is a split among courts over how to apply the predominance test when asked to certify an issue class.[130] Some courts

---

[127]    See Gonzalez v. Owens Corning, 317 F.R.D. 443, 524 (W.D. Pa. 2016).

[128]    See Pl.'s Primary Reply Br. [Doc. 61], at 25 under No. 1:13-cv-02195-TWT. The Plaintiff incorporates by reference Section V of Plaintiffs' Reply Brief in Dishman v. Atlas Roofing Corp. See Pl.'s Reply Br., at 21.

[129]    FED. R. CIV. P. 23(c)(4).

[130]    Compare In re Nassau Cty. Strip Search Cases, 461 F.3d 219, 225 (2d Cir. 2006) ("[A] court may employ Rule 23(c)(4)(A) to certify a class on a particular

have certified issue classes despite a lack of overall predominance.[131] But many other courts "have emphatically rejected attempts to use the (c)(4) process for certifying individual issues as a means for achieving an end run around the (b)(3) predominance requirement."[132] These courts note that "the proper interpretation of the interaction between subdivisions (b)(3) and (c)(4) is that a cause of action, as a whole, must satisfy the predominance requirement of (b)(3) and that (c)(4) is a housekeeping rule that allows courts to sever common issues for a class trial."[133] The Court finds the latter interpretation to be persuasive.[134] As discussed above, even if the Plaintiff could

---

issue even if the action as a whole does not satisfy Rule 23(b)(3)'s predominance requirement."), with Castano v. American Tobacco Co., 84 F.3d 734, 745 n.21 (5th Cir. 1996) ("A district court cannot manufacture predominance through the nimble use of subdivision (c)(4).").

[131] See Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996) ("[E]ven if the common questions do not predominate over the individual questions so that class certification of the entire action is warranted, Rule 23 authorizes the district court in appropriate cases to isolate the common issues under Rule 23(c)(4)(A) and proceed with class treatment of these particular issues.").

[132] Randolph v. J.M. Smucker Co., 303 F.R.D. 679, 700 (S.D. Fla. 2014) (quoting City of St. Petersburg v. Total Containment, Inc., 265 F.R.D. 630, 646 (S.D. Fla. 2010)); see also Fisher v. Ciba Specialty Chemicals Corp., 238 F.R.D. 273, 316 (S.D. Ala. 2006).

[133] Castano, 84 F.3d at 745 n.21.

[134] The Eleventh Circuit has not provided clear guidance as to whether predominance must be found for the cause of action as a whole when certifying a Rule 23(c)(4) class.

establish in a class-wide trial that the Shingles suffer from a common manufacturing defect, each class member's claim will still need to be separately tried to determine issues like causation, notice, and statute of limitations. It is these individual issues that will predominate. Moreover, certifying an issues class would not promote judicial efficiency. The "Plaintiffs' case for certification collapses when it confronts the fact that certification of a common issues class will not dispose of a single case or eliminate the need for a single trial."[135] As a result, the Court concludes a Rule 23(c)(4) class should not be certified.

## IV. Conclusion

For these reasons, the Court DENIES the Plaintiff Stratford Club Condominium Association's Motion for Class Certification [Doc. 38].

SO ORDERED, this 8 day of June, 2017.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge

---

[135]     In re Conagra Peanut Butter Products Liability Litigation, 251 F.R.D. 689, 701 (N.D. Ga. 2008).