IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE ATLAS ROOFING CORPORATION CHALET SHINGLE PRODUCTS LIABILITY LITIGATION | MDL DOCKET NO. 2495 1:13-md-2495-TWT |
| GEORGE CROTZER and SUSAN CROTZER, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | |
| v. | CIVIL ACTION FILE NO. 1:14-CV-831-TWT |
| ATLAS ROOFING CORPORATION, | |
| Defendant. | |

**OPINION AND ORDER**

This is a multi-district class action arising out of the marketing and sale of allegedly defective roofing shingles. It is before the Court on the Plaintiffs George Crotzer and Susan Crotzer's Motion for Class Certification [Doc. 41]. For the reasons set forth below, the Plaintiffs' Motion for Class Certification [Doc. 41] is DENIED.

## I. Background

The Plaintiffs and putative class members are purchasers of Atlas Chalet and Stratford Shingles ("Shingles").[1] The Defendant Atlas Roofing Corporation ("Atlas") designed, manufactured, and sold the Shingles.[2] Atlas represented and continues to represent that the Shingles are durable, reliable, free from defects, and compliant with industry standards and building codes.[3] The Plaintiffs allege that the Shingles were defective at the time of sale due to a flaw in the manufacturing process.[4] Specifically, the manufacturing process "permits moisture to intrude into the Shingle creating a gas bubble that permits blistering and cracking."[5] The Plaintiffs further allege that despite

---

[1]     It should be noted that – for purposes of this lawsuit – Chalet/Stratford Shingles are indistinguishable. <u>See</u> Primary Mot. for Class Cert. [Doc. 57], Ex. Tab 14, Thomas Dep., at 35 under No. 13-cv-02195-TWT. The differences between the two Shingles relate to aesthetics, not design. <u>Id.</u>

[2]     Second Am. Compl. ¶ 2.

[3]     <u>Id.</u>

[4]     <u>Id.</u> ¶ 3. In support of their argument regarding the alleged defects in the Shingles, the Plaintiffs rely on the expert testimony of both Dean Rutila and Anthony Mattina. In <u>Dishman v. Atlas Roofing Corp.</u>, the Defendant filed a <u>Daubert</u> motion challenging the admissibility of both Rutila's and Mattina's testimony. <u>See</u> Def.'s Primary Resp. Br. [Doc. 59] under No. 1:13-cv-02195-TWT. The Defendant incorporates by reference the Defendant's Response Brief in <u>Dishman v. Atlas Roofing Corp.</u> <u>See</u> Def.'s Resp. Br., at 2.

[5]     Second Am. Compl. ¶ 13.

Atlas's knowledge of the defect, Atlas did nothing to correct the defective design and continued to market and warrant the Shingles as durable.[6]

Atlas provided four different limited warranties throughout the eleven-year class period.[7] The initial limited warranty was a twenty-five-year warranty, and it provided that the Shingles were "free from manufacturing defects, which would reduce the useful life of the product."[8] The warranty was transferrable to future property owners.[9] On January 1, 2002, Atlas began issuing thirty-year limited warranties.[10] The thirty-year warranty provided that the Shingles were "free from manufacturing defects, which results in leaks."[11] Atlas also limited the number of transfers of the warranty. For the thirty-year warranty, the coverage could only be transferred once and the second owner had to provide Atlas notice of the transfer of coverage.[12]

---

[6]  Id. ¶ 15.

[7]  See Primary Mot. for Class Cert., Exs. Tab 23-26. The Plaintiffs incorporate by reference the background section of Plaintiffs' Motion for Class Certification in Dishman v. Atlas Roofing Corp. See Mot. for Class Cert., at 1.

[8]  See Primary Mot. for Class Cert., Ex. Tab 23.

[9]  Id.

[10]  Id.

[11]  Id., Exs. Tab 24-26.

[12]  Id.

The named Plaintiffs  George Crotzer and Susan Crotzer, who are residents of Maylene, Alabama, purchased their home in 2004 with the Shingles already installed on the roof.[13] In the past few years, the Crotzers' Shingles have deteriorated due to blistering, cracking, and granule loss.[14] Moreover, the Shingles leaked, resulting in damage to their home.[15] On February 25, 2014, the named Plaintiffs filed suit in the United States District Court for the Northern District of Alabama[16] on behalf of themselves and others similarly situated in the state of Alabama.[17] They seek to bring their suit as a class action. Because similar consumer class actions were filed in other states, the Judicial Panel on Multidistrict Litigation transferred all related class actions

---

[13]    Second Am. Compl. ¶ 25.

[14]    Mot. for Class Cert., Ex. Tab 1, at 4.

[15]    Id.

[16]    "[I]n multidistrict litigation under 28 U.S.C. § 1407, the transferee court applies the state law that the transferor court would have applied." In re Conagra Peanut Butter Prods. Liab. Litig., 251 F.R.D. 689, 693 (N.D. Ga. 2008); see also In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig., 97 F.3d 1050, 1055 (8th Cir. 1996) ("When considering questions of state law, however, the transferee court must apply the state law that would have applied to the individual cases had they not been transferred for consolidation."). Here, both parties agree that Alabama law governs the Plaintiffs' state law claims.

[17]    See [Doc. 1] under No. 1:14-cv-00831-TWT.

pending in federal court to this Court for coordinated or consolidated pretrial proceedings.[18]

After the Motion to Dismiss stage, the Plaintiffs' remaining claims in this class action are for Breach of Express Warranty (Count I), Breach of Implied Warranty of Merchantability and Fitness (Count II), Negligent Design (Count III), Fraudulent Concealment (Count IV), Violation of Alabama's Extended Manufacturer's Liability Doctrine (Count V), Unjust Enrichment (Count VI), and Violation of Alabama's Deceptive Trade Practices Act (Count VII).[19] The Plaintiffs seek both damages and equitable relief.[20] As damages, the Plaintiffs seek the cost of replacing the Shingles. They propose two methods for calculating the replacement costs. First, they state that a common formula that calculates replacement costs on a square foot basis could be employed, allowing class members to recover by merely showing the size of their roofs.[21] This method accounts for the fact that "each class member's damages are the

---

[18]     See Transfer Order [Doc. 1] under No. 1:13-md-02495-TWT.

[19]     See Order granting in part and denying in part the Defendant's Motion to Dismiss [Doc. 29] under No. 1:14-cv-00831-TWT.

[20]     The Plaintiffs' request for declaratory relief was labeled Count VIII.

[21]     See Primary Mot. for Class Cert., Ex. Tab 21, at 7 (stating that "[s]hingle replacement for most homes will cost $2.85 to $3.35 per square feet of roof area, with this square foot cost modified up or down based on a standard location adjustment factors that account for variations in local labor and material costs.").

cost of removing and discarding the defective shingles, and the cost of the replacement shingles plus all associated labor costs with this remediation."[22] In the alternative, they propose that individual class members can prove their actual replacement costs through a claims process.[23]

## II. Class Certification Standard

To maintain a case as a class action, the party seeking class certification must satisfy each of the prerequisites of Rule 23(a) and at least one of the provisions of Rule 23(b).[24] Rule 23(a) sets forth the four prerequisites to maintain any claim as a class action:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.[25]

---

[22]     Mot. for Class Cert., at 21.

[23]     Id. at 23.

[24]     Klay v. Humana, Inc., 382 F.3d 1241, 1250 (11th Cir. 2004), *abrogated in part on other grounds by* Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639 (2008)).

[25]     FED. R. CIV. P. 23(a).

These prerequisites are commonly referred to as: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.[26] Failure to establish any one of the four factors precludes certification. In addition, under Rule 23(b), the individual plaintiffs must convince the Court that: (1) prosecuting separate actions by or against individual members of the class would create a risk of prejudice to the party opposing the class or to those members of the class not parties to the subject litigation; (2) the party opposing the class has refused to act on grounds that apply generally to the class, necessitating final injunctive or declaratory relief; or (3) questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for fair and efficient adjudication of the controversy.[27] The party seeking class certification bears the burden of proving that these requirements are satisfied.[28]

---

[26] Cooper v. Southern Co., 390 F.3d 695, 711 n.6 (11th Cir. 2004), *overruled in part on other grounds by* Ash v. Tyson Foods, Inc., 546 U.S. 454, 457-58 (2006).

[27] FED. R. CIV. P. 23(b).

[28] General Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 161 (1982); Valley Drug Co. v. Geneva Pharms., Inc., 350 F.3d 1181, 1187 (11th Cir. 2003).

The decision to grant or deny class certification lies within the sound discretion of the district court.[29] When considering the propriety of class certification, the court should not conduct a detailed evaluation of the merits of the suit.[30] Nevertheless, the court must perform a "rigorous analysis" of the particular facts and arguments asserted in support of class certification.[31] Frequently, that "rigorous analysis" will entail some overlap with the merits of the plaintiff's underlying claim.[32]

## III. Discussion

### A. Rule 23(b)(3) Class

#### 1. Class Definition

Though not explicitly stated in Rule 23, it is well accepted that "[b]efore a district court may grant a motion for class certification, a plaintiff . . . must establish that the proposed class is adequately defined and clearly ascertainable."[33] "An

---

[29]    Klay, 382 F.3d at 1251; Armstrong v. Martin Marietta Corp., 138 F.3d 1374, 1386 (11th Cir. 1998) (en banc).

[30]    Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177-78 (1974).

[31]    Falcon, 457 U.S. at 161; Gilchrist v. Bolger, 733 F.2d 1551, 1555 (11th Cir. 1984).

[32]    Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 351-52 (2011).

[33]    Little v. T-Mobile USA, Inc., 691 F.3d 1302, 1304 (11th Cir. 2012) (quoting DeBremaecker v. Short, 433 F.2d 733, 734 (5th Cir. 1970)); see also Sanchez-Knutson v. Ford Motor Co., 310 F.R.D. 529, 534 (S.D. Fla. 2015) ("The court may address the adequacy of the class definition before analyzing whether the

identifiable class exists if its members can be ascertained by reference to objective criteria."[34] The analysis of the objective criteria must be administratively feasible, meaning identifying class members is a "manageable process that does not require much, if any, individual inquiry."[35] "A proponent of class certification may rely on the defendant's business records to identify prospective class members, but it is not enough to simply allege that the defendant's records will allow for identification."[36] "[T]he plaintiff must also establish that the records are in fact useful for identification purposes."[37]

Here, the Plaintiffs seek certification of the following Rule 23(b)(3) class:

> All those who as of the date class notice is issued: (a) own a home or other structure in the State of Alabama on which Atlas Chalet or Stratford roofing shingles are currently installed; or (b) incurred unreimbursed costs to repair or replace Atlas Chalet or Stratford roofing

---

proposed class meets the Rule 23 requirements.").

[34]      Bussey v. Macon Cnty. Greyhound Park, Inc., 562 F. App'x 782, 787 (11th Cir. 2014) (quoting Fogarazzo v. Lehman Bros., Inc., 263 F.R.D. 90, 97 (S.D.N.Y. 2009)).

[35]      Id. (quoting NEWBERG ON CLASS ACTIONS § 3.3 (5th ed.)).

[36]      In re Delta/AirTran Baggage Fee Antitrust Litigation, No. 1:09-md-2089-TCB, 2016 WL 3770957, at *4 (N.D. Ga. July 12, 2016) (citation omitted) (citing Bussey, 562 F. App'x at 787).

[37]      Id. (quoting Karhu v. Vital Pharm., Inc., 621 F. App'x 945, 947 (11th Cir. 2015)).

shingles on a home or other structure in the State of Alabama which they currently own or previously owned.[38]

The Defendant raises two objections to the proposed class definition. First, it argues that the class definition is overly broad. By including current and former owners who incurred costs in repairing or replacing their roofs, the Defendant contends that the class definition does not require the owners to have suffered any damage due to an alleged manufacturing defect. The Defendant also argues that the class is not ascertainable. It contends that determining who qualifies as a member under the second category would require "mini-trials."[39]

The Court agrees with both of the Defendant's objections. For the Defendant's first objection, the Court finds that this issue is better addressed in its predominance discussion. The Plaintiffs allege that every Shingle is defective, and so the question becomes whether the former and current owners can prove that the alleged defect caused their injuries – the replacement or repair costs of their roofs – or were they due to other causes. This causation question raises concerns regarding individualized evidence, and thus the Court will address it in the predominance section of its Order. Still, the Plaintiffs have failed to demonstrate that identification of Atlas

---

[38]     Mot. for Class Cert., at 3.

[39]     <u>See</u> Def.'s Primary Resp. Brief, at 42.

Chalet/Stratford Shingles is administratively feasible. The Defendant usually did not sell the Shingles directly to homeowners. The Plaintiffs contend that there are reliable methods for determining membership, including markings on the Shingles and warranty claims.[40] But other than a list of warranty claims made in Alabama, the Plaintiffs have failed to put forth evidence demonstrating how class members can be easily ascertained.[41] The Defendant has offered evidence that most warranty claims were generated by roofers soliciting business by advertising that the Atlas Shingles were defective. And the warranty claims only represent a tiny fraction of the homes with Atlas Shingle roofs. In addition, the Plaintiffs do not proffer evidence that demonstrates each Shingle contains a marking indicating it is an Atlas Chalet or Stratford Shingle. This potentially means a large number of class members' Shingles will need to be individually examined to determine whether they are Chalet/Stratford Shingles. That is exactly the kind of individual inquiry the ascertainability requirement is meant to protect against.[42] The Plaintiffs also do not submit any

---

[40]    Mot. for Class Cert., at 4-5, Ex. Tab 2.

[41]    See In re Delta/AirTran Baggage Fee Antitrust Litigation, 2016 WL 3770957, at *16 (noting that the plaintiffs provided receipts or credit card statements documenting their purchases in addition to the defendants' business records).

[42]    See Gonzalez v. Corning, 317 F.R.D. 443, 506 (W.D. Pa. 2016) ("Class members whose structures have Oakridge-brand shingles installed on them cannot be determined by release tape. At most, the release tape will indicate that the shingle was manufactured at a plant that produces Oakridge-brand shingles." (citation omitted)),

receipts, invoices, or credit card records that demonstrate using such records is a viable option for identifying class members. Merely noting that such records could be used is insufficient to demonstrate ascertainability.[43] In sum, the Court finds that the Plaintiffs fail to demonstrate an administratively feasible mechanism for identifying class members in either category of the class definition.[44] Without a clearly ascertainable class, the Court cannot grant class certification.[45] Nevertheless, because the Court's Order is subject to immediate appeal under Rule 23(f), the Court will address the requirements of Rules 23(a) and 23(b)(3) to determine whether the Plaintiffs would otherwise be entitled to class certification.[46]

---

appeal docketed, No. 16-2653 (3d Cir. June 2, 2016).

[43] See Carrera v. Bayer Corp., 727 F.3d 300, 306-07 (3d Cir. 2013) ("A plaintiff may not merely propose a method of ascertaining a class without any evidentiary support that the method will be successful."); Brooks v. GAF Materials Corp., 284 F.R.D. 352, 363 (D.S.C. 2012) (finding a putative class was not ascertainable because the plaintiffs only put forth the defendant's warranty documents as a possible database to identify putative class members).

[44] See Marcus v. BMW of North America, LLC, 687 F.3d 583, 593 (3d Cir. 2012) ("If class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate.").

[45] See Perez v. Metabolife Intern., Inc., 218 F.R.D. 262, 266 (S.D. Fla. 2003) ("An identifiable class is essential so that the Court can determine whether a particular claimant is a class member." (quoting McGuire v. International Paper Co., No. 1:92-CV593BRR, 1994 WL 261360, at *3 (S.D. Miss. Feb. 18, 1994))).

[46] FED. R. CIV. P. 23(f).

-12-

## 2. Rule 23(A)

### a. Numerosity

To satisfy the numerosity requirement, the Plaintiffs must show that joinder of all members of the putative class would be "impractical."[47] "Practicability of joinder depends on many factors, including, for example, the size of the class, ease of identifying its numbers and determining their addresses, facility of making service on them if joined and their geographic dispersion."[48] "[W]hile there is no fixed numerosity rule, generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors."[49]

The Plaintiffs have met their burden with regard to numerosity. They have presented evidence that, in Alabama, Atlas has sold 169,147 squares of Shingles.[50] Based on the assumption that there are 30 shingle squares for the average Alabama home, the Plaintiffs estimate that there are approximately 5,500 homes with the Shingles installed.[51] The Plaintiffs, therefore, have presented sufficient evidence that

---

[47]   FED. R. CIV. P. 23 (a)(1).

[48]   Kilgo v. Bowman Transp., Inc., 789 F.2d 859, 878 (11th Cir. 1986).

[49]   Cox v. American Cast Iron Pipe Co., 784 F.2d 1546, 1553 (11th Cir. 1986).

[50]   See Mot. for Class Cert., Ex. Tab 4.

[51]   See Mot. for Class Cert., at 5.

the likely number of homeowners in Alabama who fall within the class exceeds the minimum threshold. Moreover, the large number of putative class members makes joinder impractical. Thus, the Court finds that the numerosity requirement is satisfied.

### b. Commonality

The commonality requirement is satisfied if the plaintiffs demonstrate the presence of questions of law or fact common to the entire class.[52] It is not necessary that all questions of law and fact be common.[53] Indeed, "[e]ven a single [common] question" is sufficient to satisfy the commonality requirement.[54] But the issues still must be susceptible to class-wide proof, and the plaintiffs' claims must share "the same essential characteristics as the claims of the class at large."[55] "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'"[56] "This does not mean merely that they all suffered a violation of the same provision of law."[57] "Their claims must depend upon a common contention . . . of such

---

[52]     FED. R. CIV. P. 23 (a)(2).

[53]     Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 359 (2011).

[54]     Id. (alteration in original).

[55]     Cooper v. Southern Co., 390 F.3d 695, 713 (11th Cir. 2004).

[56]     Wal-Mart, 564 U.S. at 349-50 (quoting General Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 157 (1982)).

[57]     Id. at 350.

a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."[58]

Here, the Court finds that the Plaintiffs have sufficiently demonstrated commonality. The Plaintiffs allege that the Shingles suffer from a common defect due to a flaw in the manufacturing process. Thus, some common issues include: (1) whether the Shingles are defective; (2) whether the defect is caused by a flawed manufacturing process; (3) whether the defect causes the Shingles to suffer from blistering, cracking, and granule loss problems as well as premature failure; (4) whether the defect in the Shingles breached the Defendant's expressed and implied warranties; and (5) whether the Defendant knew of the defect.[59] These questions of fact are common to the Plaintiffs' claims and will generate common answers.[60] Accordingly, the Plaintiffs have satisfied the commonality requirement.

---

[58] Id.

[59] See Mot. for Class Cert., at 8.

[60] See Wal-Mart, 564 U.S. at 350.

### c. Typicality

The typicality requirement mandates that the claims and defenses of the representative plaintiffs are typical of the claims and defenses of the class.[61] This requirement is satisfied when "a plaintiff's injury arises from or is directly related to a wrong to a class, and that wrong includes the wrong to the plaintiff."[62] But "[c]lass members' claims need not be identical to satisfy the typicality requirement."[63] This is because "typicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large."[64] "A sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory."[65]

Here, the Plaintiffs' claims arise from the same allegations of wrongful conduct as the claims of the putative class. Specifically, all the claims are based on the sale of Shingles which allegedly suffer from the same defect. Moreover, the Plaintiffs' claims

---

[61]     FED. R. CIV. P. 23(a)(3).

[62]     Andrews v. American Tel. & Tel. Co., 95 F.3d 1014, 1022 (11th Cir. 1996), *abrogated on other grounds by* Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639, 641 (2008).

[63]     Ault v. Walt Disney World Co., 692 F.3d 1212, 1216 (11th Cir. 2012).

[64]     Cooper v. Southern Co., 390 F.3d 695, 713 (11th Cir. 2004) (quoting Prado-Steiman v. Bush, 221 F.3d 1266, 1279 (11th Cir. 2000)).

[65]     Kornberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332 (11th Cir. 1984).

arise from the same legal theories, including breach of express and implied warranties and fraudulent concealment. In response, the Defendant argues that, based on the experiences of the named Plaintiffs, there is no typical plaintiff, and that individualized defenses render the Plaintiffs' claims atypical. To be sure, the named Plaintiffs each experienced different weather conditions, installation, and maintenance of their roofs. In addition, the named Plaintiffs' warranties are not necessarily typical of the class as a whole. Nevertheless, "the showing required for typicality is not demanding."[66] Varying experiences and unique defenses do not necessarily defeat typicality.[67] If a "sufficient nexus" exists – as the Court found above – then the typicality requirement is met. Thus, the Court concludes that the Plaintiffs have satisfied Rule 23(a)'s typicality requirement.

### d. Adequacy of Representation

To prove adequacy of representation, a plaintiff must demonstrate that the class representatives "fairly and adequately protect the interests of the class."[68] This

---

[66]     City of St. Petersburg v. Total Containment, Inc., 265 F.R.D. 630, 651 (S.D. Fla. 2010).

[67]     See Ault, 692 F.3d at 1216 ("While each class member may have a stronger or weaker claim depending upon his or her degree of reliance, we conclude that this alone does not make class representatives' claims atypical of the class as a whole.").

[68]     FED. R. CIV. P. 23(a)(4).

requirement serves to uncover conflicts of interest between named parties and the class they seek to represent.[69] A determination of adequacy "encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action."[70] The Court finds that the named Plaintiffs and their counsel adequately represent the class. First, there is no evidence of any conflicts of interest between the named Plaintiffs and the class. As noted above, the named Plaintiffs and the putative class members seek to recover from the same alleged unlawful conduct – a defect in the Defendant's Shingles.[71] Second, there is no evidence that the named Plaintiffs will not vigorously and adequately pursue the asserted claims on behalf of

---

[69]     Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625 (1997).

[70]     Valley Drug Co. v. Geneva Pharm., Inc., 350 F.3d 1181, 1189 (11th Cir. 2003).

[71]     The Defendant argues that the Crotzers do not have standing to assert their declaratory relief claim, making them inadequate class representatives. However, the Court finds that the Crotzers do have standing. As the Court noted in its Order granting in part and denying in part the Defendant's Motion to Dismiss, "[t]he Plaintiffs may establish redressability if they show that the 'practical consequence' of the declaratory relief 'would amount to a significant increase in the likelihood that the [Plaintiffs] would obtain relief that directly redresses the injury suffered.'" In re Atlas Roofing Corp. Chalet Shingle Products Liability Litigation, No. 1:13-md-2495-TWT, 2015 WL 114285, at *2 (N.D. Ga. Jan. 8, 2015) (quoting Utah v. Evans, 536 U.S. 452, 464 (2002)). The Plaintiffs' requested declarations would establish an essential component of liability, making it more likely that they would obtain relief from the Defendant.

the class members. Third, there is no evidence of any potential conflicts with class counsel. Moreover, the Plaintiffs have presented evidence that proposed class counsel have extensive experience with class actions and are qualified to conduct this litigation.[72] Thus, the Plaintiffs have satisfied Rule 23(a)(4).

### 3. Rule 23(b)(3)

### a. Predominance

The Plaintiffs seek class certification under Rule 23(b)(3). To certify a Rule 23(b)(3) class, the Plaintiffs must demonstrate two prerequisites: predominance and superiority.[73] To meet the predominance requirement, "the issues in the class action that are subject to generalized proof and thus applicable to the class as a whole, must predominate over those issues that are subject to individualized proof."[74] "Common issues of fact and law predominate if they ha[ve] a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief."[75] Importantly, "[w]hether an issue predominates can

---

[72]    See Mot. for Class Cert., Ex. Tab 6.

[73]    FED. R. CIV. P. 23(b)(3).

[74]    Cooper v. Southern Co., 390 F.3d 695, 722 (11th Cir. 2004) (quoting Kerr v. City of W. Palm Beach, 875 F.2d 1546, 1558 (11th Cir. 1989)).

[75]    Babineau v. Federal Express Corp., 576 F.3d 1183, 1191 (11th Cir. 2009) (alteration in original) (quoting Klay v. Humana, Inc., 382 F.3d 1241, 1255 (11th Cir. 2004)).

only be determined after considering what value the resolution of the class-wide issue will have in each class member's underlying cause of action."[76] But if the "plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims," then predominance does not exist.[77]

In Brown v. Electrolux Home Products, Inc., the Eleventh Circuit provided a three-step approach for evaluating predominance: (1) identify the parties' claims and defenses and their elements; (2) determine whether these issues are common questions or individual questions by analyzing how each party will prove them at trial; and (3) determine whether the common questions predominate.[78] In addition, the Eleventh Circuit noted that "[d]istrict courts should assess predominance with its overarching purpose in mind – namely, ensuring that 'a class action would achieve economies of time, effort, expense, and promote . . . uniformity of decision as to persons similarly

---

[76]     Klay, 382 F.3d at 1255 (quoting Rutstein v. Avis Rent-A-Car Sys., 211 F.3d 1228, 1234 (11th Cir. 2000)).

[77]     Id.

[78]     817 F.3d 1225, 1234 (11th Cir. 2016).

situated, without sacrificing procedural fairness or bringing about other undesirable results.'"[79]

### (i) Breach of Express and Implied Warranties

In Counts I and II of their Complaint, the Plaintiffs allege that the Defendant violated its express and implied warranties. Under Alabama law, to prevail on a breach of express or implied warranty claim, a plaintiff must demonstrate (1) the existence of the warranty, (2) breach, and (3) damages proximately caused by the breach.[80] Moreover, for both warranty claims, "[t]he buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy."[81]

Here, the Court finds that – even if the Plaintiffs could prove a uniform defect – individual issues going to causation, notice, coverage, and statute of limitations predominate over any common questions in this case. To begin, there are numerous reasons a roof may fail, including commonplace events and ordinary wear and tear.[82]

---

[79] Id. at 1235 (quoting Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 615 (1997)).

[80] See Clark v. Allied Healthcare Products, Inc., 601 So.2d 902, 903 (Ala. 1992) ("In order to sustain a cause of action under breach of warranty, plaintiff must prove the existence of such warranty, breach, and proximate causation of damages.").

[81] Ala. Code § 7-2-607(3)(a).

[82] See Primary Mot. for Class, Ex. Tab 20, at 137-38.

There are also numerous reasons a shingle may blister, crack, or suffer from granule loss.[83] Thus, it is likely that the Defendant will bring at least one causation challenge against most – if not all – putative class members. Because the causation determination for most putative class members will involve individualized evidence, these individual causation questions will predominate at any trial.[84] In response, the Plaintiffs argue that if the jury agrees with their argument that a defect existed in every Shingle at the time it was sold, then Atlas's arguments regarding alternative causation will be negated.[85] Not so. Because the Plaintiffs seek the replacement costs of all class members' roofs, the alleged defect in the Shingles must have caused a class member's injuries in order for that class member to recover.[86] All roofs will fail eventually. If an Atlas Shingle roof survives to the end of normal roof life expectancy, the homeowner-class member has not been damaged by the alleged manufacturing defect.

---

[83]     Id., Ex. Tab 20, at 198.

[84]     See City of St. Petersburg v. Total Containment, Inc., 265 F.R.D. 630, 641 (S.D. Fla. 2010) (holding that "even if Plaintiffs were able to demonstrate that FlexPipe had a general defect, it would not assist Plaintiffs in meeting their burden of showing that that particular defect was the legal cause of each class member's harm").

[85]     The Plaintiffs incorporate by reference Section III.A.3(a) of the Plaintiffs' Reply Brief in Dishman v. Atlas Roofing Corp. See Pls.' Reply Br., at 6.

[86]     See Marcus v. BMW of North Am. LLC, 687 F.3d 583, 605 (3d Cir. 2012) ("[I]t is undisputed that even if Marcus could prove that Bridgestone RFTs suffer from common, class-wide defects, those defects did not cause the damage he suffered for these two tires: the need to replace them.").

If the roof fails due to hail or wind damage or improper installation, the homeowner-class member has not been damaged. This is unlike a products liability case where the plaintiffs claim an economic injury by seeking the diminution in the intrinsic value of the product.[87] In such cases, the plaintiffs typically only need to prove that the defect existed at the time of purchase to prove the defect caused their economic injury.[88] Here, even if the Plaintiffs prove a common defect existed in the Shingles, each class member cannot recover damages based on that fact alone. They also must prove that the alleged defect caused their roof to prematurely fail. For the Plaintiffs that have already had their roofs replaced or repaired, this will be an especially fact-intensive inquiry.

---

[87]    See Farrar & Farrar Dairy, Inc. v. Miller-St. Nazianz, Inc., 254 F.R.D. 68, 73 ( E.D.N.C. 2008) ("[N]amed plaintiffs seek to recover damages for the *results* of the failure of the allegedly defective silage bags – the gravamen of their complaint is not diminution in the silage bags' intrinsic value."); Naparala v. Pella Corp., Nos. 2:14-mn-00001-DCN, 2:14-cv-03465-DCN, 2016 WL 3125473, at *11 (D.S.C. June 3, 2016) (holding that complex causation issues existed because the "plaintiff's claim focuses on Pella's failure to repair and replace the Windows, not the initial purchase of the Windows").

[88]    See Daffin v. Ford Motor Co., No. C-1-00-458, 2004 WL 5705647, at *7 (S.D. Ohio July 15, 2004) ("The alleged injury, however, is not accelerator sticking but economic loss resulting directly from the allegedly defective piece of equipment. The causation question is therefore vastly simplified and does not suffer the infirmities argued by Ford.").

The Plaintiffs cite two cases – Sanchez-Knutsen v. Ford Motor Co. and Brooks v. GAF Materials Corp. – which they contend support their argument. However, the Court finds that these cases do not help the Plaintiffs. In Sanchez-Knutsen, the court dismissed the need for individual inquiries into causation, concluding that the evidence did not justify the defendant's concerns.[89] At issue was whether Ford's Explorer vehicle suffered from a defect at the time of purchase that permitted exhaust and other gases to enter the passenger compartment of the vehicle.[90] The court in Sanchez-Knutsen framed the plaintiffs' damages as the diminution in the intrinsic value of their Explorers, not the repair costs.[91] Thus, the court did not face the same causation issues presented in this instant case. Here, each class member will need to prove that the alleged defect caused his or her Shingles to prematurely fail, not just that the defect exists. This will likely create substantial causation inquiries when deciding the class members' claims.

Brooks is also distinguishable. There, homeowners sued GAF Materials Corp. ("GAF"), which manufactures roofing materials, over allegedly defective roof

---

[89]    Sanchez-Knutson v. Ford Motor Co., 310 F.R.D. 529, 538 (S.D. Fla. 2015).

[90]    Id. at 533.

[91]    Id. at 538-39.

shingles.[92] Specifically, the named plaintiffs sought to represent a class of individuals whose shingles allegedly prematurely cracked.[93] In certifying the proposed class, the court discounted the need for individual causation inquiries, stating that the "Plaintiffs seek to establish causation on a large scale – that GAF knowingly sold shingles that contained an inherent manufacturing defect that will inevitably cause the shingles to crack, split, or tear."[94] While the Plaintiffs, here, present a similar causation argument, the Court believes that evidence in this case demonstrates that other specific causation issues – such as improper installation, inadequate ventilation, or environmental factors – will be significant in deciding the putative class members' cases. Moreover, the class in <u>Brooks</u> was limited to persons whose shingles had already cracked, split, or torn.[95] Here, the breadth of the Plaintiffs' proposed class is much larger – it includes owners whose roofs may have been repaired or replaced for reasons other than the alleged premature failure. As a result, the Plaintiffs' proposed class presents more individualized causation questions.

---

[92] <u>Brooks v. GAF Materials Corp.</u>, No. 8:11-cv-00983-JMC, 2012 WL 5195982, at *1 (D.S.C. Oct. 19, 2012).

[93] <u>Id.</u>

[94] <u>Id.</u> at *6.

[95] <u>Id.</u> at *4.

Individual issues will also predominate with respect to two requirements in Atlas's express warranty: transferability and notice. Transferability presents individual questions because the 2002 limited warranty specifically requires a second owner to notify Atlas in writing within thirty days of the real estate transfer for any coverage to be transferred.[96] The third-owner class members are not even eligible to recover under the 2002 limited warranty.[97] As a result, the class members who purchased a home with Atlas Shingles already installed on it will have to prove that the warranty properly transferred to them. Proving compliance with Atlas's notice requirement will require even more individualized evidence. The 1999 limited warranty requires each warrantee to provide notice of the alleged defect to Atlas within five days of discovering it, and the 2002 limited warranty requires notice within thirty days of discovery.[98] Each class member will then need to demonstrate that his or her notice to Atlas was for the alleged defect and not for an unrelated issue. Finally, each class member will need to demonstrate that he or she provided Atlas an opportunity to cure the alleged defect. There are, therefore, numerous individualized issues that will predominate the issues of notice and transferability.

---

[96]    See Def.'s Primary Resp. Brief, Ex. G.

[97]    Id.

[98]    Id., Exs. G-H.

T:\ORDERS\14\Atlas Roofing\14cv831\classcerttwt.wpd          -26-

In response, the Plaintiffs first argue that, through common evidence, they will demonstrate the Defendant waived the notice requirement. According to the Plaintiffs, the Defendant never asked the warranty claimants whether they were filing their claims within thirty days of discovering the alleged defect. Nor did the Defendant enforce the requirement when it knew the claimants were late. The Plaintiffs cite Stewart v. Bradley[99] in support of their contention. There, the Alabama Court of Civil Appeals noted that the "intention to waive a right may be found where one's course of conduct indicates the same or is inconsistent with any other intention."[100] Thus, the Plaintiffs argue that by routinely failing to insist on compliance with the notice requirement, the Defendant waived the requirement. The Court disagrees. The Stewart case concerned whether the defendant waived its notice requirement with respect to one party.[101] The Plaintiffs have failed to cite any case law that states a defendant may waive the notice requirement with respect to all of its warranty claimants if it does not enforce the requirement for each past claimant. Consequently, the Court finds that the notice and opportunity to cure requirements are individual issues that cannot be resolved through common evidence.

---

[99] 15 So.3d 533, 543-44 (Ala. Civ. App. 2008).

[100] Id. at 543 (quoting Waters v. Taylor, 527 So.2d 139, 141 (Ala. Civ. App. 1988)).

[101] Id. at 543-44.

In addition to the issues discussed above, individualized evidence will be necessary to prove privity – an element of a breach of implied warranty of merchantability claim. Under Alabama law, "implied warranties [of merchantability] apply only to 'sellers' and not to manufacturers."[102] Thus, to demonstrate a breach of an implied warranty of merchantability, each class member will need to demonstrate that he or she purchased Shingles directly from Atlas. The Plaintiffs counter by arguing that "third-party beneficiaries of the implied warranty of merchantability are in sufficient 'privity' with the manufacturer to bring an action for its breach."[103] But this statement is in direct contradiction with the Alabama Supreme Court's holding in Blackmon v. Powell.[104]

Atlas is also likely to employ affirmative defenses against many class members, with the most likely defense being the statute of limitations. In Alabama, "[a]n action for breach of any contract for sale must be commenced within four years after the

---

[102]     Selby v. Goodman Mfg. Co., LP, No. 2:13-cv-2162-RDP, 2014 WL 2740317, at *3 (N.D. Ala. June 17, 2014) (citing Blackmon v. Powell, 132 So.3d 1, 6 (Ala. 2013)).

[103]     Mot. for Class Cert., at 15.

[104]     See Blackmon, 132 So.3d at 6 (holding that implied warranties of merchantability "are applicable only to sellers" (quoting Ex parte General Motors Corp., 769 So.2d 903, 910 (Ala. 1999))).

cause of action has accrued."[105] A cause of action accrues when a breach occurs.[106] For Atlas's limited warranty, a breach occurs when Atlas fails to repair the Shingles.[107] For the Plaintiffs' other warranty claims, "[a] breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods, . . . the cause of action accrues when the breach is or should have been discovered."[108] As the Defendant correctly pointed out during the class certification hearing, based on Atlas's sales data, only 5% of the Shingles were sold in the last four years.[109] Thus, it is likely a large percentage of the class members' warranty claims will be barred by the statute of limitations.[110]

---

[105]    Ala. Code § 7-2-725.

[106]    <u>Id.</u>

[107]    <u>See</u> <u>Brown v. General Motors Corp.</u>, 14 So.3d 104, 113 (Ala. 2009).

[108]    Ala. Code § 7-2-725.

[109]    <u>See</u> Mot. for Class Cert. Hearing [Doc. 366], at 102 under No. 1:13-md-02495-TWT.

[110]    The Court notes that the issue of estoppel will also involve individualized evidence. "Conduct which is sufficient to give rise to an estoppel against the pleading of the statute of limitations must amount to an affirmative inducement to the plaintiff to delay bringing the action." <u>Selby v. Goodman Mfg. Co., LP</u>, No. 2:13-cv-2162-RDP, 2014 WL 2740317, at *2 (N.D. Ala. June 17, 2014). Thus, each class member will need to demonstrate that he or she was hindered from discovering the defect by an affirmative action by Atlas.

The Plaintiffs counter with the general rule that individual affirmative defenses usually do not defeat predominance.[111] Thus, they contend that the statute of limitations issue, along with other potential affirmative defenses, can be handled in the second phase of the case after a liability trial. It is accurate that "courts traditionally have been reluctant to deny class action status under Rule 23(b)(3) simply because affirmative defenses may be available against individual members."[112] But as the Eleventh Circuit recently confirmed in <u>Brown v. Electrolux Home Products, Inc.</u>, affirmative defenses are nevertheless relevant when determining the question of predominance.[113] Specifically, the Eleventh Circuit noted that affirmative defenses that are coupled with several other individual questions could defeat predominance.[114] Such is the case here. The statute of limitations defense coupled with the other individual issues discussed above outweigh any common questions raised by the Plaintiffs.

---

[111]    <u>In re Checking Account Overdraft Litigation</u>, 286 F.R.D. 645, 656 (S.D. Fla. 2012) ("Unique affirmative defenses rarely predominate where a common course of conduct is established.").

[112]    <u>Brown v. Electrolux Home Prods., Inc.</u>, 817 F.3d 1225, 1240 (11th Cir. 2016) (quoting WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 4:55 (5th ed.)).

[113]    <u>Id.</u> at 1241.

[114]    <u>Id.</u>

## (ii) Negligent Design

In Count III of their Complaint, the Plaintiffs assert a negligent design claim against the Defendant. To state a negligent design claim, a plaintiff must demonstrate that the product is defective and "that the manufacturer failed to exercise due care in the product's manufacture, design, or sale."[115] Moreover, a plaintiff must prove that the defective product caused the alleged damages.[116] Like the breach of warranty claims discussed above, the issue of causation will require individualized evidence. In addition, the Defendant points out that the economic loss rule may bar some of the class members' claims. "Under [the economic-loss] rule, a cause of action does not arise . . . where a product malfunctions or is defective and thereby causes damage only to the product itself."[117] Thus, in order to assert a negligence claim, each class member will need to demonstrate some other form of damage. This inquiry will create numerous individualized questions. As a result, the Court finds that common issues do not predominate with regard to the Plaintiffs' negligence claim.

## (iii) Violation of Alabama's Extended Manufacturer's Liability Doctrine

---

[115]   <u>McMahon v. Yamaha Motor Corp., U.S.A.</u>, 95 So.3d 769, 772 (Ala. 2012).

[116]   <u>Selby v. Goodman Mfg. Co., LP</u>, No. 2:13-cv-2162-RDP, 2014 WL 2740317, at *5 (N.D. Ala. June 17, 2014).

[117]   <u>Id.</u> (quoting <u>Ford Motor Co. v. Rice</u>, 726 So.2d 626, 631 (Ala. 1998)).

To establish a prima facie case under the AEMLD, Plaintiff must show: (1) that [Defendant] manufactured, designed or sold a defective, unreasonably dangerous product; (2) that the product reached the consumer in substantially the same condition in which it was sold; and (3) that the product injured the consumer when it was put to its intended use.[118]

Thus, similar to a negligent design claim, to establish a claim under the AEMLD, each class member will have to demonstrate his or her injury was caused by the alleged defective condition which made the product unreasonably dangerous. This will require individualized inquiries like those described above. Moreover, claims under the AEMLD are also subject to the economic loss rule.[119] The class members, therefore, will need to demonstrate damage to other property to recover under the AEMLD. As a result, individualized issue predominate the Plaintiffs' AEMLD claim.

### (iv) Fraudulent Concealment

The Plaintiffs argue that Atlas fraudulently concealed the alleged defect and misrepresented to potential customers that the Shingles were durable and conformed to applicable industry standards. To state a fraudulent concealment claim, a plaintiff must demonstrate the following elements: "(1) a duty on the part of the defendant to

---

[118]    Id. at *4 (quoting McClain v. Coca-Cola Co. Distributor, No. 2:08cv614-WHA, 2009 WL 2985693, at *5 (M.D. Ala. Sept. 16, 2009)).

[119]    Id.

disclose facts; (2) concealment or nondisclosure of material facts by the defendant; (3) inducement of the plaintiff to act; (4) action by the plaintiff to his or her injury."[120]

The Defendant contends that, in the instant case, reliance is an individual issue that cannot be proven through common evidence. The Plaintiffs counter that "under well-established Eleventh Circuit precedent, the simple fact that reliance is an element in a cause of action is not an absolute bar to class certification."[121] They then go one step further and state that the class members will be able to use circumstantial evidence when demonstrating reliance. They point to Klay v. Humana, Inc. in support of their contention. In Klay, a putative class action was brought by a group of doctors who submitted claims for reimbursement to HMOs but were systematically underpaid.[122] The court concluded that class certification was appropriate for the plaintiffs' RICO claim for two reasons. First, common issues of fact, which included the existence of a national conspiracy, a pattern of racketeering activity, and a Managed Care Enterprise, predominated "over all but the most complex individualized issues."[123] Second, the court found "that, based on the nature of the

---

[120]     Id. at *5 (quoting Lambert v. Mail Handlers Benefit Plan, 682 So.2d 61, 63 (Ala. 1996)).

[121]     Klay v. Humana, Inc., 382 F.3d 1241, 1258 (11th Cir. 2004).

[122]     Id. at 1246-47.

[123]     Id. at 1259.

misrepresentations at issue, the circumstantial evidence that can be used to show reliance is common to the whole class."[124] In clarifying the nature of the misrepresentations, the Eleventh Circuit stated:

> The alleged misrepresentations in the instant case are simply that the defendants repeatedly claimed they would reimburse the plaintiffs for medically necessary services they provide to the defendants' insureds, and sent the plaintiffs various EOB forms claiming that they had actually paid the plaintiffs the proper amounts. While the EOB forms may raise substantial individualized issues of reliance, the antecedent representations about the defendants' reimbursement practices do not. It does not strain credulity to conclude that each plaintiff, in entering into contracts with the defendants, relied upon the defendants' representations and assumed they would be paid the amounts they were due. A jury could quite reasonably infer that guarantees concerning physician pay – the very consideration upon which those agreements are based – go to the heart of these agreements, and that doctors based their assent upon them.[125]

The Plaintiffs contend that the misrepresentations in <u>Klay</u> are similar to the misrepresentations by Atlas in that no class member would purchase Shingles that are going to prematurely fail. Therefore, all the class members relied on Atlas's alleged omission and misrepresentations regarding the durability of the Shingles when they purchased the Shingles.

---

[124] <u>Id.</u>

[125] <u>Id.</u>

The Plaintiffs' analogy is misplaced. "[A] fraud case may be unsuited for treatment as a class action if there was material variation in the representations made or in the kinds of degrees of reliance by the persons to whom they were addressed."[126] When presented with such cases, "the Eleventh Circuit has repeatedly found class certification inappropriate."[127] In this case, there are both material variation in the representations and kinds of degrees of reliance by the class members. For the alleged misrepresentations, each class member would need to establish what particular marketing material or industry standard he or she observed and relied upon. Indeed, there is no evidence that Atlas engaged in a uniform marketing scheme. This is further complicated by third party wholesalers, retailers, and contractors who made the purchase decisions for the vast majority of the Shingle purchases. Thus, the Plaintiffs cannot use common evidence to prove they relied on Atlas's statements regarding the durability of the Shingles. For the alleged fraudulent omission, the class members made their own assessment when deciding to purchase the Shingles or homes with the Shingles installed on the roof. As an example, some class members may have been on notice of blistering, cracking, and granule loss on the Shingles, but decided to

---

[126]     Fisher v. Ciba Specialty Chemicals Corp., 238 F.R.D. 273, 313 (S.D. Ala. 2006) (quoting FED. R. CIV. P. 23(b)(3), Advisory Notes to 1966 Amendment).

[127]     Id. (citing Heffner v. Blue Cross & Blue Shield of Ala., Inc., 443 F.3d 1330, 1344 (11th Cir. 2006)).

purchase the property despite the conditions. Such class members would not have relied on the alleged omission. Unlike in <u>Klay</u>, the class will need to prove reliance through individual evidence. Thus, the Court finds that common issues do not predominate with regard to the Plaintiffs' fraudulent inducement claim.[128]

### (v) Unjust Enrichment

Under Alabama law, to establish an unjust enrichment claim, "the plaintiff must show that the 'defendant holds money which, in equity and good conscience, belongs to the plaintiff or holds money which was improperly paid to defendant because of mistake or fraud.'"[129] Courts generally find unjust enrichment claims inappropriate for class certification because they require the court to "examine the particular circumstances of an individual case and assure itself that, without remedy, inequity would result or persist."[130] Here, the Court is unwilling to certify the Plaintiffs' unjust

---

[128]   <u>See</u> <u>Brinker v. Chicago Title Ins. Co.</u>, No. 8:10-cv-1199-T-27AEP, 2012 WL 1081182, at *6 (M.D. Fla. Mar. 30, 2012) (distinguishing <u>Klay</u> and finding that "it cannot be assumed that each class member relied on any alleged misrepresentations and omissions simply because he or she decided to close").

[129]   <u>Avis Rent A Car Sys, Inc. v. Heilman</u>, 876 So.2d 1111, 1123 (Ala. 2003) (quoting <u>Dickinson v. Cosmos Broad Co.</u>, 782 So.2d 260, 266 (Ala. 2000)); <u>see also</u> <u>Portofino Seaport Vill., LLC v. Welch</u>, 4 So.3d 1095, 1098 (Ala. 2008).

[130]   <u>Vega v. T-Mobile USA, Inc.</u>, 564 F. 3d 1256, 1276 (11th Cir. 2009); <u>see also</u> <u>Avis Rent A Car Sys.</u>, 876 So.2d at 1123 ("Because unjust-enrichment claims are fact specific to each case, [the Alabama Supreme Court] has repeatedly held that such claims are unsuitable for class-action treatment.").

enrichment claim. Each class member's claim will be predominated by individual questions. For example, in order to determine whether a class member paid money by mistake or fraud, the Court will have to conduct individualized inquiries into that class member's state of mind. Some class members may have purchased the Shingles through a roofer without any knowledge of Atlas's representations while others may have examined Atlas's advertising materials in detail. Moreover, on a case-by-case basis, the Court would have to determine the amount each class member paid to Atlas. Some class members purchased their homes with the Shingles already installed. Such class members did not pay money to Atlas by mistake or fraud. For these reasons, the Court will not certify the Plaintiffs' unjust enrichment claim.

### (vi) Violation of Alabama's Deceptive Trade Practices Act

In Count VII of the Second Amended Complaint, the Plaintiffs seek to certify a claim under Alabama's Deceptive Trade Practices Act ("ADTPA").[131] The Plaintiffs allege that the Defendant violated four subsections: "(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have"; "(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another"; "(9) Advertising goods or services with intent not to sell them as advertised"; "(27) Engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce."[132] But in order for an individual class member to recover under the ADTPA, the class member must prove

---

[131]    "[A]n election to pursue the civil remedies prescribed in this chapter shall exclude and be a surrender of all other rights and remedies available at common law, by statute or otherwise, for fraud, misrepresentation, deceit, suppression of material facts or fraudulent concealment arising out of any act, occurrence or transaction actionable under this chapter." Ala. Code. § 8-19-15. Consequently, if a class member pursues a claim under the ADTPA, he or she will be barred from asserting a common law claim for fraud. See Holmes v. Behr Process Corp., No. 2:15-cv-0454-WMA, 2015 WL 7252662, at *2-3 (N.D. Ala. Nov. 17, 2015).

[132]    Ala. Code § 8-19-5.

that (1) he or she is a "consumer,"[133] (2) made a pre-suit demand,[134] and (3) suffered

monetary damages as a result of the Defendant's violation of the Act.[135] Additionally,

a claim under the ADTPA must be within "one year after the person bringing the

action discovers or reasonably should have discovered the act or practice."[136] These

inquiries will demand individualized evidence which will predominate the claim. As

a result, the Plaintiffs' ADTPA claim should not be certified.

### b. Superiority

To meet the superiority requirement, the Court must conclude "that a class

action is superior to other available methods for fairly and efficiently adjudicating the

controversy."[137] The factors relevant in determining superiority include:

> (A) the class members' interests in individually controlling the
> prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy
> already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the
> claims in the particular forum; and

---

[133]    Id. § 8-19-3(2) (defining consumer as "any natural person who buys goods or services for personal, family, or household use").

[134]    Id. § 8-19-10(e).

[135]    Id. § 8-19-10(a).

[136]    Id. § 8-19-14.

[137]    FED. R. CIV. P. 23(b)(3).

(D) the likely difficulties in managing a class action.[138]

Class certification "cannot be denied because the number of potential class members makes the proceeding complex or difficult."[139] But the difficulties in managing a class are important "if they make the class action a less fair and efficient method of adjudication than other available techniques."[140] Thus, the focus should be "on the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs."[141]

The Court finds that class treatment is not superior to other available methods of adjudication. Based on the number of individual issues discussed above, adjudicating these claims on a class-wide basis will likely present a manageability problem. There will be numerous fact-intensive individual inquiries, including physical inspection of class members' Shingles and individual testimony regarding when class members discovered the defect and provided notice to Atlas. In addition, the Court does not agree with the Plaintiffs' contention that the class members lack

---

[138]    Carriuolo v. General Motors Co., 823 F.3d 977, 989 (11th Cir. 2016) (quoting FED. R. CIV. P. 23(b)(3)).

[139]    In re Theragenics Corp. Sec. Litig., 205 F.R.D. 687, 697 (N.D. Ga. 2002).

[140]    Id. at 697-98 (quoting In re Domestic Air Transp. Antitrust Litigation, 137 F.R.D. 677, 693 (N.D. Ga. 1991)).

[141]    Klay v. Humana, Inc., 382 F.3d 1241, 1269 (11th Cir. 2004).

any significant interest in controlling the litigation. The damages claimed by the named Plaintiffs are not insignificant. The Plaintiffs' own expert opined that replacing a roof can be "several thousand dollars to tens of thousands of dollars."[142] Thus, this case is unlike class actions where the class members have suffered only a minor harm and would not pursue their claims but for the class action mechanism.[143] The owners have the option of pursuing their claims in state court, where claims of several thousands dollars are common.[144] In sum, the Court finds that Rule 23(b)'s superiority requirement is not satisfied.

## B. Rule 23(c)(4) Class

As an alternative, the Plaintiffs ask the Court to certify a Rule 23(c)(4) class consisting of four common questions: "(1) whether the shingles suffer from a common manufacturing defect; (2) whether the defect breaches any express or implied warranties; (3) whether the defect necessitates replacement of all roofs containing the

---

[142]    See Primary Mot. for Class Cert., Ex. Tab 21, at 47.

[143]    Cf. In re Delta/AirTran Baggage Fee Antitrust Litigation, No. 1:09-md-2089-TCB, 2016 WL 3770957, at *23 (N.D. Ga. July 12, 2016) ("Where, as here, the class members' claims are 'so small that the cost of individual litigation would be far greater than the value of those claims,' the class-action vehicle is superior to other forms of litigation available to Plaintiffs, and class certification is appropriate.").

[144]    See Gonzalez v. Owens Corning, 317 F.R.D. 443, 524 (W.D. Pa. 2016).

shingles; and (4) whether Atlas fraudulently concealed the defect."[145] The Plaintiffs

contend that certifying a class based on these four questions will materially advance

the litigation.

Under Rule 23(c)(4), "an action may be brought or maintained as a class action

with respect to particular issues."[146] However, there is a split among courts over how

to apply the predominance test when asked to certify an issue class.[147] Some courts

have certified issue classes despite a lack of overall predominance.[148] But many other

courts "have emphatically rejected attempts to use the (c)(4) process for certifying

individual issues as a means for achieving an end run around the (b)(3) predominance

---

[145]     See Pls.' Primary Reply Br. [Doc. 61], at 25 under No. 1:13-cv-02195-TWT. The Plaintiffs incorporate by reference Section V of Plaintiffs' Reply Brief in Dishman v. Atlas Roofing Corp. See Pls.' Reply Br., at 23.

[146]     FED. R. CIV. P. 23(c)(4).

[147]     Compare In re Nassau Cty. Strip Search Cases, 461 F.3d 219, 225 (2d Cir. 2006) ("[A] court may employ Rule 23(c)(4)(A) to certify a class on a particular issue even if the action as a whole does not satisfy Rule 23(b)(3)'s predominance requirement."), with Castano v. American Tobacco Co., 84 F.3d 734, 745 n.21 (5th Cir. 1996) ("A district court cannot manufacture predominance through the nimble use of subdivision (c)(4).").

[148]     See Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996) ("[E]ven if the common questions do not predominate over the individual questions so that class certification of the entire action is warranted, Rule 23 authorizes the district court in appropriate cases to isolate the common issues under Rule 23(c)(4)(A) and proceed with class treatment of these particular issues.").

requirement."[149] These courts note that "the proper interpretation of the interaction between subdivisions (b)(3) and (c)(4) is that a cause of action, as a whole, must satisfy the predominance requirement of (b)(3) and that (c)(4) is a housekeeping rule that allows courts to sever common issues for a class trial."[150] The Court finds the latter interpretation to be persuasive.[151] As discussed above, even if the Plaintiffs could establish in a class-wide trial that the Shingles suffer from a common manufacturing defect, each class member's claim will still need to be separately tried to determine issues like causation, notice, and statute of limitations. It is these individual issues that will predominate. Moreover, certifying an issues class would not promote judicial efficiency. The "Plaintiffs' case for certification collapses when it confronts the fact that certification of a common issues class will not dispose of a single case or

---

[149]    Randolph v. J.M. Smucker Co., 303 F.R.D. 679, 700 (S.D. Fla. 2014) (quoting City of St. Petersburg v. Total Containment, Inc., 265 F.R.D. 630, 646 (S.D. Fla. 2010)); see also Fisher v. Ciba Specialty Chemicals Corp., 238 F.R.D. 273, 316 (S.D. Ala. 2006).

[150]    Castano, 84 F.3d at 745 n.21.

[151]    The Eleventh Circuit has not provided clear guidance as to whether predominance must be found for the cause of action as a whole when certifying a Rule 23(c)(4) class.

eliminate the need for a single trial."[152] As a result, the Court concludes a Rule 23(c)(4) class should not be certified.

### C. Rule 23(b)(2) Class

The Plaintiffs seek to certify the following Rule 23(b)(2) class: "All those who as of the date class notice is issued own a home or other structure in the State of Alabama on which Atlas Chalet or Stratford roofing Shingles are currently installed."[153] The Complaint requests several declarations: "[t]he Shingles have a defect which results in premature failure"; "Defendant's warranty fails of its essential purpose"; "Defendant's warranty is void as unconscionable"; and "blistering, cracking, and granular loss are manufacturing defects that require Atlas to honor future warranty claims by members of the Declaratory Relief Class."[154]

The Court concludes that a Rule 23(b)(2) class is inappropriate. "A declaratory or injunctive relief class pursuant to Rule 23(b)(2) is appropriate only if 'the predominant relief sought is injunctive or declaratory.'"[155] The monetary relief must

---

[152]    In re Conagra Peanut Butter Products Liability Litigation, 251 F.R.D. 689, 701 (N.D. Ga. 2008).

[153]    Mot. for Class Cert., at 4.

[154]    Second Am. Compl. ¶ 157.

[155]    DWFII Corp. v. State Farm Mut. Auto Ins. Co., 469 F. App'x 762, 765 (11th Cir. 2012) (quoting Murray v. Auslander, 244 F.3d 807, 812 (11th Cir. 2001) (citation omitted))

be *incidental* to the injunctive or declaratory relief.[156] "Monetary damages are incidental when 'class members automatically would be entitled [to them] once liability to the class . . . as a whole is established[,]' and awarding them 'should not entail complex individualized determinations.'"[157] Here, it is clear that the monetary damages are not incidental to the requested declaratory relief. Indeed, the Plaintiffs are seeking monetary relief for each putative class member, and the damages calculation will be individualized.

## IV. Conclusion

For these reasons, the Court DENIES the Plaintiffs George Crotzer and Susan Crotzer's Motion for Class Certification [Doc. 41].

SO ORDERED, this 8 day of June, 2017.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge

---

[156]     See Murray, 244 F.3d at 812 ("[M]onetary relief predominates in (b)(2) class actions unless it is *incidental* to requested injunctive or declaratory relief." (emphasis in original) (quoting Allison v. Citgo Petroleum Corp., 151 F.3d 402, 411 (5th Cir. 1998))).

[157]     DWFII Corp., 469 F. App'x at 765 (quoting Murray 244 F.3d at 812).