IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE ATLAS ROOFING CORPORATION CHALET SHINGLE PRODUCTS LIABILITY LITIGATION | MDL DOCKET NO. 2495 1:13-md-2495-TWT |
| STRATFORD CLUB CONDOMINIUM ASSOCIATION on behalf of itself and all others similarly situated, | |
|     Plaintiff, | |
|      v. | CIVIL ACTION FILE NO. 1:14-CV-1071-TWT |
| ATLAS ROOFING CORPORATION doing business as Meridian Roofing Company, | |
|     Defendant. | |

## OPINION AND ORDER

This action arises out of the marketing and sale of allegedly defective roofing shingles. It is before the Court on the Defendant's Motion for Summary Judgment [Doc. 44]. For the reasons set forth below, the Defendant's Motion for Summary Judgment [Doc. 44] is GRANTED.

## I. Background

The Plaintiff Stratford Club Condominium Association is an association of unit owners in a condominium complex in Virginia.[1] The Plaintiff is

---

[1]     Def.'s Statement of Material Facts ¶ 1.

responsible for the maintenance, repair, and replacement of the common elements of the condominium complex, including the roofs at the Stratford Club complex, which contain Atlas Shingles (the "Shingles").[2] The Defendant Atlas Roofing Corporation designed, manufactured, and sold the Shingles.[3] The Defendant developed the Shingles in the 1990s as a line of "overlay" products intended to provide an affordable shingle with the look of the more expensive architectural shingles.[4] In 2010, the Defendant discontinued sales of the Shingles.[5] The Plaintiff alleges that the Shingles are defective in design, and filed this action seeking to represent a class of homeowners who own homes with the Shingles.

The Defendant provided a Limited Shingle Warranty (the "Atlas Limited Warranty") to the original owner of the Shingles.[6] The Atlas Limited Warranty, which constitutes the owner's "sole and exclusive remedy," allows the owner to transfer the warranty to a second owner under certain conditions.[7] To transfer

---

[2] *Id.* ¶ 2. It should be noted that – for purposes of this lawsuit – Chalet/Stratford Shingles are indistinguishable. *See* Primary Mot. for Class Cert. [Doc. 57], Ex. Tab 14, Thomas Dep., at 35 under No. 13-cv-02195-TWT. The differences between the two Shingles relate to aesthetics, not design. *Id.*

[3] Pl.'s Statement of Additional Material Facts ¶¶ 1-2.

[4] *Id.* ¶ 2.

[5] *Id.* ¶ 28.

[6] Def.'s Mot. for Summ. J., Ex. L.

[7] *Id.*

the warranty, the second owner must notify the Defendant in writing within 30 days of their purchase of the home.[8] The Atlas Limited Warranty also limited the transfer of the warranty to only the second owner, and prohibited the transfer to any subsequent owners after the second owner.[9]

The complex now known as Stratford Club Condominium was originally developed by API Stratford LLC.[10] The Stratford Club Condominium includes eleven separate buildings, including recreational and parking facilities.[11] Each building contains between 26 and 32 units, for a total of 300 units in the complex.[12] The Shingles were installed on the roofs of the complex during its construction, which occurred sometime between 2002 and 2004.[13] API Stratford LLC originally named the complex the "Westchester at Stratford Condominium."[14] The complex was initially created as a "shelf" condominium in January 2005, and operated for a period as a rental apartment project.[15] In the

---

[8]     *Id.*

[9]     *Id.*

[10]     Def.'s Statement of Material Facts ¶ 5.

[11]     Pl.'s Br. in Response to Def.'s Mot. for Summ. J., Ex. C [Doc. 53-4], at 7.

[12]     *Id.*

[13]     Def.'s Statement of Material Facts  ¶ 4.

[14]     *Id.* ¶ 6.

[15]     Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., Ex. C [Doc. 53-4], at 7.

Declaration for Westchester at Stratford Condominium, API Stratford LLC, as the Declarant, stated that it owned each condominium unit in fee simple, and reserved the right to lease the units.[16] API Stratford LLC initially developed the condominium complex as an apartment complex.[17] API Stratford LLC later conveyed the condominium complex to Toll Stratford, LLC.[18] The Amendment to Declaration for Stratford Club Condominium (formerly Westchester at Stratford Condominium), which evidences this conveyance, is dated September 26, 2005.[19] The Amended Declaration notes that API Stratford LLC "transferred to [Toll Stratford, LLC] all of its special declarant rights under the Initial Declaration."[20] It also stated that API Stratford LLC conveyed all 300 units and common elements to Toll Stratford, LLC.[21] Toll Stratford, LLC renamed the complex as the Stratford Condominium Complex.[22]

---

[16]    Def.'s Mot. for Summ. J., Ex. E [Doc. 44-7], at 4.

[17]    Def.'s Mot. for Summ. J., Ex. I [Doc. 44-11], at 2.

[18]    Def.'s Statement of Material Facts ¶ 7.

[19]    Def.'s Mot. for Summ. J., Ex. G [Doc. 44-9].

[20]    *Id.*

[21]    *Id.*

[22]    Def.'s Statement of Material Facts ¶ 7.

The Plaintiff, the Stratford Club Condominium Association, is an organization responsible for governing the condominium complex.[23] Each unit in the condominium has an equal vote, which ensures that membership in the association is proportional to ownership.[24] The Declarant, Toll Stratford, LLC, retained control of the Board of Directors of the Plaintiff in the "early stages" of the condominium complex's existence.[25] The condominium's bylaws provided that Toll Stratford, LLC would retain control of the Board of Directors either for five years following conveyance of the first unit to a unit owner, or until 75% of the units were transferred to unit owners.[26] Around 2010, control of the Board of Directors transferred from Toll Stratford, LLC to the unit owners.[27]

According to the Plaintiff, the Shingles began to blow off of the complex's roofs sometime around 2009.[28] The Plaintiff also asserts that there were several leaks in multiple buildings in the complex.[29] Sometime around 2014, the

---

[23] Pl.'s Statement of Additional Material Facts ¶ 45; Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., Ex. C [Doc. 53-4], at 18.

[24] Pl.'s Statement of Additional Material Facts ¶ 46; Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., Ex. C [Doc. 53-4], at 18.

[25] Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., Ex. C [Doc. 53-4], at 18.

[26] *Id.*

[27] Def.'s Mot. for Summ. J., Ex. J [Doc. 44-12], at 2.

[28] Pl.'s Statement of Additional Material Facts ¶ 48.

[29] *Id.*

Plaintiff, through counsel, filed a warranty claim with the Defendant.[30] However, the Plaintiff filed this lawsuit before receiving a response from the Defendant as to its warranty claim.[31]

On March 25, 2014, the Plaintiff filed this action in the U.S. District Court for the Eastern District of Virginia. On April 10, 2014, the Judicial Panel on Multidistrict Litigation transferred this action to be consolidated with the multidistrict litigation pending before this Court.[32] The Plaintiff's remaining claims are for breach of express warranty (Count I), breach of implied warranties of merchantability and fitness for a particular purpose (Count II), fraudulent concealment (Count V), and declaratory relief (Count VI). The Defendant now moves for summary judgment as to each of these claims.[33]

## II. Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show no genuine issue of material fact

---

[30]    *Id.* ¶ 50; Ventura Dep. at 86-87.

[31]    Ventura Dep. at 89-90.

[32]    *See* Transfer Order [Doc. 4] under No. 1:14-cv-001071-TWT.

[33]    The Plaintiff does not oppose the Defendant's Motion for Summary Judgment with respect to its implied warranties claim. Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 3 n.1. It also concedes that its claim for declaratory relief is inapplicable to its assertion of individual claims, but "preserves that cause of action for appellate review of the Court's denial of class certification." *Id.* at 3 n.2. The Court therefore deems these claims to be abandoned.

exists and that the movant is entitled to judgment as a matter of law.[34] The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant.[35] The party seeking summary judgment must first identify grounds to show the absence of a genuine issue of material fact.[36] The burden then shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists.[37] "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party."[38]

## III. Discussion

### A. Atlas Limited Warranty

The Defendant first moves for summary judgment as to the Plaintiff's claim for breach of the Atlas Limited Warranty. The Defendant argues that the Atlas Limited Warranty did not extend to the Plaintiff because the Plaintiff is the third owner of the Shingles. The Defendant also argues that, even if the Atlas Limited Warranty did apply, it does not cover the wind damage asserted

---

[34]     FED. R. CIV. P. 56(a).

[35]     *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970).

[36]     *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

[37]     *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

[38]     *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

by the Plaintiff. The Court concludes that the Atlas Limited Warranty does not extend coverage to the Plaintiff.

The Atlas Limited Warranty provides, in relevant part, that "[t]he original owner may transfer this warranty to the subsequent owner, with the following limitations . . . ."[39] The warranty states that "[t]he second owner MUST NOTIFY ATLAS IN WRITING (see attached warranty transfer card) WITHIN 30 DAYS after the real estate transfer for any coverage to be transferred."[40] It further provides that "[h]owever, after you have transferred this warranty to the purchaser of your home, it may not be transferred again. That is, the purchaser of your home may not transfer this warranty to any subsequent purchasers."[41]

The Court concludes that the Plaintiff, acting on behalf of the unit owners of the Stratford Club Condominium, is the third owner of the Shingles, and therefore is not covered by the Atlas Limited Warranty. API Stratford LLC, who presumably purchased the Shingles, was their original owner. API Stratford LLC developed the condominium complex as a "shelf" condominium, and operated it as a rental apartment project.[42] In 2005, API Stratford LLC conveyed

---

[39]     Def.'s Mot. for Summ. J., Ex. L [Doc. 44-14], at 2.

[40]     *Id.*

[41]     *Id.*

[42]     Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., Ex. C [Doc. 53-4], at 7.

the complex to Toll Stratford, LLC. It transferred ownership of all 300 units to Toll Stratford, LLC, which demonstrates that it had still held complete ownership of all of the units and common elements of the complex. Toll Stratford, LLC then became the second owner of the entire complex, including the common elements. Then, the unit owners became the next owners of the condominium complex, including the common elements, after the declarant-control period ended. The transfer from declarant control to owner control of the condominium complex constituted a change in ownership of the complex. This renders the Atlas Limited Warranty inapplicable. Once Toll Stratford, LLC began to sell units, which eventually resulted in it relinquishing declarant control of the complex, it transferred its complete control over the common elements. Thus, the unit owners, acting through the Plaintiff, then obtained control over the common elements. The Plaintiff therefore is the third owner of the Shingles.

This conclusion is supported by Virginia's Condominium Act. The Annotated Code of Virginia defines "declarant" as:

> any person, or group of persons acting in concert, that (i) *offers to dispose of his or its interest in a condominium unit not previously disposed* of, including an institutional lender which may not have succeeded to or accepted any special declarant rights pursuant to § 55-79.74:3; (ii) reserves or succeeds to any special declarant right; or (iii) applies for registration of the condominium.[43]

---

[43] VA. CODE ANN. § 55-79.41 (emphasis added).

It further defines "dispose" or "disposition" as "any voluntary transfer of a legal or equitable interest in a condominium unit to a purchaser."[44] And, "condominium unit" is defined as "a unit together with the undivided interest in the common elements appertaining to that unit."[45] Thus, when a declarant disposes of its interest in a condominium unit, it transfers its legal interest in the unit and the common elements to the purchaser. Toll Stratford, LLC "disposed" of its interest in unsold condominium units when it sold them, and thereby transferred its legal and equitable interests in those units to those purchasers. Taking these statutory provisions into consideration, Toll Stratford, LLC, as declarant, transferred its legal interest in the common elements as it sold the condominium units. And, once it had sold 75% of the units, it lost control of the condominium association. Thus, this transfer of declarant control of the complex would logically be seen as a transfer of legal interest and ownership in the complex.

The Plaintiff also asserts that it, as the condominium association, has always been owner of the property, and that API Stratford LLC and Toll Stratford, LLC acted on behalf of the Plaintiff.[46] However, the inverse is true. The condominium unit owners are the true owners of the Shingles – they each

---

[44]     *Id.*

[45]     *Id.*

[46]     Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 6-7.

own an undivided interest in the common elements of the complex.[47] The Plaintiff acts on behalf of the interests of the owners and the condominium complex.[48] For "important policy decisions," the unit owners vote as to how the Plaintiff will act.[49] They also vote to elect a Board of Directors of the Plaintiff, which makes decisions regarding the normal operations of the condominium.[50] The Plaintiff thus acts on behalf of the condominium unit owners, who each own an undivided interest in the common elements of the complex. Therefore, even if the Plaintiff existed when API Stratford LLC and Toll Stratford, LLC owned the condominium units, this does not mean that it was the original owner. Instead, it represented the interests of API Stratford LLC, the original owner, and Toll Stratford, LLC, the second owner. The Plaintiff now represents the interests of the subsequent owners of the condominium units, who are now jointly the "owners" of the condominium complex common elements. The Plaintiff, on behalf of these subsequent owners, cannot enforce the Atlas Limited

---

[47]    *See* Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., Ex. C [Doc. 53-4], at 5 ("The ownership share in the common elements is an 'undivided' interest, which means that a unit's common element interest cannot be sold separately from the unit."); VA. CODE ANN. § 55-79.55 ("[T]he declaration shall allocate to each such unit an equal undivided interest in the common elements . . . .").

[48]    Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., Ex. C [Doc. 53-4], at 2 ("The Condominium will be governed by a unit owners association. Each unit owner will have a vote on certain decisions of the association and will be bound by all decisions of the association including those with which the unit owner disagrees.").

[49]    *Id.* at 18.

[50]    *Id.*

Warranty because those owners it represents are not covered by the warranty's terms.

Furthermore, even if the Plaintiff were considered the second owner, its claim under the Atlas Limited Warranty would still fail because it did not notify the Defendant within thirty days of the transfer of ownership, as the Atlas Limited Warranty requires. Even though, as second owner, the Plaintiff would be entitled to coverage under the Atlas Limited Warranty, the terms of the warranty required the Plaintiff to notify the Defendant of this change in ownership in the condominium complex. Under the "TRANSFERABILITY" section of the Atlas Limited Warranty, it provides that a second owner "MUST NOTIFY ATLAS IN WRITING (see attached warranty transfer card) WITHIN 30 DAYS after the real estate transfer for any coverage to be transferred."[51] Thus, to be entitled to coverage, the Plaintiff needed to send the Defendant the warranty transfer card within thirty days. As this Court previously noted, homeowners "who purchased a home with Atlas Shingles already installed on it will have to prove that the warranty properly transferred to them." The Plaintiff has not met its burden in showing that it satisfied this condition precedent to recovery. It has not offered any evidence that it notified the Plaintiff of this change in ownership by mailing them the warranty transfer

---

[51]     Def.'s Mot. for Summ. J., Ex. L.

card. Therefore, even if the Plaintiff were the second owner, it would still not be able to enforce the Atlas Limited Warranty.

The Plaintiff then argues that, even if it is not a covered owner, it is an intended third-party beneficiary of the Atlas Limited Warranty.[52] "The essence of a third-party beneficiary's claim is that others have agreed between themselves to bestow a benefit upon the third party but one of the parties to the agreement fails to uphold his portion of the bargain."[53] "The third party beneficiary doctrine is subject to the limitation that the third party must show that the parties to the contract clearly and definitely intended it to confer a benefit upon him."[54] The third-party beneficiary theory does not apply unless the party against whom liability is asserted intended to benefit the third party.[55] "Put another way, a person who benefits only incidentally from a contract between others cannot sue thereon."[56]

Thus, to succeed on a third-party beneficiary theory, the Plaintiff would need to show that the Defendant and the purchaser of the Shingles intended to

---

[52]     Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 8-10.

[53]     *Levine v. Selective Ins. Co. of Am.*, 462 S.E.2d 81, 83 (Va. 1995) (quoting *Copenhaver v. Rogers*, 384 S.E.2d 593, 596 (Va. 1989)).

[54]     *Valley Landscape Co. v. Rolland*, 237 S.E.2d 120, 122 (Va. 1977) (quoting *Prof'l Realty v. Bender*, 222 S.E.2d 810, 812 (Va. 1976)).

[55]     *Id.*

[56]     *MNC Credit Corp. v. Sickels*, 497 S.E.2d 331, 335 (Va. 1998) (quoting *Copenhaver* , 384 S.E.2d at 596).

confer a direct benefit upon the Plaintiff with the Atlas Limited Warranty.[57] The Plaintiff has failed to show that the original parties to the warranty had such an intent. In fact, the Atlas Limited Warranty explicitly evidences a contrary intent on the part of the contracting parties. The warranty provides that its coverage extends only to the original owner of the Shingles, and to the second owner if certain conditions are met. Therefore, the Defendant and API Stratford LLC did not intend for the warranty to directly benefit the Plaintiff, since they clearly limited the warranty's coverage and transferability to only the original and second owners. For this reason, the Plaintiff's third-party beneficiary theory fails.

## B. Express Warranties Based Upon Marketing Materials

Next, the Defendant argues that the Plaintiff's express warranty claim based upon alleged marketing materials fails as a matter of law. In its First Amended Complaint, the Plaintiff alleges that the Defendant "expressly represented and warranted" that: (1) the Shingles were "appropriate for their intended use and were free from defects"; (2) the Defendant's warranties "extended to the initial homeowner whose home contains the Shingles"; and (3) the Shingles "conform[ed] to all applicable industry standards and building codes."[58] According to the Defendant, the Plaintiff has failed to provide any

---

[57]     *MNC Credit Corp.*, 497 S.E.2d at 335.

[58]     First Am. Compl. ¶¶ 45-47.

evidence that these alleged statements appeared in any of the Defendant's marketing materials or that they were ever made by the Defendant.[59] The Court agrees.

To prove a breach of warranty claim, a plaintiff must demonstrate: "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation."[60] Virginia law does not require a plaintiff asserting a breach of warranty claim to show reliance upon the warranty.[61] But, the plaintiff still must show that the express warranty was made in the first place, and provide evidence of the terms of the warranty. "A plaintiff seeking to recover for any breach of warranty has the dual burden of proving the pertinent terms of the warranty and the fact that those terms were breached."[62] Thus,

---

[59] Def.'s Mot. for Summ. J., at 6.

[60] *Crosslin v. Sears Auto. & Tire*, No. 1:14CV00030, 2014 WL 3673326, at *2 (W.D. Va. July 23, 2014) (quoting *Ulloa v. QSP, Inc.*, 624 S.E.2d 43, 48 (Va. 2006)).

[61] *Daughtrey v. Ashe*, 413 S.E.2d 336, 338 (Va. 1992) ("In our opinion, the 'part of the basis of the bargain' language of Code § 8.2–313(1)(b) does not establish a buyer's reliance requirement.").

[62] *Collier v. Rice*, 356 S.E.2d 845, 847 (Va. 1987); *see also Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 624 (4th Cir. 1999) ("To recover for breach of warranty under Virginia law, Hitachi has the burden of showing (1) the existence of a warranty and (2) a breach."); *Bay Point Condo. Ass'n Bd. of Dirs. v. Mid-Atlantic Ins. Corp.*, No. L00-948, 2000 WL 33595037, at *4 (Va. Cir. Ct. Sept. 20, 2000) ("Even at the demurrer stage, Plaintiffs must allege sufficient facts that would support a finding that a warranty was created by Mid-Atlantic and that the warranty was breached.").

although the Plaintiff need not establish that it relied upon the warranties made by the Defendant, it still must prove the warranties' existence and provide evidence showing what the terms of those warranties are.[63] The comments to the U.C.C. state that "the whole purpose of the law of warranty is to determine what it is that the seller has in essence agreed to sell" and that the goal of the provisions was to reflect that "[i]n actual practice affirmations of fact made by the seller about the goods during a bargain are regarded as part of the description of those goods; hence no particular reliance on such statements need be shown in order to weave them into the fabric of the agreement."[64] Thus, the U.C.C. still contemplates that the affirmation of fact *be made* by the seller during the bargain.

Here, the Plaintiff has not satisfied its burden in showing that the Defendant ever made the representations or warranties alleged in the First Amended Complaint. Nothing in the record shows that the Defendant represented that the Shingles would be free from defects or would conform to industry standards or building codes.[65] Furthermore, none of the evidence

---

[63] *See Daughtrey*, 413 S.E.2d at 338 ("Instead, this language makes a seller's description of the goods that is not his mere opinion a representation that defines his obligation.").

[64] VA. CODE ANN. § 8.2-313 cmt. 3-4; *see also Daughtrey*, 413 S.E.2d at 338-39.

[65] The Plaintiff also alleges that the Defendant represented that its warranties "extended to the initial homeowner whose home contains the Shingles." First Am. Compl. ¶ 46. However, the Plaintiff has not shown that the

offered sets forth the specific terms of these purported warranties made in the outside marketing materials. Without providing evidence of the specific terms of the alleged warranties, it would be impossible for a fact-finder to determine whether a breach of such warranties occurred. The only evidence that the Plaintiff identifies is the 30(b)(6) deposition of John Ventura as representative of Stratford Club. In that deposition, Ventura was questioned about the Plaintiff's express warranty allegations. In the portion of the testimony cited by the Plaintiff, Ventura admits that the Atlas Limited Warranty is the only representation or warranty that the Defendant made to the Plaintiff.[66] When asked whether, besides the Atlas Limited Warranty, there were "[a]ny other representations and warranties regarding the shingles that you know of," Ventura responded that there were not.[67] Ventura further admitted that the Plaintiff was not aware of any oral representations by the Defendant that the Shingles "conformed to and had been designed and/or manufactured to meet or exceed applicable building standards and building code requirements."[68] Ventura alludes to a thirty-year guarantee, but admits that he is referencing the

---

Defendant breached such a warranty. In fact, this is exactly what the Atlas Limited Warranty does. Therefore, the Court finds that the Defendant has not breached this warranty as a matter of law.

[66]     Ventura Dep. at 46-50.

[67]     *Id.* at 49-50.

[68]     *Id.* at 51.

Atlas Limited Warranty, and not some other outside warranty.[69] Overall, Ventura states that he was not aware of "any oral or written warranties or representations other than in Exhibit 46 [the Atlas Limited Warranty]."[70]

This testimony is the only evidence that the Plaintiff offers in support of its breach of express warranty claims based upon material outside the Atlas Limited Warranty. This falls far short of proving that the Defendant ever made any of the warranties or representations alleged in the First Amended Complaint. It also fails to outline the terms of such alleged warranties, even if they were proven to have been made in the first place. For this reason, the Plaintiff's express warranty claim based upon statements made outside of the Atlas Limited Warranty fails as a matter of law.

The Plaintiff argues that "Virginia law does not support such approach of semantics over substance."[71] While the Court agrees that the Plaintiff need not provide evidence containing verbatim what representations were made, it still needs to provide some evidence of both the warranties' existence and the terms of those warranties specific enough to allow a fact-finder to determine whether a breach of those terms occurred. Otherwise, a fact-finder would be forced to rely upon mere speculation. The Plaintiff has failed to produce such

---

[69]     *Id.* at 49-50.

[70]     *Id.* at 52.

[71]     Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 12.

evidence in this case. In fact, the Plaintiff has failed to offer any evidence that the Defendant made these representations during the purchase of the Shingles. Such a requirement does not elevate semantics over substance. Therefore, the Plaintiff's breach of express warranty claim based upon the Defendant's marketing materials fails as a matter of law.

### C. Constructive Fraud

Next, the Defendant moves for summary judgment as to the Plaintiff's purported claim for constructive fraud. According to the Defendant, the Plaintiff argued in its Motion to Certify Class that it had asserted a claim for constructive fraud, even though it did not plead such a claim in the First Amended Complaint.[72] The Court agrees. Constructive fraud, a distinct cause of action under Virginia law,[73] was not asserted in the First Amended Complaint. Instead, Count V only asserted a claim for fraudulent concealment. The Plaintiff cannot now allege a claim for constructive fraud.[74]

Furthermore, even if this claim was properly asserted, it would still fail due to the economic loss rule. Under Virginia law, the economic loss rule

---

[72]     Def.'s Mot. for Summ. J., at 16.

[73]     *See Blair Constr., Inc. v. Weatherford*, 485 S.E.2d 137, 139 (Va. 1997) ("Blair's reliance upon these cases is misplaced. Once again, Blair fails to recognize the distinctions between *actual* fraud and *constructive* fraud. Each of the cases that Blair cites involves *actual* fraud, not *constructive* fraud.").

[74]     *See Cooley v. Great S. Wood Pres.*, 138 F. App'x 149, 153-54 (11th Cir. 2005) (noting that a new claim could not be asserted in the parties' briefs at the summary judgment stage without filing a supplemental pleading).

precludes recovery for economic losses in tort law. For "purely economic loss . . . the law of contracts provides the sole remedy."[75] The economic loss rule applies to claims for constructive fraud under Virginia law.[76] Here, the Plaintiff has failed to show that a defect in the Shingles caused any damage to other property. As this Court previously noted, "[a]ll roofs will fail eventually."[77] "If the roof fails due to hail or wind damage or improper installation, the home-owner-class member has not been damaged."[78] The Plaintiff points to the opinion of the Plaintiffs' expert, Dean Rutila, as evidence that a defect in the Shingles caused its roof leaks. Rutila studied 351 roofs containing the Shingles, including the Plaintiff's roofs, and concluded that the Shingles are defective.[79] However, Rutila admits that he was unable to show that any of the alleged defects in the Shingles, including blisters, cracks, and loss of granule surfacing, resulted in a

---

[75]    *Beard Plumbing & Heating, Inc. v. Thompson Plastics, Inc.*, 152 F.3d 313, 316 (4th Cir. 1998).

[76]    *Va. Transformer Corp. v. P.D. George Co.*, 932 F. Supp. 156, 163 (W.D. Va. 1996) ("Constructive fraud is effectively nothing more than a claim of negligence. Carried to its logical conclusion it would emasculate the economic loss rule. Constructive fraud implies no greater duty for a defendant to be accurate in its representations than does a negligence standard. Thus the fraud exception to the economic loss rule is solely for actual fraud, a distinction correctly made in the decisions cited supra, and one adhered to here.").

[77]    *See* [Doc. 43] at 23.

[78]    *See id.*

[79]    Rutila Dep. at 84-85.

leak in any of the roofs he studied.[80] Instead, he stated that he believed that the

Shingles "will leak" in the future.[81] Rutila concedes that he was unable to show

that the roofs he studied, including the Plaintiff's roofs, had experienced leaks

due to defects in the Shingles. Given this admission, Rutila's expert opinion is

insufficient to prove that a defect in the Shingles, as opposed to some other

factor, caused the roof leaks at the condominium complex. Instead, the Plaintiff

can only show that the Shingles suffered cracking, blistering, and granule loss,

which is purely economic loss. Therefore, since the Plaintiff has not provided

evidence establishing a causal link between defects in the Shingles and an

external injury, this claim is precluded by the economic loss rule.

### D. Fraudulent Concealment

Next, the Defendant moves for summary judgment as to the Plaintiff's

fraudulent concealment claim. The Plaintiff argues that the Defendant

fraudulently concealed the alleged defects in the Shingles and misrepresented

to potential customers that the Shingles were durable and conformed to

applicable industry standards. In Virginia, "[a] plaintiff asserting a claim of

actual fraud must demonstrate (1) a false representation by the defendant, (2)

of a material fact, (3) made intentionally and knowingly, (4) with intent to

mislead, (5) reliance by the misled party, and (6) resulting injury to the party

---

[80]     *Id.* at 84-85, 124, 167.

[81]     *Id.* at 84-85.

misled."[82] A concealment or omission of a material fact can also give rise to a claim of actual fraud under Virginia law.[83] To assert a claim for fraudulent concealment, a plaintiff must show that the defendant was under a duty to disclose.[84]

However, Virginia law does not impose a duty to disclose on a remote seller to disclose information to consumers such as the Plaintiff.[85] Absent some type of relationship between a consumer and a remote manufacturer, or some kind of communication or interaction, the remote manufacturer is under no duty to disclose under Virginia law.[86] Here, the Plaintiff has not shown that it had a

---

[82] *McCabe v. Daimler AG*, 160 F. Supp. 3d 1337, 1355 (N.D. Ga. 2015) (quoting *Carlucci v. Han*, 907 F. Supp. 2d, 709, 740 (E.D. Va. 2012)).

[83] *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 629 (4th Cir. 1999).

[84] *Id.* ("Silence does not constitute fraud in the absence of a duty to disclose.").

[85] *McCabe*, 160 F. Supp. 3d at 1355 ("[T]he Court finds that none of the cases cited by Plaintiffs establish that Virginia law imposes a duty on a remote seller, such as Defendants in this case, to disclose information to Plaintiffs under the facts of this case.").

[86] *See, e.g.*, *McCabe*, 160 F. Supp. 3d at 1355-58 (analyzing a line of Virginia fraudulent concealment cases and concluding that none of the cases imposed a duty to disclose on a remote seller when it had no relationship with the plaintiff, had no form of communication or contact with the plaintiff, and had made no affirmative misrepresentations); *Murray v. Royal Const. Co.*, No. CL01-04-7383, 2002 WL 32238304, at *2 (Va. Cir. Ct. June 10, 2002) ("There are no details about anything that Dryvit did or failed to do. Missing is any allegation of any communication between Dryvit and Murray or of any type of relationship between the two. Nothing is alleged as to how or when information was concealed or inaccurate information provided or that Murray was even aware of any such information."); *see also In re Gen. Motors LLC Ignition*

relationship with the Defendant, or that it ever had any contact with the Defendant. John Ventura, the 30(b)(6) representative for the Plaintiff, admitted that the Plaintiff has no information concerning the purchase of the Shingles.[87] In fact, there is no evidence in the record showing who bought the Shingles or what kinds of communications or interactions occurred during that purchase. Therefore, no fact-finder could rationally conclude that the Defendant took active steps to *conceal* the defects from the Plaintiff.[88] Absent evidence showing that there was some type of communication or relationship between the Plaintiff and the Defendant, the Plaintiff's fraudulent concealment claim fails as a matter of law.[89]

---

*Switch Litig.*, 14-MD-2543, 2016 WL 3920353, at *39 (S.D.N.Y. July 15, 2016) (rejecting defendant's argument for dismissal of fraudulent concealment claim under Virginia law and distinguishing this case from other cases where "no evidence was presented suggesting that the plaintiff had any communication or interaction with the remote seller").

[87]     Ventura Dep. at 23-24.

[88]     *Hitatchi Credit Am. Corp.*, 166 F.3d at 629 ("For purposes of an action for fraud, concealment, whether by word or conduct, may be the equivalent of a false representation because it always involves deliberate nondisclosure designed to prevent another from learning the truth.").

[89]     In the First Amended Complaint, the Plaintiff also seems to assert a claim for fraud premised upon misrepresentations made by the Defendant concerning the Shingles, which the parties have not discussed in their briefs. *See* First Am. Compl. ¶ 84. But, as discussed above with regard to the express warranty claim, the Plaintiff has failed to offer evidence of any representations made to it by the Defendant concerning the Shingles. It has also failed to show that it relied upon those representations. In fact, there is no evidence in the record at all concerning the original purchase of the Shingles. Therefore, any claim premised upon such alleged misrepresentations would also fail. The Plaintiff also asserted in the First Amended Complaint that the Defendant's

The Plaintiff argues that the Defendant was under a duty to disclose because it possessed superior knowledge of the Shingles' defects and knew that consumers were acting on false or incomplete information, but continued to sell the Shingles anyway.[90] However, even if this is true, the Plaintiff still must show that there was some type of relationship between it and the Defendant that would require disclosure of this information.[91] In all of the cases cited by the Plaintiff, some type of relationship existed between the parties.[92] Without such a relationship, the Defendant is not under a duty to disclose, even if it has

---

denial of the Plaintiff's warranty claim constituted a misrepresentation. However, both parties agree that the Defendant never responded to the Plaintiff's warranty claim. *See* Pl.'s Statement of Additional Material Facts ¶ 50. Therefore, it never could have made such a misrepresentation.

[90] Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 17-18.

[91] *See Murray*, 2002 WL 32238304, at *2 ("Murray claims Dryvit was under a duty to disclose information to him because the company was in a superior position to know the true facts and hidden defects of its E1FS. Murray has not alleged any facts that establish some relationship between him and Dryvit that gives rise to a duty to disclose information to him.").

[92] *See, e.g.*, *In re Lumber Liquidators Chinese-Manufactured Flooring Durability Mktg. & Sales Practice Litig.*, MDL No. 1:16md2743, 2017 WL 2911681, at *3 ("Plaintiffs informed Lumber Liquidators personnel that they had pets and needed flooring suitable for use by domestic animals, and sales personnel further represented that the Products 'wood [sic] not scratch from pet nails' and would 'hold up' to pets."). The Plaintiff also cites a Kansas Supreme Court case, *State ex rel. Stephan v. GAF Corp.*, 747 P.2d 1326 (Kan. 1987). There, the court held that a remote manufacturer did have a duty to disclose, noting that manufacturers do not have the "right" to disseminate false information "with impunity." *Id.* at 1329. However, as noted above, Virginia law requires some type of relationship or communication between a remote seller and consumer to impose a duty to disclose.

access to superior information concerning the Shingles. Therefore, the Plaintiff's fraudulent concealment claim fails as a matter of law.

### E. Attorneys' Fees

Finally, the Defendant moves for summary judgment as to the Plaintiff's request for attorneys' fees. The Plaintiff provides no response. The Court agrees that the Defendant is entitled to summary judgment as to this issue. Under Virginia law, "[i]t is a 'long-standing general rule' that 'in the absence of a statutory or contractual provision to the contrary, attorneys' fees are not recoverable by the prevailing litigant.'"[93] Since the Plaintiff has identified no statutory or contractual basis for an award of attorneys' fees, its request fails as a matter of law.

### IV. Conclusion

For the reasons stated above, the Defendant's Motion for Summary Judgment [Doc. 44] is GRANTED.

SO ORDERED, this 8 day of June, 2018.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge

---

[93] *Justus v. Kellogg Brown & Root Servs., Inc.*, 373 F. Supp. 2d 608, 613 (W.D. Va. 2005) (quoting *Gilmore v. Basic Indus., Inc.*, 357 S.E.2d 514, 517 (1987)).