IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE ATLAS ROOFING CORPORATION CHALET SHINGLE PRODUCTS LIABILITY LITIGATION | MDL DOCKET NO. 2495 1:13-md-2495-TWT |
| GEORGE CROTZER and SUSAN CROTZER, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | |
| v. | CIVIL ACTION FILE NO. 1:14-CV-831-TWT |
| ATLAS ROOFING CORPORATION, | |
| Defendant. | |

## OPINION AND ORDER

This is an action arising out of the marketing and sale of allegedly defective roofing shingles. It is before the Court on the Defendant's Motion for Summary Judgment [Doc. 50]. For the reasons set forth below, the Defendant's Motion for Summary Judgment [Doc. 50] is GRANTED in part and DENIED in part.

## I. Background

The Plaintiffs George Crotzer and Susan Crotzer are purchasers of Atlas Shingles (the "Shingles").[1] The Defendant Atlas Roofing Corporation designed,

---

[1]     It should be noted that – for purposes of this lawsuit – Chalet/Stratford Shingles are indistinguishable. *See* Primary Mot. for Class

manufactured, and sold the Shingles.[2] The Defendant developed the Shingles in the 1990s as a line of "overlay" products intended to provide an affordable shingle with the look of the more expensive architectural shingles.[3] In 2010, the Defendant discontinued sales of the Shingles.[4] The Plaintiffs allege that the Shingles are defective in design, and filed this action seeking to represent a class of homeowners who own homes with the Shingles.

In 2004, the Plaintiffs contracted with Professional Homebuilders, Inc. to construct a house in Maylene, Alabama.[5] The roof of the Plaintiffs' home was clad with the Shingles during the original construction of the house.[6] The roofing had already been pre-selected by the builder, and the Plaintiffs had no "available optional choices" to select from.[7] The Plaintiffs did not purchase the Shingles from the Defendant, paid no money directly to the Defendant, and never personally had any contact or communication with the Defendant prior

---

Cert. [Doc. 57], Ex. Tab 14, Thomas Dep., at 35 under No. 13-cv-02195-TWT. The differences between the two Shingles relate to aesthetics, not design. *Id.*

[2]    Pls.' Statement of Additional Material Facts ¶¶ 1-2.

[3]    *Id.* ¶ 2.

[4]    *Id.* ¶ 23.

[5]    Pls.' Statement of Additional Material Facts ¶ 10.

[6]    Def.'s Statement of Material Facts ¶ 2.

[7]    Pls.' Statement of Additional Material Facts ¶ 11.

to this lawsuit.[8] The Plaintiffs allege that the Shingles are defective in design because they "blister" and prematurely "crack."[9]

This case has a complicated procedural history. On September 11, 2013, a class action complaint, *Knight v. Atlas Roofing Corporation*, was filed in the United States District Court for the Middle District of Alabama against the Defendant.[10] The plaintiffs in that case alleged that the Shingles were defective, and sought to represent all homeowners with homes containing the Shingles.[11] The Plaintiffs were putative members of the *Knight* class action.[12] On December 19, 2013, the Judicial Panel on Multidistrict Litigation transferred the *Knight* action to this Court, along with all related class actions pending in federal court, for coordinated or consolidated pretrial proceedings.[13]

On February 25, 2014, Lloyd M. Denson and Peggy C. Denson filed this action in the United States District Court for the Northern District of Alabama on behalf of themselves and others similarly situated in the state of Alabama, seeking to bring their suit as a class action.[14] On March 21, 2014, the Judicial

---

[8]    Def.'s Statement of Material Facts ¶¶ 4, 6, 8.

[9]    Second Am. Compl. ¶ 26.

[10]    Pls.' Statement of Additional Material Facts ¶ 25.

[11]    *Id.* ¶¶ 24-25.

[12]    *Id.* ¶ 25.

[13]    *See* Transfer Order [Doc. 1] under No. 1:13-md-02495-TWT.

[14]    *See* [Doc. 1] under No. 1:14-cv-00831-TWT.

Panel on Multidistrict Litigation also transferred this action to be consolidated with the multidistrict litigation pending before this Court.[15]

On November 12, 2015, the Plaintiffs moved to intervene in this action and replace the Densons as the named plaintiffs and proposed class representatives.[16] Subsequently, on December 1, 2015, the Plaintiffs' counsel discussed the scheduling of discovery responses and an inspection of the Plaintiffs' home by email with the Defendant's counsel.[17] Then, on December 14, 2015, the Plaintiffs responded to the Defendant's discovery requests.[18] On December 21, 2015, the Plaintiffs' counsel provided the Defendant's counsel with a draft copy of the Plaintiffs' Second Amended Complaint.[19] Then, on December 23, 2015, the Defendant's experts inspected the Plaintiffs' home.[20] On December 30, 2015, the Densons moved for class certification. Additionally, on December 30, this Court granted the Plaintiffs' motion to intervene as named plaintiffs.[21] Finally, on January 6, 2016, the Plaintiffs filed the Second Amended Complaint, which

---

[15]     *See* Transfer Order [Doc. 7] under No. 1:14-cv-00831-TWT.

[16]     *See* [Doc. 36] under No. 1:14-cv-00831-TWT.

[17]     Bryson Decl. ¶ 5 [Ex. KK].

[18]     *Id.* ¶ 6.

[19]     *Id.* ¶ 7. This draft copy included the Plaintiffs' claim under the Alabama Deceptive Trade Practices Act.

[20]     Pls.' Statement of Additional Material Facts ¶ 30.

[21]     *See* [Doc. 42] under No. 1:14-cv-00831-TWT.

named them as the plaintiffs in place of the Densons.[22]

In the Second Amended Complaint, the Plaintiffs assert claims for breach of express warranty, breach of the implied warranty of merchantability, negligence and negligent design, fraudulent concealment, violation of Alabama's Extended Manufacturer's Liability Doctrine, unjust enrichment, violation of the Alabama Deceptive Trade Practices Act, and a request for declaratory relief. On June 8, 2017, this Court denied class certification.[23] The Defendant now moves for summary judgment as to each of the Plaintiffs' claims.[24]

## II. Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.[25] The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant.[26] The party seeking summary judgment must first identify grounds to show the absence of a genuine issue of material

_____

[22]    Pls.' Statement of Additional Material Facts ¶ 31.

[23]    *See* [Doc. 49] under No. 1:14-cv-00831-TWT.

[24]    The Plaintiffs "do not dispute Atlas's arguments regarding breach of implied warranty, negligence and negligent design, or violation of the Alabama Extended Manufacturer's Liability Doctrine." Pls.' Br. in Opp'n to Def.'s Mot. for Summ. J., at 3. Therefore, the Court deems these claims to be abandoned.

[25]    FED. R. CIV. P. 56(a).

[26]    *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970).

fact.[27] The burden then shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists.[28] "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party."[29]

## III. Discussion

### A. Express Warranty

First, the Defendant moves for summary judgment as to the Plaintiffs' express warranty claim. Specifically, the Defendant argues that the Plaintiffs' express warranty claim fails because they never provided the Defendant with pre-suit notice of their warranty claim, as Alabama law requires.[30] Under Alabama law,[31] to prevail on a breach of express warranty claim, a plaintiff must demonstrate (1) the existence of the warranty, (2) breach, and (3) damages

---

[27] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

[28] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

[29] *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

[30] Def.'s Mot. for Summ. J., at 3-4.

[31] "[I]n multidistrict litigation under 28 U.S.C. § 1407, the transferee court applies the state law that the transferor court would have applied." *In re Conagra Peanut Butter Prods. Liab. Litig.*, 251 F.R.D. 689, 693 (N.D. Ga. 2008); *see also In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir. 1996) ("When considering questions of state law, however, the transferee court must apply the state law that would have applied to the individual cases had they not been transferred for consolidation."). Here, both parties agree that Alabama law governs the Plaintiffs' state law claims.

proximately caused by the breach.[32] Moreover, for warranty claims, "[t]he buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy."[33] The Alabama Supreme Court "on several occasions . . . has characterized notice, such as required by § 7–2–607, as a condition precedent to recovery."[34]

Notice of breach "serves two distinct purposes" under Alabama law.[35] First, it "opens the way for settlement through negotiation between the parties."[36] Second, it "minimizes the possibility of prejudice to the seller by giving him 'ample opportunity to cure the defect, inspect the goods, investigate the claim or do whatever may be necessary to properly defend himself or minimize his damages while the facts are fresh in the minds of the parties.'"[37] The Alabama Supreme Court has emphasized "the importance which it places

---

[32] *See Clark v. Allied Healthcare Prods., Inc.*, 601 So.2d 902, 903 (Ala. 1992) ("In order to sustain a cause of action under breach of warranty, plaintiff must prove the existence of such warranty, breach, and proximate causation of damages.").

[33] Ala. Code § 7-2-607(3)(a).

[34] *Parker v. Bell Ford, Inc.*, 425 So. 2d 1101, 1102 (Ala. 1983).

[35] *Id.* at 1103.

[36] *Id.*

[37] *Id.* (quoting *Standard Alliance Indus., Inc. v. Black Clawson Co.*, 587 F.2d 813, 826 (6th Cir. 1978)).

on the policies behind the UCC notice requirement."[38]

The Plaintiffs argue that they satisfied this pre-suit notice requirement in a couple of ways. First, the Plaintiffs contend that they were previously members of putative class in the *Knight* action filed against the Defendant, and that this lawsuit put the Defendant on notice of the potential class of homeowners with complaints concerning the Shingles.[39] The Plaintiffs argue that this, along with years of customer complaints and prior lawsuits, put the Defendant on notice of these breach of warranty claims.[40] However, the Court disagrees. A "general awareness" of alleged defects in a product "does not extinguish the purposes of the notice requirement, nor does it substitute for that requirement under Alabama law."[41] The Defendant's general awareness of the alleged defects in the Shingles due to prior complaints and lawsuits is not enough to satisfy this requirement. The Plaintiffs are required to put the Defendant on notice of their specific complaints concerning the Shingles. Furthermore, the Plaintiffs' previous participation in the *Knight* action does not satisfy the notice requirement because "the filing of a lawsuit is not considered to be sufficient notice

---

[38]     *Hobbs v. Gen. Motors Corp.*, 134 F. Supp. 2d 1277, 1284 (M.D. Ala. 2001).

[39]     Pls.' Br. in Opp'n to Def.'s Mot. for Summ. J., at 4-5.

[40]     *Id.* at 4-5.

[41]     *Smith v. Apple, Inc.*, No. 08-AR-1498-S, 2009 WL 3958096, at *2 (N.D. Ala. Nov. 4, 2009).

under Alabama law."[42] This conclusion comports with the purposes of the notice requirement – the Plaintiffs' participation in this previous class action complaint did not open the way for settlement or minimize the prejudice to the Defendant by allowing it to cure the defect.[43] Instead, they participated in ongoing litigation by attempting to join a putative class action, which contravenes these policies.

The Plaintiffs also argue that they satisfied the notice requirements before filing the Second Amended Complaint by participating in discovery and allowing the Defendant's experts to inspect their roof.[44] However, these actions do not satisfy the notice requirement under Alabama law because they do not serve the purposes behind the requirement. The Plaintiffs were first placed on notice about a potential problem with their roof by a roofer seeking business in 2014. As noted above, the purposes of the notice requirement are instructive in deciding whether a claimant gave proper notice. These actions occurred before the Plaintiffs filed the Second Amended Complaint, but *after* they moved to intervene and replace the Densons as the named plaintiffs. Thus, the Plaintiffs

---

[42] *Hobbs v. Gen. Motors Corp.*, 134 F. Supp. 2d 1277, 1285 (N.D. Ala. 2001).

[43] *See id.* at 1284 ("The court stated that notice serves the purposes of opening the way for settlement, of minimizing prejudice to the seller, and allowing the seller to make adjustments or replacements or to suggest opportunities for cure, to reduce the seller's own liability and minimize the buyer's loss.").

[44] Pls.' Br. in Opp'n to Def.'s Mot. for Summ. J., at 5.

had already formally begun the process of entering this ongoing litigation by the time they provided this purported notice. By moving to intervene, the Plaintiffs acted to become the named plaintiffs in a lawsuit which had already undergone significant litigation. Thus, this purported notice did not serve the purposes behind the notice requirement – allowing the Defendant to cure the alleged defects or settle this dispute so as to avoid or mitigate the costs of litigation. Instead, the Plaintiffs did exactly what the notice requirement attempts to avoid – they began to formally litigate their complaints concerning the Shingles. The Plaintiffs' motion to become the named plaintiffs conflicts with these policies. Therefore, the Court determines that the Plaintiffs did not satisfy the notice requirement for their express warranty claim.

In *Smith v. Apple, Inc.*, the court explained the importance of the notice requirement.[45] There, the plaintiffs alleged that a phone produced by the defendant was defective, and asserted a claim for breach of express warranty.[46] The court dismissed the plaintiffs' claim for breach of express warranty because they failed to provide proper notice.[47] The court noted that "the purposes of the notice requirement would be ill-served in this instance if plaintiffs are excused"

---

[45]     *Smith v. Apple, Inc.*, No. 08-AR-1498-S, 2009 WL 3958096 (N.D. Ala. Nov. 4, 2009).

[46]     *Id.* at *1.

[47]     *Id.* at *1-*2.

from the notice requirement.[48] It explained that "[h]ad Apple received notice from plaintiffs that the particular iPhones bought by them were defective, Apple could have taken a direct route towards fixing the alleged defects or could have reached a settlement with plaintiffs at a time before litigation expenses were incurred. Plaintiffs did not afford Apple statutorily guaranteed opportunities."[49] As in *Smith*, the purpose of the notice requirement would not be served if the Plaintiffs were allowed to proceed with their breach of express warranty claim. The Plaintiffs have failed to prove that they provided the Defendant with any opportunity to cure the alleged defects or settle this dispute before litigation expenses were incurred. Instead, they involved themselves in an ongoing breach of warranty action, which did not provide the Defendant with these "statutorily guaranteed opportunities" to cure or settle. Consequently, the Defendant is entitled to summary judgment as to this claim.

## B. Fraudulent Concealment

Next, the Defendant moves for summary judgment as to the Plaintiffs' claim for fraudulent concealment.[50] To prevail on a fraudulent concealment claim under Alabama law, "a plaintiff must establish (1) that the defendant had a duty to disclose material facts, (2) that the defendant concealed or failed to

---

[48]      *Id.* at *2.

[49]      *Id.*

[50]      Def.'s Mot. for Summ. J., at 16-17.

disclose those facts, and (3) that the concealment or nondisclosure induced the plaintiff to act to his injury."[51] The Defendant first argues that it was under no duty to disclose to the Plaintiffs. "A party's mere silence as to a material fact does not constitute fraud unless that party is under a duty to disclose that fact."[52] "A duty to disclose can arise either from a confidential relationship with the plaintiff or from the particular circumstances of the case."[53] The Plaintiffs do not assert that they had a confidential relationship with the Defendant, therefore a duty to disclose could only arise from the particular facts of this case. In determining whether a duty to disclose arises from the particular circumstances of a case, several factors are relevant, including: "(1) the relationship of the parties; (2) the relative knowledge of the parties; (3) the value of the particular fact; (4) the plaintiff's opportunity to ascertain the fact; (5) the customs of the trade; and (6) other relevant circumstances."[54]

Evaluating these factors, the Court concludes that the Plaintiffs have not presented evidence supporting the imposition of a duty to disclose. In *Keck v. Dryvit Systems, Inc.*, the Alabama Supreme Court concluded that a manufacturer of allegedly defective insulation  had no duty to disclose these alleged

---

[51]     *Altmayer v. City of Daphne*, 613 So. 2d 366, 369 (Ala. 1993).

[52]     *Keck v. Dryvit Sys., Inc.*, 830 So. 2d 1, 11 (Ala. 2002) (citing *State Farm Fire & Cas. Co. v. Owen*, 729 So. 2d 834, 837 (Ala. 1999)).

[53]     *Id.* (citing Ala. Code § 6-5-102).

[54]     *Owen*, 729 So. 2d at 842-43.

defects to the plaintiffs, who were purchasers of a home containing this insulation.[55] The court there noted that the manufacturer "had no contractual relationship with the Kecks, no knowledge that the Kecks owned a house clad with the EIFS, and no contact with the Kecks prior to this lawsuit."[56] Therefore, due to the "absence of any relationship" between the manufacturer and the plaintiffs, the court concluded as a matter of law that the manufacturer owed no duty of disclosure to the plaintiffs.[57]

Similarly, the Plaintiffs here also do not have the type of relationship with the Defendant necessary to impose a duty of disclosure on the Defendant. It is undisputed that the Plaintiffs did not directly purchase the Shingles from the Defendant, never had any direct contact or communication with the Defendant prior to this litigation, and never paid any money directly to the Defendant.[58] As in *Keck*, the Plaintiffs and the Defendant had no contractual relationship and no contact with each other prior to this lawsuit – they essentially had no relationship at all. Therefore, as the Alabama Supreme Court explained in *Keck,* it would be unreasonable to impose a duty to disclose upon

---

[55]     *Keck*, 830 So. 2d at 3, 10-11.

[56]     *Id.* at 11.

[57]     *Id.*

[58]     Def.'s Statement of Material Facts ¶¶ 4, 6, 8.

the Defendant in such a situation.[59] For this reason, the Court finds that the

Defendant did not owe a duty of disclosure to the Plaintiffs, and the Plaintiffs'

claim for fraudulent concealment fails as a matter of law.[60]

## C. Unjust Enrichment

Next, the Defendant moves for summary judgment as to the Plaintiffs'

unjust enrichment claim. "To prevail on a claim of unjust enrichment under

---

[59]    In *Keck*, the Alabama Supreme Court highlighted the fact that the plaintiffs were not the original purchasers of the home, and emphasized that allowing the plaintiffs' claim to proceed "would impose an endless duty upon the manufacturers and sellers of construction materials to disclose alleged defects in materials to every purchaser of a used house, no matter how far removed those purchasers were from the original purchaser and hence from the manufacturer and seller." *Keck*, 830 So. 2d at 11. Although this reasoning does not square entirely with the facts of this case, since the Plaintiffs were the first owners of their home, the court's logic still applies here. Imposing a duty to disclose in the absence of any prior contacts or relationship would impose an unreasonable burden on manufacturers such as the Defendant.

[60]    The Defendant also contends that the Plaintiffs' election to pursue a claim under the ADTPA bars them from asserting a common law claim for fraudulent concealment. Def.'s Mot. for Summ. J., at 17. Ala. Code § 8-19-15 provides that "[a]n election to pursue the civil remedies prescribed in this chapter shall exclude and be a surrender of all other rights and remedies available at common law, by statute or otherwise, for fraud, misrepresentation, deceit, suppression of material facts or fraudulent concealment arising out of any act, occurrence or transaction actionable under this chapter." Ala. Code § 8-19-15(a). "There is a split of authority on the question of whether a plaintiff can plead claims under both the ADTPA and common law—that is, on whether a plaintiff must make her "election" under the savings clause at the pleading stage or may wait." *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 405 (S.D.N.Y. 2017) (comparing cases interpreting this provision). However, since the Plaintiffs have failed to establish that the Defendant owed a duty to disclose, the Court finds it unnecessary to determine whether an election to pursue a claim under the ADTPA bars a common law claim for fraudulent concealment.

Alabama law, a plaintiff must show that: (1) the defendant knowingly accepted and retained a benefit, (2) provided by another, (3) who has a reasonable expectation of compensation."[61] "The doctrine of unjust enrichment is an old equitable remedy permitting the court in equity and good conscience to disallow one to be unjustly enriched at the expense of another."[62]

> The retention of a benefit is unjust if (1) the donor of the benefit . . . acted under a mistake of fact or in misreliance on a right or duty, or (2) the recipient of the benefit . . . engaged in some unconscionable conduct, such as fraud, coercion, or abuse of a confidential relationship. In the absence of mistake or misreliance by the donor or wrongful conduct by the recipient, the recipient may have been enriched, but he is not deemed to have been unjustly enriched.[63]

"The success or failure of an unjust-enrichment claim depends on the particular facts and circumstances of each case."[64]

The Defendant argues that this claim fails because there is no evidence that the Defendant was enriched by the Plaintiffs.[65] The Defendant contends that the Plaintiffs never purchased anything from the Defendant, the Defendant never received money from the Plaintiffs, and the Plaintiffs never conferred a

---

[61] *Portofino Seaport Village, LLC v. Welch*, 4 So. 3d 1095, 1098 (Ala. 2008).

[62] *Battles v. Atchison*, 545 So. 2d 814, 815 (Ala. Civ. App. 1989).

[63] *Presley v. B.I.C. Const., Inc.*, 64 So. 3d 610, 625 (Ala. Civ. App. 2009) (internal quotations omitted).

[64] *Id.*

[65] Def.'s Mot. for Summ. J., at 11.

direct benefit upon the Defendant.[66] The Plaintiffs respond that direct contact between a manufacturer and consumer is not necessary to assert an unjust enrichment claim.[67]

The Court concludes that the Plaintiffs' claim for unjust enrichment fails as a matter of law. The first requirement of an unjust enrichment claim is that "one party must have conferred a benefit on another."[68] This benefit "must be realized as a direct result of the transaction."[69] Otherwise, the link between the parties "is too tenuous to support the remedy of restitution in quasi-contract."[70] Here, the Plaintiffs did not confer a benefit upon the Defendant. In fact, it is undisputed that the Plaintiffs never entered into a contractual relationship with the Defendant, never paid the Defendant, and never had any form of contact or communication with the Defendant. Thus, there is no transaction with the Plaintiffs from which the Defendant directly benefitted. At most, there is a tenuous connection between the Plaintiffs and the Defendant, which is not enough to support a claim for unjust enrichment.

Furthermore, "[t]o prevail on a claim of unjust enrichment, the plaintiff

---

[66]     *Id.* at 12.

[67]     Pls.' Br. in Opp'n to Def.'s Mot. for Summ. J., at 19.

[68]     *Portofino Seaport Village, LLC v. Welch*, 4 So. 3d 1095, 1098 (Ala. 2008).

[69]     *Opelika Prod. Credit Ass'n, Inc. v. Lamb*, 361 So. 2d 95, 99 (Ala. 1978).

[70]     *Id.*

must show that the defendant holds money which, in equity and good conscience, belongs to the plaintiff or holds money which was improperly paid to defendant because of mistake or fraud."[71] The Plaintiffs must show that the Defendant "actually received or holds the money, that is, has been enriched."[72] "A defendant cannot be unjustly enriched if it does not have in its possession any money belonging to the plaintiff."[73] The Plaintiffs concede that they never paid money directly to the Defendant. Therefore, the Defendant has not been enriched by the Plaintiffs because it does not hold the Plaintiffs' money.[74] Consequently, the Plaintiffs' claim for unjust enrichment fails as a matter of law.

### D. Alabama Deceptive Trade Practices Act

Next, the Defendant moves for summary judgment as to the Plaintiffs' claim under the Alabama Deceptive Trade Practices Act ("ADTPA"). The Plaintiffs allege that the Defendant violated four subsections of the ADTPA: "(5)

---

[71] *Scrushy v. Tucker*, 955 So. 2d 988, 1011 (Ala. 2006) (emphasis and internal quotations omitted).

[72] *See RREF RB-AL SLDL, LLC v. Saxon Land Dev.*, 968 F. Supp. 2d 1133, 1141 (M.D. Ala. 2013).

[73] *Id.*

[74] *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 409 (S.D.N.Y. 2017) (explaining that under Alabama law "[a] defendant cannot be unjustly enriched if it does not have in its possession any money belonging to the plaintiff" and concluding that this "requirement is fatal to [the plaintiff's] claim" because "she purchased her vehicle used from Southtown Motors, a non–GM dealership" and GM consequently never held any money belonging to the plaintiff).

Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have"; "(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another"; "(9) Advertising goods or services with intent not to sell them as advertised"; "(27) Engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce."[75] In order for a plaintiff to recover under the ADTPA, he or she must prove that (1) he or she is a "consumer,"[76] (2) made a pre-suit demand,[77] and (3) suffered monetary damages as a result of the Defendant's violation of the ADTPA.[78]

The Defendant argues that the Plaintiffs failed to make a pre-suit written demand upon the Defendant as the ADTPA requires.[79] Ala. Code § 8-19-10(e) provides that "[a]t least 15 days prior to the filing of any action under this section, a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be communicated to any prospective respondent by placing in the

---

[75]     Second Am. Compl. ¶¶ 150-53; Ala. Code § 8-19-5.

[76]     *Id.* § 8-19-3(2) (defining consumer as "any natural person who buys goods or services for personal, family, or household use").

[77]     *Id.* § 8-19-10(e).

[78]     *Id.* § 8-19-10(a).

[79]     Def.'s Mot. for Summ. J., at 14.

United States mail or otherwise."[80] The Plaintiffs respond that they provided the Defendant with sufficient notice by sending an email to the Defendant's counsel containing a draft copy of their Second Amended Complaint.[81]

The Court finds that the Plaintiffs satisfied this pre-suit notice requirement. Section 8-19-10(e) states that a plaintiff must provide this written demand 15 days prior to filing an action under the ADTPA. As already discussed, the procedural history of this lawsuit makes this somewhat murky. On November 12, 2015, the Plaintiffs moved to intervene in this action and substitute the Densons as named plaintiffs. Then, on December 21, 2015, the Plaintiffs' counsel sent an email to the Defendant's counsel with a copy of the Plaintiffs' Second Amended Complaint, which included a claim under the ADTPA for the first time in this lawsuit.[82] Then, 16 days later, on January 6, 2016, the Plaintiffs filed their Second Amended Complaint.[83]

This email satisfied the pre-suit notice requirement under Section 8-19-

---

[80]     Ala. Code § 8-19-10(e); *see also Holmes v. Behr Process Corp.*, No. 2:15-CV-0454-WMA, 2015 WL 7252662, at *2 n.2 (noting that this pre-suit demand "is a condition precedent to filing a suit under the ADTPA").

[81]     Pls.' Br. in Opp'n to Def.'s Mot. for Summ. J., at 21-22.

[82]     Bryson Decl. ¶ 7. The Defendant disputes whether this evidence actually "address[es] or refute[s] the factual basis" of its Motion for Summary Judgment, and also argues that this email does not satisfy the pre-suit notice requirement under the ADTPA. Def.'s Responses and Objections to Pls.' Statement of Additional Material Facts ¶ 29. However, the Defendant does not dispute that the Plaintiffs' counsel sent this email on December 21, 2015. Thus, the Court determines there is no dispute as to this factual assertion.

[83]     Bryson Decl. ¶ 8.

10(e). The draft copy of the Second Amended Complaint identified the claimants, the Plaintiffs, and identified the unfair or deceptive act or practice relied upon and the injury suffered, as Section 8-19-10(e) requires. In contrast to the insufficient notice provided as to the express warranty claim, the Plaintiffs' notice as to their ADTPA claim is sufficient because no claim under the ADTPA had yet been filed against the Defendant until the Plaintiffs filed their Second Amended Complaint on January 6, 2016. Section 8-19-10(e) only requires notice "15 days prior to the filing of any action under this section."[84] The Plaintiffs did not file a claim under the ADTPA until they filed their Second Amended Complaint. Thus, when they provided this notice to the Defendant's counsel, they had not filed an action under the ADTPA, as the statute specifies. Therefore, since this notice complies with the statute, the Defendant is not entitled to summary judgment as to the Plaintiffs' claim under the ADTPA.

### E. Declaratory Relief

Next, the Defendant moves for summary judgment as to the Plaintiffs' request for declaratory relief. The Defendant argues that the Plaintiffs lack standing to seek declaratory relief, and that declaratory relief would violate the Defendant's Seventh Amendment right to a jury trial.[85] The Plaintiffs provide no response. Nonetheless, Federal Rule of Civil Procedure 56(e) states that

---

[84]     Ala. Code § 8-19-10(e).

[85]     Def.'s Mot. for Summ. J., at 19-22.

where the adverse party does not respond, summary judgment may be granted if "the movant is entitled to it[.]"[86] The Eleventh Circuit has made clear that summary judgment is only appropriate where the evidence shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[87] This means that "[a]t the least, the district court must review all of the evidentiary materials submitted in support of the motion for summary judgment . . . [and] . . . the district court's order granting summary judgment must indicate that the merits of the motion were addressed."[88] Therefore, the Court must still review the merits of the Defendant's motion for summary judgment as to this claim.

The Defendant first argues that the Plaintiffs lack standing because the requested declarations will not redress their injury.[89] To satisfy the constitutional case-or-controversy requirement, a plaintiff must allege personal injury "that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision."[90] The Plaintiffs may establish redressability if they show that the "practical consequence" of the declaratory

---

[86]    FED. R. CIV. P. 56(e) (emphasis added).

[87]    *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004).

[88]    *Id.* at 1101-02 (quotations and citations omitted).

[89]    Def.'s Mot. for Summ. J., at 19-20.

[90]    *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014).

relief "would amount to a significant increase in the likelihood that the [Plaintiffs] would obtain relief that directly redresses the injury suffered."[91] Here, the requested declarations – e.g., that the Shingles are defective – would make it more likely that the Plaintiffs would obtain the necessary relief from the Defendant because it would establish an essential component to liability. And although the Plaintiffs' remaining claims may provide more direct relief, the Declaratory Judgment Act allows plaintiffs to seek a declaration of rights "whether or not further relief is or could be sought."[92] Therefore, the Plaintiffs do not lack standing as to their request for declaratory relief.

The Defendant also argues that the Plaintiffs' declaratory judgment claim must be dismissed because it abridges the Defendant's right to a jury trial under the Seventh Amendment.[93] But as the Eighth Circuit Court of Appeals has explained, "[a] litigant is not necessarily deprived of a jury trial merely because it is a party to a declaratory judgment action . . . if there would have been a right to a jury trial on the issue had it arisen in an action other than one for declaratory judgment, then there is a right to a jury trial in the declaratory judgment action."[94] Since this action is essentially legal in nature, the Defendant

---

[91]     *Utah v. Evans*, 536 U.S. 452, 464 (2002).

[92]     28 U.S.C. § 2201.

[93]     Def.'s Mot. for Summ. J., at 20-21.

[94]     *Northgate Homes, Inc. v. City of Dayton*, 126 F.3d 1095, 1098-99 (8th Cir. 1997); *see also Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 504 (1959) ("[T]he Declaratory Judgment Act . . . specifically preserves the right to

is still entitled to a trial by jury. Therefore, the Plaintiffs' claim for a declaratory judgment does not violate the Seventh Amendment.

### F. Punitive Damages and Attorneys' Fees

Finally, the Defendant moves for summary judgment as to the Plaintiffs' request for punitive damages and attorneys' fees. First, the Defendant argues that there is no basis for a punitive damages award because the Plaintiffs only request punitive damages under their fraudulent concealment claim and Alabama Extended Manufacturer's Liability Doctrine claim, and those claims both fail as a matter of law.[95] However, the Plaintiffs also request punitive damages as to the ADTPA claim, which does not fail as a matter of law. Therefore, since that claim still survives, the Plaintiffs' request for punitive damages also survives as to that claim.

The Defendant is, however, entitled to summary judgment as to the Plaintiffs' request for attorneys' fees. "In Alabama, in state law causes of action, attorney fees are recoverable as part of the costs of an action only where authorized by statute, when provided in a contract, or by special equity, such as

---

jury trial for both parties."); *Simler v. Conner*, 372 U.S. 221, 223 (1963) ("The fact that the action is in form a declaratory judgment case should not obscure the essentially legal nature of the action. The questions involved are traditional common-law issues which can be and should have been submitted to a jury under appropriate instructions as petitioner requested . . . [and] the courts below erred in denying petitioner the jury trial guaranteed him by the Seventh Amendment.").

[95]     Def.'s Mot. for Summ. J., at 18.

a proceeding where the efforts of an attorney create a fund out of which fees may be paid."[96] The Plaintiffs have provided no viable statutory or contractual basis for an award of attorneys' fees, and the Court can discern no basis from the record for awarding attorneys' fees other than the Plaintiffs' conclusory request in the Second Amended Complaint.[97] Therefore, the Defendant is entitled to summary judgment as to the Plaintiffs' request for attorneys' fees.

## IV. Conclusion

For the reasons stated above, the Defendant's Motion for Summary Judgment [Doc. 50] is GRANTED in part and DENIED in part.

SO ORDERED, this 8 day of June, 2018.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge

---

[96]    *Subway Restaurants, Inc. v. Madison Square Assocs., Ltd. By CBL Wyo., Inc.*, 613 So. 2d 1255, 1257 (Ala. 1993); *see also Sherman Int'l Corp. v. Greater Mt. Olive Baptist Church No. 2*, 678 So. 2d 156, 157 (Ala. Civ. App. 1996) ("It is well settled that there must be a statutory or contractual basis for awarding attorney fees.").

[97]    *Middlegate Dev., LLP v. Beede*, No. 10-0565-WS-C, 2011 WL 3475474, at *9 (S.D. Ala. Aug. 9, 2011) (rejecting request for attorneys' fees because the plaintiffs' "conclusory request for a fee award appears untethered to any term of the agreement or provision of law.").