IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE ATLAS ROOFING CORPORATION CHALET SHINGLE PRODUCTS LIABILITY LITIGATION | MDL DOCKET NO. 2495 1:13-md-2495-TWT |
| BRYAN MAKOWSKI on behalf of himself and all others similarly situated, | |
| Plaintiff, | |
| v. | CIVIL ACTION FILE NO. 1:14-CV-3034-TWT |
| ATLAS ROOFING CORPORATION doing business as Meridian Roofing Company, | |
| Defendant. | |

## OPINION AND ORDER

This action arises out of the marketing and sale of allegedly defective roofing shingles. It is before the Court on the Defendant's Motion for Summary Judgment [Doc. 43]. For the reasons set forth below, the Defendant's Motion for Summary Judgment [Doc. 43] is GRANTED.

## I. Background

The Plaintiff Bryan Makowski is the owner of a home containing Atlas Shingles (the "Shingles").[1] The Defendant Atlas Roofing Corporation designed,

---

[1]    It should be noted that – for purposes of this lawsuit – Chalet/Stratford Shingles are indistinguishable. *See* Primary Mot. for Class

manufactured, and sold the Shingles.[2] The Defendant developed the Shingles in the 1990s as a line of "overlay" products intended to provide an affordable shingle with the look of the more expensive architectural shingles.[3] In 2010, the Defendant discontinued sales of the Shingles.[4] The Plaintiff alleges that the Shingles are defective in design, and filed this action seeking to represent a class of homeowners who own homes with the Shingles.

In July 2011, the Plaintiff purchased a house in Florence, Kentucky.[5] The Shingles were installed on the roof during the construction of the house in 2004.[6] The Defendant provided a Limited Shingle Warranty (the "Limited Warranty") to the original owner.[7] This Limited Warranty, which constituted the owner's "sole and exclusive remedy," allowed the owner to transfer the Limited Warranty to a second owner under certain conditions.[8] To transfer the warranty, the second owner must notify the Defendant in writing within 30 days of the

---

Cert. [Doc. 57], Ex. Tab 14, Thomas Dep., at 35 under No. 13-cv-02195-TWT. The differences between the two Shingles relate to aesthetics, not design. *Id.*

[2] Pl.'s Statement of Additional Material Facts ¶¶ 1-2.

[3] *Id.* ¶ 2.

[4] *Id.* ¶ 21.

[5] Pl.'s Statement of Additional Material Facts ¶ 10.

[6] *Id.*; Def.'s Statement of Material Facts ¶ 1.

[7] Def.'s Mot. for Summ. J., Ex. E.

[8] *Id.*

purchase of the home.[9] The Limited Warranty also limited the transfer of the warranty to only the second owner, prohibiting the transfer to any subsequent owners after the second owner.[10] The Plaintiff is the second owner of the house.[11] He did not purchase the Shingles directly from the Defendant.[12] The Plaintiff had never heard of the Defendant before purchasing his home, had never seen any of the Defendant's advertisements or promotional materials, and never communicated with the Defendant in any way.[13] Prior to purchasing his home, the Plaintiff had not seen any warranty materials produced by the Defendant or any other roofing manufacturer.[14] When the Plaintiff purchased his home, he did not provide the Defendant with notice of this purchase or request transfer of the Limited Warranty.[15]

On March 23, 2012, the Plaintiff came home to discover a leak had occurred during a storm, finding wet carpets, a bowed ceiling, and water dripping from the roof.[16] As his roof was being repaired, the Plaintiff initiated

---

[9]     *Id.*

[10]    *Id.*

[11]    Def.'s Statement of Material Facts ¶ 2.

[12]    *Id.* ¶ 6.

[13]    *Id.* ¶ 8.

[14]    Makowski Dep. at 43.

[15]    Def.'s Statement of Material Facts ¶ 9.

[16]    Pl.'s Statement of Additional Material Facts ¶ 23.

a warranty claim with the Defendant, based upon the Limited Warranty.[17] These warranty communications constituted the only communications or contact that the Plaintiff had with the Defendant.[18] The Defendant denied the warranty claim on May 29, 2012.[19]

On August 28, 2014, the Plaintiff filed the Class Action Complaint in the U.S. District Court for the Eastern District of Kentucky. Prior to filing his Complaint, the Plaintiff received a letter from a law firm, that ultimately became the Plaintiff's counsel in this case.[20] On September 22, 2014, the Judicial Panel on Multidistrict Litigation transferred this action to be consolidated with the multidistrict litigation pending before this Court.[21] After this Court granted part of the Defendant's Motion to Dismiss, the Plaintiff's remaining claims are for negligence (Count I), negligent misrepresentation (Count II), strict products liability (Count III), breach of express warranty (Count IV), breach of implied warranty (Count V), violation of the Kentucky Consumer Protection Act (Count VI), fraudulent misrepresentation (Count VII), and fraudulent concealment

---

[17]     Def.'s Statement of Material Facts ¶¶ 14-15.

[18]     *Id.* ¶ 16.

[19]     *Id.* ¶ 19.

[20]     Makowski Dep. at 235-36.

[21]     *See* Transfer Order [Doc. 9] under No. 1:14-cv-003034-TWT.

(Count VIII). The Defendant now moves for summary judgment as to each of these claims.[22]

## II. Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.[23] The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant.[24] The party seeking summary judgment must first identify grounds to show the absence of a genuine issue of material fact.[25] The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists.[26] "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party."[27]

---

[22] The Plaintiff "does not oppose Atlas's motion for summary judgment as to his implied warranty and Kentucky Consumer Protection Act claims." Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 2 n.1. Therefore, the Court deems these claims to be abandoned.

[23] Fed. R. Civ. P. 56(a).

[24] *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970).

[25] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

[26] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

[27] *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

# III. Discussion

## A. Negligence and Strict Products Liability

The Defendant first moves for summary judgment as to the Plaintiff's negligence and strict products liability claims. The Defendant argues that the Plaintiff cannot recover under Kentucky tort law for the future failure of the Shingles. Specifically, the Defendant claims that the Plaintiff cannot show that the Shingles have caused any injury to either his person or property, and that the Plaintiff cannot recover for the possible future failure of the Shingles.[28] The Plaintiff argues in response that the Shingles have already failed, and thus he is not attempting to recover for future failure. The Court agrees that the Defendant is entitled to summary judgment as to these claims.

First, the Plaintiff has failed to provide evidence that the Shingles caused a leak or any other type of external injury to the Plaintiff's person or property. The Plaintiff argues that he "first learned of the possibility that the Shingles were defective through a massive roof leak" and that "[w]hile Atlas may dispute that the Shingles caused the leak, such a dispute is factual in nature and should be directed to the jury."[29] However, the Plaintiff confuses the burden of proof. The Plaintiff bears the burden of producing evidence showing that defects in the

---

[28]    Def.'s Mot. for Summ. J., at 4-5.

[29]    Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 13 n.6.

Shingles caused the roof leak in March 2012.[30] He has failed to do so. The Plaintiff's expert, Dean Rutila, admits that he was unable to show that any of the alleged defects in the Shingles, including blisters, cracks, and loss of granule surfacing, resulted in a leak in any of the roofs he studied.[31] Instead, Rutila stated that he believed that the Shingles "will leak" in the future.[32] The Plaintiff has provided no other evidence in support of this proposition. No reasonable jury could conclude that the Shingles caused the Plaintiff's roof leak, or any other type of injury, given this lack of evidence.[33] Therefore, the Defendant is entitled to summary judgment as to whether the Shingles caused this leak.[34]

---

[30] *Morales v. Am. Honda Motor Co.*, 151 F.3d 500, 507 (6th Cir. 1998) ("Under Kentucky law, a plaintiff has the burden of establishing causation in claims of strict liability, as well as in claims of negligence and breach of implied warranty.").

[31] Rutila Dep. at 84-85, 124, 167.

[32] *Id.* at 84-85.

[33] The Plaintiff insists that the Court cannot weigh the Defendant's expert opinion over the Plaintiff's expert opinion. *See* Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 14. While that is true, the Court must determine whether there is actually a factual dispute for a jury to weigh at all. Here, there is no factual dispute as to whether the Shingles caused the Plaintiff's roof leak. The Plaintiff's expert admits that he cannot establish this link, and the Plaintiff provides no other evidence. Thus, the Court is not improperly weighing one expert opinion over another.

[34] *Capital Holding Corp. v. Bailey*, 873 S.W.2d 187, 192 (Ky. 1994) ("A cause of action does not exist until the conduct causes injury that produces loss or damage."); *Rockwell Int'l Corp. v. Wilhite*, 143 S.W.3d 604, 623 (Ky. Ct. App. 2003) (rejecting landowner's negligence claim based upon exposure of land to toxic substances because "although the land has been exposed to a substance, PCBs, no present injury to the land has been shown").

The Plaintiff responds that he is not seeking recovery for future failure because the Shingles have already failed. The Plaintiff claims that the Shingles have already failed because they have shown blisters, loss of surfacing, and cracking.[35] However, this essentially is an argument for economic loss, which Kentucky law does not allow recovery for under tort law. The Plaintiff is arguing that the Shingles are defective because they have injured themselves by blistering and cracking, and not that they have failed and caused some type of external injury, such as damage to the house through a leak. "[A] manufacturer in a commercial relationship has no duty under either a negligence or strict products-liability theory to prevent a product from injuring itself."[36] "This rule recognizes that economic losses, in essence, deprive the purchaser of the benefit of his bargain and that such losses are best addressed by the parties' contract and relevant provisions of Article 2 of the Uniform Commercial Code."[37] "The economic loss rule prevents a commercial purchaser of a product from suing in tort to recover for economic losses arising from the malfunction of the product itself, limiting the recovery of such damages, if at all, to contract law. In other

---

[35]      Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 13-14.

[36]      *Giddings & Lewis, Inc. v. Indus. Risk Insurers*, 348 S.W. 3d 729, 738 (Ky. 2011) (quoting *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 871 (1986)).

[37]      *Id.*

words, the rule prohibits purchasers of products from recovering purely economic damages under most tort theories."[38]

The Plaintiff claims that the Shingles have failed because they have blistered, cracked, and shown loss of surfacing. This is a request for purely economic damages – the injury is the blisters and cracks in the Shingles themselves. The Plaintiff has not shown that the blisters, cracks, and surface losses have caused any other type of injury to his property, which would be recoverable under Kentucky tort law. Therefore, the Defendant is entitled to summary judgment.

## B. Express Warranty

Next, the Defendant moves for summary judgment as to the Plaintiff's claim for breach of express warranty. The Defendant argues that the Limited Warranty did not extend to the Plaintiff, and the Plaintiff relied upon no other express warranty made by the Defendant. The Defendant argues that the Limited Warranty only extends to second owners who provide the Defendant with notice within 30 days of purchasing the home, which the Plaintiff failed to do. The Plaintiff, conceding that he did not rely upon any other express warranties, responds that he has asserted a viable claim under the Limited

---

[38] *Cincinnati Ins. Cos. v. Staggs & Fisher Consulting Eng'rs, Inc.*, 2013 WL 1003543, at *2 (Ky. Ct. App. Mar. 15, 2013); *see also Giddings*, 348 S.W. 3d at 738 ("[T]he parties' allocation of risk by contract should control without disturbance by the courts via product liability theories borne of a public policy interest in protecting people and their property from a dangerous product.").

Warranty. The Plaintiff argues that the Defendant waived its warranty transfer requirement in the Limited Warranty, that the Limited Warranty extends to third party beneficiaries, and that the transfer limitation under the Limited Warranty is unconscionable.

First, the Plaintiff argues that the Defendant waived the warranty transfer requirement in the Limited Warranty.[39] A waiver is "a voluntary and intentional surrender or relinquishment of a known right, or an election to forego an advantage which the party at his option might have demanded or insisted upon."[40] "A waiver may be either express or implied, although waiver will not be inferred lightly."[41] Because the Defendant did not expressly waive this right, the issue here is whether it implicitly waived this contractual right. The Plaintiff argues that the Defendant waived the transfer limitation in the Limited Warranty in two ways: first, by telling the Plaintiff that the warranty was valid during their warranty claim communications, and second, by failing to assert it earlier in this litigation. However, both of these arguments are unpersuasive.

As to the first argument, the Plaintiff contends that the Defendant waived its right to enforce the transfer limitation through its communications

---

[39]     Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 5.

[40]     *Weis Builders, Inc. v. Complete Contracting, Inc.*, 247 S.W.3d 542, 545 (Ky. Ct. App. 2008).

[41]     *Id.*

with the Plaintiff while processing his warranty claim. On May 29, 2012, the Defendant denied the Plaintiff's claim under the Limited Warranty. In a letter sent to the Plaintiff denying his claim, the Defendant explained that "the sample shingles were tested and were found to meet manufacturing specifications" and that "[s]urface cracking on the overlay pad is not classified as a manufacturing defect."[42] The Defendant further stated that "the product warranty for manufacturing defects, which would reduce the usable life of the product, remains valid" and told the Plaintiff to "[a]lso be assured that the warranty and this agreement will transfer to a subsequent owner."[43]

However, these statements cannot be construed as a voluntary and intentional surrender of the Defendant's right to enforce the transfer limitation. "[S]omething more than a mere inference of intent [to waive] is required."[44] This conduct, even if arguably inconsistent with enforcement of the transfer limitation, is "something less than an unequivocal declaration of its intent to waive a contractual right."[45] The Defendant's choice to deny the warranty claim for one reason (that the Shingles are not defective) does not necessarily mean that it is forfeiting the right to assert that the warranty claim fails for another reason (that the Limited Warranty does not extend to the Plaintiff). Further-

---

[42]   Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., Ex. KK at 1.

[43]   *Id.*

[44]   *Weis Builders*, 247 S.W.3d at 545.

[45]   *Id.*

more, the Defendant mentions in the letter that the Plaintiff can still transfer the warranty to a second owner. This shows that the Defendant did not realize that the Plaintiff himself is the second owner. Thus, the Defendant did not intentionally waive the transfer limitation, since it did not know that the limitation even applied in this situation. Since a "waiver will not be inferred lightly," the Court concludes that the Defendant did not waive its right to enforce this provision of the Limited Warranty. The Plaintiff has offered nothing more than a mere inference that the Defendant intended to waive this contractual right, which is insufficient to support such an argument.

As to the second argument for waiver, the Plaintiff contends that the Defendant waived this warranty transfer limitation by failing to assert it earlier in this litigation.[46] However, this argument also fails. The Plaintiff relies upon *American General Home Equity, Inc. v. Kestel* for this proposition. There, the court addressed whether a party had waived the right to compel arbitration by participating in litigation before moving to compel arbitration.[47] However, *Kestel* does not support this conclusion. In *Kestel*, the court rejected the litigation-conduct waiver argument, explaining that "[w]hile American General's litigation conduct does not demonstrate a prompt and decisive invocation of arbitration rights, its conduct is not clearly inconsistent with an intent to seek arbitration"

---

[46]     Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 8.

[47]     *Am. Gen. Home Equity, Inc. v. Kestel*, 253 S.W.3d 543, 553 (Ky. 2008).

and that "the key inquiry of whether the litigation conduct at issue was so inconsistent with asserting arbitration rights that a waiver of such rights should be implied."[48] Similarly, the Defendant has not taken any stance in this litigation that is clearly inconsistent with the warranty transfer limitation argument. In fact, the Defendant has asserted this argument from the beginning of this litigation. In its answer to the Complaint, the Defendant asserted that the "Plaintiff's warranty claims are barred and/or limited by the express terms of the Atlas Limited Warranty."[49] Therefore, the Defendant has not waived the transfer limitation provision in the Limited Warranty.

Second, the Plaintiff argues that the Atlas Limited Warranty extends to him as a third-party beneficiary.[50] Under Kentucky law, "a third party for whose benefit a contract is made may maintain an action thereon."[51] However, not every third party who benefits from a contract has standing to sue under that contract.[52] "Only a third-party who was intended by the parties to benefit from the contract, namely, a donee or a creditor beneficiary, has standing to sue on

---

[48]     *Id.*

[49]     Answer to Plaintiff's Class Action Complaint, at 9 [Doc. 20].

[50]     Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 9.

[51]     *Ball v. Cecil*, 148 S.W.2d 273, 274 (Ky. Ct. App. 1941).

[52]     *Presnell Constr. Managers, Inc. v. EH Constr., LLC*, 134 S.W.3d 575, 579 (Ky. 2004).

a contract; an incidental beneficiary does not acquire such right."[53] "[T]he mere fact that [a third party] will be incidently benefited by the performance of the contract is not sufficient to entitle him to enforce it."[54] Instead, the contract in question must have been made for the "actual and direct benefit" of the third party.[55]

Even if the Plaintiff were a third party beneficiary, however, it would not matter because the Plaintiff failed to comply with the terms of the Limited Warranty by not following the requirements of the transfer limitation provision. The Defendant and the original homeowner, the parties to the Limited Warranty agreement, only intended for the warranty to cover a subsequent owner who put the Defendant on notice of a purchase of the house within 30 days. Since the Plaintiff did not do so, the original parties did not intend for the Limited Warranty to cover him. By failing to comply with these terms, the Limited Warranty did not transfer to him, and he cannot seek relief under the terms of the warranty, even if he is a third-party beneficiary.

Finally, the Plaintiff argues that the transfer requirement in the Limited Warranty is unconscionable. Under Kentucky law,

> [i]f the court as a matter of law finds the contract or any clause of
> the contract to have been unconscionable at the time it was made

---

[53]  *Id.*

[54]  *Ball*, 148 S.W.2d at 274.

[55]  *Sexton v. Taylor Cty.*, 692 S.W.2d 808, 810 (Ky. Ct. App. 1985).

the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.[56]

"A provision is unconscionable when it is 'so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract.'"[57]

"An unconscionable contract is a contract 'which no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept, on the other.'"[58] "The doctrine of unconscionability is only used in rare instances, such as when a party abuses its right to contract freely."[59] "The principle underlying this rule is to prevent oppression and unfair surprise, not to disturb the allocation of risks because of superior bargaining power."[60]

The Plaintiff argues that this provision is unconscionable because it "oppressively squeeze subsequent owners into filing documentation they don't have within an extremely tight window of time" such that the subsequent owners are "unfairly surprised."[61] However, the transfer limitation provision in

---

[56]    KY. REV. STAT. ANN. § 355.2-302.

[57]    *Gooch v. E.I. Du Pont de Nemours & Co.*, 40 F. Supp. 2d 863, 871 (W.D. Ky. 1999) (quoting U.C.C. § 2-302 cmt. 1).

[58]    *Forsythe v. BancBoston Mortg. Corp.*, 135 F.3d 1069, 1074 (6th Cir. 1997) (quoting *Louisville Bear Safety Serv., Inc. v. S. Cent. Bell Tel. Co.*, 571 S.W.2d 438, 439 (Ky. Ct. App. 1978)).

[59]    *Id.*

[60]    *Gooch*, 40 F. Supp. 2d at 871.

[61]    Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 12.

the Limited Warranty does not rise anywhere near the level of unconscionability. Courts have regularly upheld warranty provisions limiting to whom the warranties apply and to whom the warranties can be transferred.[62] The provision in this warranty, which creates conditions and deadlines for transferring the warranty, is no different. Even if applied harshly to the Plaintiff in this case, the transfer limitation is not so one-sided and so oppressive that no fair or honest man would accept it. This is not one of those "rare instances" where a party has abused the right to contract so egregiously that the contract is unconscionable. Thus, the Court concludes that the transfer limitation is not unconscionable. Since the Limited Warranty did not transfer to the Plaintiff, and since the Plaintiff did not rely on any other express warranties made by the Defendant,[63] his claim for breach of express warranty fails.

### C. Negligent Misrepresentation

Next, the Defendant moves for summary judgment as to the Plaintiff's negligent misrepresentation claim. In Kentucky, to prevail on a negligent misrepresentation claim, a plaintiff must prove that:

(1) the transaction at issue is one in which the defendant had a pecuniary interest; (2) the defendant supplied false information; (3)

---

[62]    *See, e.g.*, *McMahon v. Advance Stores Co.*, 705 S.E.2d 131, 137 (W. Va. 2010) (upholding warranty provision limiting warranty to original purchaser).

[63]    Def.'s Mot. for Summ. J., at 12.

the information was supplied for others' guidance in their business transactions; (4) the defendant failed to exercise reasonable care in communicating the information; (5) the plaintiff acted in reliance thereon; (6) the false information caused injury.[64]

The Defendant argues that the Plaintiff's negligent misrepresentation claim fails as a matter of law because the Defendant made no pre-purchase representations that the Plaintiff could have relied upon.[65] The Plaintiff concedes that he had no pre-purchase contact or communication with the Defendant. Instead, the Plaintiff argues that he relied upon the Defendant's statement that the Shingles did not have a manufacturing defect in the letter denying the Plaintiff's warranty claim.

However, this argument fails because the Plaintiff cannot show that he relied upon this statement. The Plaintiff, with regard to the warranty denial letter, stated that he did not believe the explanation in the letter "for one second," that it was something that he did not agree with and did not find credible, and that the Defendant's statement lacked credibility "without a doubt."[66] He explained that he "definitely" found the Defendant's assertion in the letter that the Shingles met manufacturing specifications to be "false."[67] He

---

[64]     *Great Am. Ins. Co. v. Poynter*, No. 1:10-cv-00161-JHM, 2013 WL 1181445, at *7 (W.D. Ky. Mar. 20, 2013) (citing *Presnell Constr. Managers, Inc. v. EH Constr., LLC*, 134 S.W.3d 575, 580-82 (Ky. 2004)).

[65]     Def.'s Mot. for Summ. J., at 15.

[66]     Makowski Dep. at 238-40.

[67]     *Id.* at 240.

also found certain parts of the letter to be "misleading" and "inaccurate."[68] Overall, the Plaintiff admitted that he disagreed with the letter and did not believe the Defendant to be telling the truth.[69] Thus, it would be unreasonable to infer that the Plaintiff relied upon the statements, or was induced to act in a certain way by the statements, which are essential elements of a claim for negligent misrepresentation. For this reason, the Plaintiff's claim for negligent misrepresentation fails.

The economic loss rule would also bar recovery under the Plaintiff's claim for negligent misrepresentation. The Kentucky Supreme Court has provided that "the economic loss rule would bar recovery of economic damages pursuant to a negligent misrepresentation theory."[70] "[T]he economic loss rule applies to a negligent misrepresentation claim just as it does to negligence and strict product liability claims."[71] The economic loss rule bars recovery in such a situation where only economic damages are sought because the "essence" of such a claim is that "losses occurred as a result of the . . . defects and failure to perform as expected" and the "injury suffered—the failure of the product to function properly—is the essence of a warranty action, through which a

---

[68]     *Id.* at 241-42.

[69]     *Id.* at 243.

[70]     *Giddings & Lewis, Inc. v. Indus. Risk Insurers*, 348 S.W.3d 729, 746 (Ky. 2011).

[71]     *Id.*

contracting party can seek to recoup the benefit of its bargain."[72] Thus, the

negligent misrepresentation claim also fails for this reason.[73]

### D. Fraudulent Misrepresentation

Next, the Defendant moves for summary judgment as to the Plaintiff's

claim for fraudulent misrepresentation. To succeed on a claim for fraudulent

misrepresentation under Kentucky law, a plaintiff must show, by clear and

convincing evidence, the following six elements: "(1) that the declarant made a

material representation to the plaintiff, (2) that this representation was false,

(3) that the declarant knew the representation was false or made it recklessly,

(4) that the declarant induced the plaintiff to act upon the misrepresentation,

(5) that the plaintiff relied upon the misrepresentation, and (6) that the

misrepresentation caused injury to the plaintiff."[74] Like the negligent misrepre-

sentation claim, the Plaintiff bases this claim on the statements made by the

Defendant denying the Plaintiff's warranty claim. However, as with the

negligent misrepresentation claim, the Plaintiff cannot show that he relied upon

this allegedly false representation in the warranty denial letter, or that he was

induced to act by it. Instead, the Plaintiff admits that he disagreed with the

statements made by the Defendant and did not find them to be credible. Since

---

[72]     *Id.* at 745 (quoting *Miller's Bottled Gas, Inc. v. Borg-Warner Corp.*, 955 F.2d 1043, 1054 (6th Cir. 1992)).

[73]     *Id.* at 745-46.

[74]     *Flegles, Inc. v. TruServ Corp.*, 289 S.W.3d 544, 549 (Ky. 2009).

the Plaintiff cannot show that he relied upon these communications, or was induced to act in some way by them, this claim fails as a matter of law.

### E. Fraudulent Concealment

Finally, the Defendant moves for summary judgment as to the Plaintiff's fraudulent concealment claim. To prevail on a claim for fraud by omission under Kentucky law, "a plaintiff must prove: (1) the defendant had a duty to disclose the material fact at issue; (2) the defendant failed to disclose the fact; (3) the defendant's failure to disclose the material fact induced the plaintiff to act; and (4) the plaintiff suffered actual damages as a consequence."[75] "[A] fraud by omission claim is grounded in a duty to disclose."[76] The existence of a duty to disclose is a question of law for the court to decide.[77]

The Defendant argues that this claim fails as a matter of law because it did not owe the Plaintiff a duty to disclose. A duty to disclose can arise under Kentucky law in four situations: (1) from a confidential or fiduciary relationship, (2) as provided by a statute, (3) "when a defendant has partially disclosed material facts to the plaintiff but created the impression of full disclosure," or (4) where one party to a contract "has superior knowledge and is relied upon to

---

[75] *Giddings & Lewis, Inc. v. Indus. Risk Insurers*, 348 S.W.3d 729, 747 (Ky. 2011).

[76] *Id.*

[77] *Id.*

disclose the same."[78] "[M]ere silence is not fraudulent absent a duty to disclose."[79]

The Plaintiff argues that the Defendant owed him a duty to disclose for two reasons. First, he argues that a duty to disclose existed due to the Defendant's partial disclosure in its letter denying the warranty claim in May 2012.[80] Second, the Plaintiff argues that the Defendant owed a duty to disclose based upon its superior knowledge.[81] However, even if a duty to disclose existed, which is unlikely, the Plaintiff cannot establish that this omission induced the Plaintiff to act – an essential element of this claim. Instead, the Plaintiff admitted that he "without a doubt" did not find the Defendant's statements concerning the Shingles to be credible.[82]  Instead, he believed that the Defendant was misleading. Since the Plaintiff believed that the Defendant was untruthful concerning its representations that the Shingles met manufacturing specifications, he cannot also assert that he was induced to act by the Defendant's alleged partially disclosure of the truth. For this reason, the Plaintiff's fraudulent concealment claim also fails as a matter of law.

---

[78]    *Id.* at 747-48.

[79]    *Smith v. Gen. Motors Corp.*, 979 S.W.2d 127, 129 (Ky. Ct. App. 1998).

[80]    Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 21.

[81]    *Id.*

[82]    Makowski Dep. at 238-40.

### F. Declaratory Judgment and Attorneys' Fees

Finally, the Defendant moves for summary judgment as to the Plaintiff's request for declaratory relief and attorneys' fees. First, the Defendant is entitled to summary judgment as to the Plaintiff's request for declaratory relief. 28 U.S.C. § 2201 provides that "[i]n a case of *actual controversy* within its jurisdiction," a federal court may render a declaratory judgment.[83] This language, which echoes the "case or controversy" requirement of Article III of the Constitution, requires that there "be a substantial continuing controversy between parties having adverse legal interests."[84] Since the Defendant is entitled to summary judgment as to all of the Plaintiff's underlying substantive claims for relief, no "actual controversy" exists.[85] Therefore, the Defendant is entitled to summary judgment as to the Plaintiff's request for declaratory relief.

The Defendant is also entitled to summary judgment as to the Plaintiff's request for attorneys' fees. "In Kentucky, attorney's fees 'are generally not recoverable without a specific contractual provision or a fee-shifting statute.'"[86]

---

[83]     28 U.S.C. § 2201(a) (emphasis added).

[84]     *Emory v. Peeler*, 756 F.2d 1547, 1552 (11th Cir. 1985).

[85]     Furthermore, due to the doctrine of *res judicata*, the Plaintiff will be barred from asserting any actions in the future relating to this set of facts. A declaratory judgment in this case would not have the practical consequence of a "significant increase in the likelihood that the [Plaintiff] would obtain relief that directly redresses the injury suffered," depriving the Plaintiff of standing. *See Utah v. Evans*, 536 U.S. 452, 464 (2002).

[86]     *Titan Fabricators, Inc. v. Thermal Techs., Inc.*, No. 4:13CV-00081-JHM, 2015 WL 12672120, at *1 (W.D. Ky. Mar. 3, 2015).

Because there is no statutory or contractual basis for an award of attorneys' fees, and because all of the Plaintiff's claims fail as a matter of law, the Plaintiff's request for attorneys' fees also fails.

## IV. Conclusion

For the reasons stated above, the Defendant's Motion for Summary Judgment [Doc. 43] is GRANTED.

SO ORDERED, this 8 day of June, 2018.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge