IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE ATLAS ROOFING CORPORATION CHALET SHINGLE PRODUCTS LIABILITY LITIGATION | MDL DOCKET NO. 2495<br>1:13-md-2495-TWT |
| MOSAIC AT VININGS CONDOMINIUM ASSOCIATION, INC.,<br>   Plaintiff,<br>      v.<br>ATLAS ROOFING CORPORATION,<br>   Defendant. | CIVIL ACTION FILE<br>NO. 1:17-CV-4928-TWT |

OPINION AND ORDER

This is a multi-district action arising out of the marketing and sale of allegedly defective roofing shingles. It is before the Court on the Defendant's Partial Motion to Dismiss [Doc. 13]. For the reasons set forth below, the Defendant's Partial Motion to Dismiss [Doc. 13] is GRANTED in part and DENIED in part.

I. Background

The Plaintiff Mosaic at Vinings Condominium Association, Inc. is a condominium association for the Mosaic at Vinings Condominiums.[1] The

---

[1] Am. Compl. ¶ 110.

condominium units and pool house at Mosaic contain Atlas Shingles (the "Shingles").[2] The Defendant Atlas Roofing Corporation designed, manufactured, and sold the Shingles.[3] The Defendant developed the Shingles in the 1990s as a line of "overlay" products intended to provide an affordable shingle with the look of the more expensive architectural shingles.[4] The Defendant also provided a limited thirty-year warranty against manufacturing defects (the "Limited Warranty").[5] In 2010, the Defendant discontinued sales of the Shingles.[6] The Defendant represented, and continues to represent, that the Shingles have enhanced aesthetic and cosmetic qualities, that they are durable, reliable, and free from defects, and that they meet applicable building codes and industry standards.[7] The Plaintiff alleges that the Shingles are defective and fail to live up to these representations.

---

[2] It should be noted that – for purposes of this lawsuit – Chalet/Stratford Shingles are indistinguishable. *See* Primary Mot. for Class Cert. [Doc. 57], Ex. Tab 14, Thomas Dep., at 35 under No. 13-cv-02195-TWT. The differences between the two Shingles relate to aesthetics, not design. *Id.*

[3] Am. Compl. ¶ 20.

[4] *Id.* ¶ 79.

[5] *Id.* ¶ 118.

[6] *Id.* ¶ 9.

[7] *Id.* ¶ 2.

Mosaic is a condominium complex with fifteen buildings and 106 individual residential units.[8] Mosaic also has a pool house for its members.[9] Each of these buildings and the pool house have the Shingles installed on the roofs.[10] The Plaintiff and its members selected the Shingles for Mosaic's roofs because of the Limited Warranty and because of their builder's representations as to the Shingles' quality and compliance with building codes and industry standards.[11] The Plaintiff controls and maintains certain common elements of Mosaic, including the roofs and Shingles.[12]

The Plaintiff claims that the Shingles contain design defects and manufacturing defects. According to the Plaintiff, the manufacturing process "permitted moisture to intrude into the Shingles, which created gas bubbles internal to the Shingles that expand upon exposure to the sun, resulting in cracking, blistering and premature deterioration of the Shingles."[13] Due to these manufacturing and design defects, the Shingles do not conform to the Defendant's representations and warranties.[14] These defects can also cause the

---

[8]  *Id.* ¶ 111.

[9]  *Id.*

[10] *Id.* ¶ 112.

[11] *Id.* ¶¶ 116, 119.

[12] *Id.* ¶ 113.

[13] *Id.* ¶ 60.

[14] *Id.* ¶ 62.

Shingles to leak.[15] The Plaintiff alleges that the Shingles on Mosaic's roofs are experiencing granule loss, blistering, and cracking.[16] The Shingles have also allegedly caused leaks at Mosaic, which have damaged roofing underlayment, decking, framing components, drywall, and other components of the members' homes.[17] In September 2017, the Plaintiff placed the Defendant on notice of the defects in the Shingles, and in October 2017, it filed a warranty claim with the Defendant.[18]

On November 6, 2017, the Plaintiff filed this action in the Superior Court of Cobb County.[19] Then, on December 5, 2017, the Defendant removed to this Court.[20] In its Amended Complaint, the Plaintiff asserts claims for Breach of Express Warranty (Count I), Violation of the Georgia Fair Business Practices Act (Count II), Fraudulent Omission/Concealment (Count III), Strict Products Liability (Count IV), Negligence/Negligent Design (Count V), and Litigation Expenses (Count VI). The Defendant now moves for partial dismissal of the Amended Complaint.

---

[15] *Id.* ¶ 61.

[16] *Id.* ¶ 124.

[17] *Id.*

[18] *Id.* ¶¶ 125-26.

[19] *See* [Doc. 1-1].

[20] *See* Notice of Removal [Doc. 1].

## II. Legal Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief.[21] A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely."[22] In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff.[23] Generally, notice pleading is all that is required for a valid complaint.[24] Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.

## III. Discussion

### A. Design Defects Under the Limited Warranty

The Defendant first moves to dismiss the Plaintiff's express warranty claims under the Limited Warranty for design defects. According to the

---

[21] *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009); FED. R. CIV. P. 12(b)(6).

[22] *Bell Atlantic v. Twombly*, 550 U.S. 544, 556 (2007).

[23] *See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983); *see also Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination").

[24] *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985), *cert. denied*, 474 U.S. 1082 (1986).

Defendant, the Limited Warranty, which warrants that the Shingles will be free from certain manufacturing defects, does not provide coverage for design defects.[25] Thus, to the extent that the Plaintiff asserts claims for breach of express warranty due to design defects in the Shingles, the Defendant argues that those claims must be dismissed. The Court agrees.

The Limited Warranty provides that "ATLAS ROOFING CORPORATION ("Atlas") warrants to you . . . that the roofing products listed in the chart below are free from manufacturing defects, which result in leaks."[26] Thus, the Limited Warranty explicitly covers manufacturing defects that result in leaks. In contrast, the Limited Warranty does not warrant against design defects. Design defects and manufacturing defects are distinct concepts under Georgia law.[27] Unlike a manufacturing defect, which occurs when a product departs from its intended design or condition, a design defect "exists when the product is built

---

[25] Def.'s Partial Mot. to Dismiss, at 2-3.

[26] Def.'s Partial Mot. to Dismiss, Ex. A [Doc. 13-1], at 2. "[T]he analysis of a 12(b)(6) motion is limited primarily to the face of the complaint and attachments thereto." *Brooks v. Blue Cross & Blue Shield*, 116 F.3d 1364, 1368 (11th Cir. 1997). However, "where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment." *Id.* at 1369.

[27] *Banks v. ICI Americas, Inc.*, 264 Ga. 732, 733 (1994) ("There are three general categories of product defects: manufacturing defects, design defects, and marketing/packaging defects.").

in accordance with its intended specifications, but the design itself is inherently defective."[28] Courts in similar circumstances have not allowed recovery for design defects under a breach of express warranty theory when the manufacturer's warranty covered only manufacturing defects.[29] Therefore, to the extent that the Plaintiff alleges breach of the Limited Warranty due to design defects in the Shingles, those claims are dismissed.[30]

The Plaintiff argues that it is unsure whether the alleged defects are manufacturing or design defects, and consequently dismissal is not warranted at this time. Specifically, the Plaintiff contends that it is "premature" to argue now that claims for design defects cannot be asserted, and that it is "entitled to determine if Atlas will claim that these [defects] are manufacturing or design defects which must be determined through discovery and cannot be dismissed

---

[28] *McCabe v. Am. Honda Motor Co.*, 100 Cal. App. 4th 1111, 1120 (Cal. Ct. App. 2002); *see also Banks*, 264 Ga. at 733-34 ("Unlike a manufacturing defect case, wherein it is assumed that the design of the product is safe and had the product been manufactured in accordance with the design it would have been safe for consumer use, in a design defect case the entire product line may be called into question and there is typically no readily ascertainable external measure of defectiveness.").

[29] *See, e.g., Garcia v. Chrysler Grp. LLC*, 127 F. Supp. 3d 212, 227 (S.D.N.Y. 2015) ("[B]ecause plaintiffs only adequately allege design defects and the Basic Limited Warranty does not cover design defects, to the extent that the breach of express warranty claims . . . are based on the Basic Limited Warranty, those claims are dismissed.").

[30] This does not mean that all of the Plaintiff's arguments concerning design defects must be dismissed for this reason. Instead, this holding focuses on the narrow issue of whether the Limited Warranty covers design defects as well as manufacturing defects.

at this stage."[31] However, this argument misses the point. The Plaintiff cannot recover for design defects under the plain terms of the Limited Warranty, whether or not discovery ultimately reveals that design defects do in fact exist in the Shingles. Even if design defects do exist, the Plaintiff would still not be able to recover under the Limited Warranty. Therefore, it is not premature to dismiss these claims at this time.

The Plaintiff also argues that these claims should survive because the Defendant "failed to produce a product (shingles) that conformed to its express warranties . . . regarding all applicable building codes and industry standards."[32] However, this misunderstands the Defendant's argument. The Defendant contends that it *never* made a warranty as to design defects in the Limited Warranty. Therefore, even if design defects in the Shingles do exist, they cannot constitute a breach of the Limited Warranty. No matter how defective the design of the Shingles may be, the Defendant did not make a warranty or representation as to design defects in the Limited Warranty. Therefore, this argument is unpersuasive.

Finally, the Plaintiff argues that there was no "meeting of the minds" with regard to the Limited Warranty, and the Defendant therefore cannot limit

---

[31] Pl.'s Br. in Opp'n to Def.'s Partial Mot. to Dismiss, at 7.

[32] *Id.,* at 6-7.

the Plaintiff's recovery to solely manufacturing defects.[33] Essentially, the Plaintiff contends that it was never able to negotiate the terms of the Limited Warranty, and consequently its limitation to manufacturing defects is unenforceable. However, the Plaintiff cannot have it both ways. It cannot, on the one hand, argue that the Defendant breached an express warranty created by the Limited Warranty, while on the other hand argue that the limitation to manufacturing defects does not apply because there was no meeting of the minds as to the warranty. It cannot assert a claim under the Limited Warranty while also disavowing the parts of the warranty that it does not find favorable. Therefore, since the Limited Warranty limited recovery to manufacturing defects, the Plaintiff's express warranty claims based upon design defects must be dismissed.

### B. Economic Loss Doctrine

Next, the Defendant argues that the economic loss rule bars the Plaintiff's strict liability and negligence claims.[34] "The economic loss rule provides that absent personal injury or damage to property other than to the allegedly defective product itself an action in negligence does not lie and any such cause of action may be brought only as a contract warranty action."[35] This rule applies

---

[33] Pl.'s Br. in Opp'n to Def.'s Partial Mot. to Dismiss, at 7-8.

[34] Def.'s Partial Mot. to Dismiss, at 4.

[35] *Holloman v. D.R. Horton, Inc.*, 241 Ga. App. 141, 147 (1999).

to strict liability claims as well.[36] The Defendant contends that the Amended Complaint fails to adequately allege damage to other property, and that the Plaintiff's tort claims consequently should be barred by the economic loss rule.

However, the Plaintiff has sufficiently alleged damage to other property to avoid dismissal under the economic loss rule. In the Amended Complaint, the Plaintiff alleges that the defective Shingles "are also causing leakage into Plaintiff's members' homes, and damaging roofing underlayment, decking, framing components, drywall, and other components of the home."[37] These allegations, which allege damage to other, specific pieces of property, are sufficient to sustain a claim for damage to other property that survives the economic loss rule. The Defendant argues that this case is analogous to *Buske v. Owens Corning (Corp.)* and *Seaberg v. Atlas Roofing Corp.*, where this Court concluded that the plaintiffs' allegations of damage to other property were too vague and insufficient to avoid dismissal under the economic loss rule.[38] However, in *Buske* and *Seaberg*, the plaintiffs' allegations were far more vague and speculative than the allegations here. In *Buske*, the plaintiff's complaint

---

[36] *See Home Depot U.S.A., Inc. v. Wabash Nat. Corp.*, 314 Ga. App. 360, 366 (2012) ("[T]he economic loss rule bars the plaintiff from seeking recovery under strict liability or negligence theories.").

[37] Am. Compl. ¶ 124; *see also id.* ¶¶ 240, 255.

[38] *Buske v. Owens Corning (Corp.)*, No. 1:16-CV-709-TWT, 2017 WL 1062371, at *2 (N.D. Ga. Mar. 21, 2017); *Seaberg v. Atlas Roofing Corp.*, No. 1:14-CV-3179-TWT, 2015 WL 3796456, at *3 (N.D. Ga. June 18, 2015).

only contained "vague allegations that other property was damaged."[39] The plaintiff in *Seaberg* asserted similarly vague allegations.[40] In contrast, the Plaintiff here has made specific allegations of damage to property other than the Shingles. The Plaintiff has alleged that leaks resulting from defects in the Shingles have damaged roofing underlayment, decking, framing components, and drywall in members' homes. These allegations, which are much more specific than the vague allegations in *Seaberg* and *Buske*, are sufficient to avoid dismissal.

### C. Statute of Limitations

Finally, the Defendant argues that the Plaintiff's tort claims are time barred.[41] O.C.G.A. § 9-3-30 provides that "[a]ll actions for trespass upon or damage to realty shall be brought within four years after the right of action accrues."[42] Thus, under this provision, "[t]ort actions for damage to realty must

---

[39] *Buske*, 2017 WL 1062371, at *2; *see also* [Doc. 1] under No. 1:16-CV-709-TWT, ¶ 85 ("The Shingles blister, prematurely lose their protective mineral granules, and deteriorate prematurely, and otherwise do not perform as warranted by Owens Corning, leading to and/or causing leaks and related damage to the underlying roof elements, structures or interiors of Plaintiffs and Class members' residences and other buildings.").

[40] *Seaberg*, 2015 WL 3796456, at *3; *see also* [Doc. 1] under No. 1:14-CV-3179-TWT, ¶ 120 ("On information and belief, the defect has caused damage to Plaintiff's and Class members' existing homes, residences, buildings, and other structures, in addition to damage to the Shingles themselves, by allowing moisture to enter through the Shingles.").

[41] Def.'s Partial Mot. to Dismiss, at 6.

[42] O.C.G.A. § 9-3-30.

be brought within four years of substantial completion of the property."[43] This rule applies even if the Plaintiff (or its members) did not know of any alleged defects until after the substantial completion of the condominium complex.[44] Likewise, the statute of limitation for fraud claims in Georgia is four years.[45] Since the Plaintiff has only alleged damage to real property in its tort claims, its action must have been filed within four years of substantial completion of the complex.[46] The Amended Complaint alleges that the Shingles were installed at Mosaic between 2005 and 2007.[47] Therefore, under this formulation, the statute of limitations ran between 2009 and 2011, years before the Plaintiff filed this action in 2017. The Plaintiff does not dispute this. Instead, it argues that equitable estoppel and equitable tolling apply.

First, the Plaintiff does not provide any analysis supporting its argument that the Defendant is equitably estopped from asserting a statute of limitations argument. Instead, it focuses on its equitable tolling argument. However, even if it did provide a more detailed argument, it would be unavailing. Under the

---

[43] *Dryvit Sys., Inc. v. Stein*, 256 Ga. App 327, 329 (2002); *see also Mitchell v. Contractors Specialty Supply, Inc.*, 247 Ga. App. 628, 629 (2001) ("It is well settled that a cause of action for damage to a building accrues at the time of construction.").

[44] *Id.*

[45] *Hamburger v. PFM Capital Mgmt., Inc.*, 286 Ga. App. 382, 387 (2007) (citing O.C.G.A. § 9-3-31).

[46] *Mitchell*, 247 Ga. App. at 629.

[47] Am. Compl. ¶ 14.

doctrine of equitable estoppel, "the defendant is estopped from asserting the statute of limitations because the defendant's conduct induced the plaintiff to forebear from bringing suit within the statute of limitations period."[48] "This doctrine arises from the equitable principle that a wrongdoer cannot take advantage of his wrongdoing."[49] "To prove equitable estoppel and avoid the statute of limitations, the plaintiff must show that he was misled by the defendants or their agents so that he delayed bringing this suit because of 1) an affirmative statement that the statutory period was longer than it actually was, or 2) promises to make a better settlement if the plaintiff did not bring suit, or 3) comparable representations or conduct."[50] The Plaintiff does not allege that the Defendant made any statements that would fit within any of those categories. Therefore, the Defendant is not estopped from asserting a statute of limitations defense.

The Plaintiff then argues that the statute of limitations for its tort claims should be equitably tolled. Georgia's tolling statute provides: "If the defendant or those under whom he claims are guilty of a fraud by which the plaintiff has been debarred or deterred from bringing an action, the period of limitation shall run only from the time of the plaintiff's discovery of the fraud."[51] In order to toll

---

[48] *Barton v. Peterson*, 733 F. Supp. 1482, 1490 (N.D. Ga. 1990).

[49] *Id.*

[50] *Id.* at 1491.

[51] O.C.G.A. § 9-3-96.

the statute of limitations, "a plaintiff must prove that (1) the defendant committed actual fraud involving moral turpitude, (2) the fraud concealed the cause of action from the plaintiff, and (3) the plaintiff exercised reasonable diligence to discover his cause of action."[52] To meet this standard, the Plaintiff must demonstrate more than mere concealment – it "must show that the defendants concealed the defects through '[s]ome trick or artifice . . . to prevent inquiry or elude investigation or to mislead and hinder the party who has the cause of action from obtaining the information, and the acts relied on must be of an affirmative character and fraudulent.'"[53] Silence or mere failure to disclose does not meet the standard to toll the statute of limitations unless the parties are in a confidential relationship.[54] O.C.G.A. § 9-3-96, as an exception to the statute of limitations, "should be strictly construed."[55]

Furthermore, because tolling the statute of limitations requires proof of fraud, the allegations must be pleaded with particularity.[56] The Eleventh Circuit has held that "under Rule 9(b), the Plaintiffs must allege (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these

---

[52] *Smith v. Suntrust Bank*, 325 Ga. App. 531, 538 (2014).

[53] *Gropper v. STO Corp.*, 250 Ga. App. 820, 824 (2001).

[54] *Smith*, 325 Ga. App. at 538.

[55] *Curlee v. Mock Enters., Inc.*, 173 Ga. App. 594, 597 (1985).

[56] FED. R. CIV. P. 9(b).

statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud."[57] The Plaintiff has failed to meet this standard. The Plaintiff has not pleaded the precise statements that misled it, how and when those statements were made, and how those statements misled it. Instead, the Plaintiff has only pleaded the general types of misrepresentations or statements that the Defendant made concerning the Shingles.[58] To satisfy its burden for equitable tolling, the Plaintiff would need to plead the alleged fraud with a much higher level of specificity. The Plaintiff has also failed to plead that it used reasonable diligence to discover any cause of action. Overall, the Plaintiff's allegations fall far short of pleading the alleged fraud with the required particularity, and thus are insufficient to toll the statute of limitations. This is

---

[57] *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380–81 (11th Cir.1997).

[58] *See, e.g.*, Am. Compl. ¶ 65 ("Atlas represented to Plaintiff, its members, and their builder/contractor, in documents generally available to the public, that its Shingles would be free from defects and have a useful life of 25-30 years . . . ."); *id.* ¶ 104 ("Instead, completely contrary to its internal documents, Atlas has misrepresented to customers that the blistering and cracking are 'not a performance defect but are cosmetic only' and 'the overlays only function is to create the look of dimension.'"); *id.* ¶ 194 (noting that the Defendant had "extensive knowledge of the defective nature of the Shingles and fail[ed] to disclose to Plaintiff," represented "that the Shingles were suitable exterior building products, when they were not," represented "that the Shingles complied with building code and industry standards, when they did not," and "represented that the Shingles would last at least 25-30 years, when they would not."); *id.* ¶¶ 216-217 (alleging that the Defendant made misrepresentations concerning the Shingles quality, longevity, and compliance with building and industry standards). It is also questionable whether these alleged misrepresentations rise to the level of "actual fraud involving moral turpitude," which is required to toll the limitations period.

especially true given the fact that this exception to statute of limitations is narrowly construed.

Additionally, as to the Plaintiff's allegations that the Defendant concealed these defects, it has failed to allege that the Defendant's actions amounted to anything more than mere silence. To toll the statute of limitations because of fraud, the Plaintiff must show that the Defendant concealed the defects with some type of trick or artifice that prevented the Plaintiff from investigating the cause of action. The Plaintiff's allegations do not establish that the Defendant employed an affirmative act or trick to hide the defects.[59] Instead, it only alleges that the Defendant hid its knowledge of the defects in the Shingles from consumers. These allegations merely show silence or omission on the Defendant's part, which is not enough to toll the statute of limitations under Georgia law. Accordingly, the Plaintiff's claims for fraudulent concealment (Count III), strict liability (Count IV), and negligence and negligent design (Count V) should be dismissed as barred by the statute of limitations.

---

[59] Am. Compl. ¶ 140 ("Atlas had a duty to disclose to Plaintiff, its members, and their builder/contractor that its Shingles were and are defective . . . ."); *id.* ¶ 143 ("Despite being aware of the defects as stated herein, Atlas concealed from consumers, homeowners, contractors and roofers that its Shingles failed to comply with ASTM 3462 and IRC, would prematurely fail, and cannot be expected to fulfill their service life."); *id.* ¶ 148 ("In addition, Defendant is estopped from relying on any statutes of limitation or repose by virtue of its acts of fraudulent concealment, which include Defendant's intentional concealment from Plaintiff, its members, and the general public that their Shingles were defective, while continuing to market and sell the Shingles as having premium aesthetic qualities, as well as being a durable and suitable product to unsuspecting consumers.").

## IV. Conclusion

For the reasons stated above, the Defendant's Partial Motion to Dismiss [Doc. 13] is GRANTED in part and DENIED in part.

SO ORDERED, this 19 day of July, 2018.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge